# In the United States Court of Federal Claims

SCIENCE APPLICATIONS
INTERNATIONAL CORP.,

       Plaintiff,

       v.

THE UNITED STATES,

       Defendant,

       and

MICROSOFT CORPORATION,

       Defendant-Intervenor.

No. 17-cv-00825 C

Filed: May 12, 2020

*Stephen R. Smith*, Cooley LLP, Washington, D.C. for Plaintiff.  With him on the brief were *DeAnna D. Allen, Erin M. Estevez, Stephen C. Crenshaw, and James P. Hughes*, Cooley LLP, Washington, D.C., *Douglas P. Lobel*, Cooley, LLP, Reston, Virginia, and *Goutam Patnaik* and *Gwendolyn Tawresey*, Pepper Hamilton LLP, Washington, D.C.

*Alex Hanna*, United States Department of Justice, Washington, D.C. for Defendant.  With him on the briefs were *Joseph H. Hunt*, Assistant Attorney General, Civil Division, *Gary Hausken*, Director, Commercial Litigation Branch, Civil Division, and *Scott Bolden*, of counsel, United States Department of Justice, Washington, D.C.

## <u>MEMORANDUM AND ORDER</u>

Defendant United States moves pursuant to Rule 14(b)(2)(B)(iii) of the Rules of the United States Court of Federal Claims, requesting that this Court issue a notice to non-parties L3 Technologies (L3) and Harris Corporation (Harris), through their successors in interest, to potentially appear as third parties to this lawsuit.  Specifically, Defendant contends the Court should issue the requested Rule 14 Notices because L3 and Harris (i) contracted with the Army in May 2019 to develop a prototype that includes a feature alleged to infringe the patents at issue in

this action, and (ii) contractually agreed to indemnify Defendant for patent infringement.  *See* Defendant's Rule 14(b) Motion (ECF No. 114) (Def. Mot.) at 2.  Plaintiff opposes the motion on the ground that no "good cause" exists to issue such Rule 14(b) Notices at this stage of the litigation because Defendant's motion is untimely, lacks good faith, and will prejudice Plaintiff.  *See* Plaintiff's Opposition (ECF No. 116) (Pl. Opp.) at 1-2.  For the reasons set forth below, this Court grants Defendant's Rule 14(b) motion and directs the Clerk of Court to issue Rule 14 Notices to L3 and Harris.

## BACKGROUND

The primary facts underlying this motion are not in dispute, and familiarity with prior opinions in this action is presumed.  *See, e.g., Science Applications Int'l Corp. v. United States*, 135 Fed. Cl. 661 (2018).  On June 19, 2017, Plaintiff filed the present action for patent infringement pursuant to 28 U.S.C. § 1498(a) against Defendant for alleged infringement of U.S. Patent Nos. 7,787,012 (the '012 patent), 8,817,103 (the '103 patent), 9,229,230 (the '230 patent), and 9,618,752 (the '752 patent) (collectively the SERVAL Patents).  *See* Complaint (ECF No. 1) (Compl.) at ¶ 3.  Generally, Plaintiff alleges that the United States infringed the SERVAL Patents by entering into contracts with Plaintiff's competitors for the manufacture and subsequent use of night vision goggle weapon systems with specialized heads up displays that allegedly use Plaintiff's patented technology.  *See Science Applications Int'l*, 135 Fed. Cl. at 662; Compl. at ¶¶ 2, 37.

While Rule 14(b) motions are typically uncontroversial, a review of the procedings to date is helpful to appreciating the parties' positions here.  Defendant moved to dismiss this action on October 16, 2017.  On January 19, 2018, the Court denied Defendant's motion to dismiss and Defendant subsequently filed its answer on February 2, 2018.  *See Science Applications Int'l*, 135

Fed. Cl. at 669; Answer (ECF No. 20).  On November 20, 2018, Microsoft entered into a contract with the United States to develop an Integrated Visual Augmentation System, which Microsoft alleges includes implementation of a Rapid Target Acquisition (RTA) feature relevant to Plaintiff's infringement claims.  *See* Microsoft Motion to Intervene at 1 (ECF No. 59). Subsequently, Microsoft moved to intervene in this action "for the limited purpose of protecting its interests regarding the United States' defense that products incorporating [RTA] do not infringe the patents asserted in this matter by [Plaintiff]."  Microsoft Motion to Intervene (ECF No. 59) at 1.  On May 6, 2019, the Court granted Defendant-Intervenor Microsoft Corporation's unopposed motion to intervene in this action.  *See* Order Granting Intervention (ECF No. 60).

Unbeknownst at the time to Plaintiff and Defendant's counsel, on May 30, 2019, nearly two years after the inception of this suit, the Army entered into two separate other transaction agreements (OTAs) (collectively, the L3/Harris contracts) with L3 and Harris[1], each of which had a night vision technology division, to develop a prototype for an Enhanced Night Vision Goggle-Binocular (ENVG-B) that Defendant contends requires implementation of the accused RTA technology.  *See* Def. Mot at 2-4, Ex. 1; Defendant's Reply (ECF No. 117) (Def. Reply) at 2-3. The L3/Harris contracts contain the standard patent indemnification clause contained in FAR

---

[1] Defendant informs the Court that L3 and Harris merged on June 29, 2019, approximately one month after the L3/Harris contracts were executed, creating a new entity known as "L3Harris Technologies, Inc." *See* Def. Reply at 2; Pl. Opp. at 8 n.5.  Defendant believes that L3's legacy night vision division remained with the merged entity, "and is now known as the 'Integrated Vision Solutions Sector' of L3 Technologies, Inc., which is a subsidiary of 'L3Harris Technologies, Inc.'"  Def. Reply at 3 n.1.  Defendant further states that "on information and belief, former Harris Corporation's legacy night vision technology division, which ultimately received one of the Army's two separate May 30, 2019 OTAs, was spun-off (for regulatory reasons) and purchased by 'Elbit Systems of America, LLC' ('Elbit'), which is the U.S. subsidiary of 'Elbit Systems, Ltd.'"  *Id.* at 2-3.  Defendant states that due to this spin-off and sale, one of the two entities to be noticed is "Elbit Systems of America, LLC."  *See id.* at 3.  Defendant avers, and it appears undisputed, that "[n]either the former Harris night vision technology division, nor Elbit, have ever been a part of this lawsuit or subject to third-party discovery obligations (*e.g.,* subpoena) owed to SAIC or another party."  *Id.* at 3; *see also id.* at 13.  For purposes of this motion, references to Harris and Elbit shall be considered interchangeable.

section 52.227-3:

> The contractor shall indemnify the Government and its officers, agents, and employees against liability, including costs, for infringement of any United States patent (except a patent issued upon an application that is now or may hereafter be withheld from issue pursuant to a Secrecy Order under 35 U.S.C. 181) arising out of the manufacture or delivery of supplies, the performance of services, or the construction, alteration, modification or repair of real property (hereinafter referred to as "construction work") under this contract, or out of the use or disposal by or for the account of the Government of such supplies or construction work.

Def. Mot. Ex. 1 (redacted L3/Harris contracts).

On August 27, 2019, Microsoft moved to stay related to five then-pending *inter partes* review (IPR) petitions, and on November 26, 2019, the Court granted Microsoft's motion and partially stayed the case, including all party discovery, pending resolution of the IPR before the Patent Trial and Appeal Board (PTAB).[2]  *See* Stay Order (ECF No. 102).  During the Court-ordered stay, some limited, non-party discovery continued.  *See* Stay Order at ¶ 3 ("SAIC may continue pursuing all third-party discovery that had already been served as of November 18, 2019.").

Previously, on November 14, 2018, Plaintiff issued a subpoena to L3 through the non-party discovery process (Subpoena).[3]  *See* Pl. Opp Ex. B (partial version of Subpoena) at 6-7; Def. Reply Ex. 4 (full version of Subpoena); Def. Reply Ex. 3 (L3 Response) at 4-5, ¶ 14.  The Subpoena was issued prior to the Army's award of the May 30, 2019 OTA to L3.  In its objections, L3 stated that it was responding to the Subpoena only with respect to the 2018 contract between the Army and L3 (Contract No. W91CRB-18-D-0003), as that was the relevant contract specifically identified

---

[2] On January 27, 2020, the PTAB issued a decision on each of Microsoft's five IPR proceedings, denying institution.  Microsoft appealed the PTAB's decision.  *See* February 14, 2020 Corrected Joint Status Report (ECF No. 110) at 1 & Ex. A.

[3] As Plaintiff's 2018 Subpoena well pre-dated the 2019 merger of L3 and Harris, neither Harris nor its successor-in-interest Elbit, *see supra* at n.1, were under an obligation to respond to the Subpoena.  Indeed, likely and understandably because it was unaware of the 2019 L3/Harris contracts, Plaintiff has not served either Harris or Elbit with non-party discovery in this action.

by the Subpoena.  *See* Def. Reply Ex. 3 at 4-5, ¶ 14.  It is undisputed that the 2018 contract awarded by the Army to L3 did not contain a patent indemnification clause similar to that in the 2019 L3/Harris contracts, and accordingly no party filed a Rule 14 motion to notice L3 at that time.

In November 2019, during the pendency of the stay, Defendant's counsel first learned from the Army of the May 2019 L3/Harris contracts, and that the prototypes required by the contracts may implicate the accused technology in this action.  *See* Def. Mot. at 7, Ex. 2 at 10; Pl. Opp. at 6; Def. Reply at 7.  On February 20, 2020, the Court lifted the stay, and six days later, on February 26, 2020, Defendant notified Plaintiff that it intended to move to notify L3 and Harris pursuant to Rule 14(b).  *See* Feb. 20, 2020 Order Lifting Partial Stay (ECF No. 111) (February 20 Order); Def. Mot. at 7, Ex. 2 at 16-17.[4]

On February 27, 2020, this case was reassigned to the undersigned judge pursuant to Rule 40.1(c), and subsequently on March 10, 2020, Defendant filed the present motion.  Notably, this action has been reassigned four times to different judges over approximately the past three years. Further, at the time of filing, a three-month stay of this action had just been lifted and no current scheduling order had been entered.  *See* February 20 Order at 1.  Additionally, the Court had not yet held a *Markman* hearing.  The parties recently filed a joint proposed scheduling order on May 1, 2020, and a joint status conference is set for May 12, 2020.  *See* Status Conference Order (ECF No. 118).  A new schedule will soon be established in this case, and this Court expects efficient litigation of the action going forward.

## DISCUSSION

Rule 14(b) provides a means to notice a non-party who may have an apparent or alleged interest in the outcome of the litigation.  *See Uusi, LLC v. United States*, 110 Fed. Cl. 604, 609

---

[4] Defendant produced the L3/Harris contracts to Plaintiff on February 25, 2020, five days after the stay lifted.  Def. Mot. at 7, Ex. 2 at 17.

(2013), review denied 549 Fed. Appx. 964 (Fed. Cir. 2013); *Rockwell Int'l Corp. v. United States*, 31 Fed. Cl. 536, 539-40 (1994). "The rule provides an opportunity, without compulsion, for a person to appear and protect his interests." *Rockwell Int'l.*, 31 Fed. Cl. at 539. Specifically, Rule 14(b)(1) states that "[t]he court, on motion or on its own, may notify any person with the legal capacity to sue or be sued who is alleged to have an interest in the subject matter of the suit." Rule 14(b) also has a timeliness requirement. Relevant to the present motion, "[t]he United States must file any motion for notice on or before the date the answer is required to be filed." Rule 14(b)(2)(B)(ii). If the United States misses that deadline, the Court may still allow a motion for notice "for good cause shown." Rule 14(b)(2)(B)(iii).

As an initial matter, it is undisputed that L3 and Harris are patent indemnifiers of the United States and each has an apparent interest in the outcome of this litigation sufficient to satisfy the Rule 14(b) notice requirements. Def. Mot. Ex. 1; Def. Reply at 9-10; *see Uusi*, 110 Fed. Cl. at 609-10 ("apparent interest" is broadly interpreted and includes indemnifiers of the United States); *3rd Eye Surveillance, LLC v. United States*, 126 Fed. Cl. 266, 274 (2016) ("In the context of a motion by the United States to notify a third party, a 'pecuniary interest' can be established through an allegation that a third party may be required to indemnify the government in the event the government is found liable in the subject action."); *see also Carrier Corp. v. United States*, 534 F.2d 250 (Ct. Cl. 1976) (per curiam) ("A person against whom the United States alleges a nonfrivolous claim for indemnity is a party who 'appears' to have such an interest."); *Penda Corp. v. United States*, 44 F.3d 967, 970 (Fed. Cir. 1994) (same). Accordingly, whether "good cause" exists here and a notice should issue under Rule 14(b) boils down to the timeliness of the motion and the prejudice, if any, to the parties.

There is no real dispute that there was a notable delay between execution of the May 30,

2019 L3/Harris contracts and Defendant's February 26, 2020 notification to Plaintiff of its intent to notice L3 and Harris pursuant to Rule 14(b).   The question for this Court under Rule 14(b)(2)(B)(iii), however, is not whether there was a delay, but instead whether Defendant has shown "good cause" for filing a Rule 14(b) motion subsequent to filing its answer.   *See* Rule 14(b)(2)(B)(iii).   When determining whether "good cause" exists, the Court takes into consideration (i) the reasons for defendant's post-answer filing and for any delays in filing, and (ii) whether Plaintiff is prejudiced by the delayed filing.   *See, e.g., John R. Sand & Gravel Co. v. United States*, 60 Fed. Cl. 272, 272-73 (2004) (defendant has burden of meeting the good cause standard and showing "substantial and plausible reasons" for the untimely Rule 14 filing) (citations omitted); *Morphotrust USA, LLC v. United States*, No. 16-227, 2017 WL 4081812, at *1-2 (Fed. Cl. Sept. 15, 2017) ("good cause" absent where defendant was aware of relationship well-before filing Rule 14(b)(2)(B)(iii) motion, and where allowing Rule 14 Notice after court's substantive rulings would prejudice plaintiff).

First, Defendant reasonably filed its Rule 14(b) motion post-answer.   The Army entered into the L/3 Harris contracts on May 30, 2019 – 16 months after Defendant filed its answer.   It was simply impossible for Defendant to file its Rule 14(b) notice prior to filing its February 2, 2018 answer.

Second, despite the nine-month time gap from execution of the L3/Harris contracts to filing of Defendant's Rule 14(b) motion, Defendant's counsel acted timely and in good faith in moving to notice L3 and Harris.   It is undisputed that Defendant's counsel was unaware of the L3 and Harris contracts until November 2020, during the Court's stay of this action.   Within six days of the Court's Order lifting the stay, Defendant's counsel informed Plaintiff of his intent to file a Rule

14(b) motion regarding the L3/Harris contracts.[5]  *See* Def. Mot. at 7, Ex. 2 at 16-17.  Defendant's counsel acted promptly in disclosing the contracts and filing the motion and there is no evidence in the record of any dilatory conduct or disingenuousness by counsel.  *See 3rd Eye Surveillance*, 126 Fed. Cl. at 272 n.7 (finding good cause where defendant's counsel "did not receive contract information from the pertinent government agency" until after answer deadline and filed Rule 14 motion promptly thereafter).  This Court does not condone the Army's delay in reporting the existence of the L3/Harris contracts to Defendant's counsel.  But this delay alone does not obviate a finding of "good cause" in light of all of the facts and circumstances, including Defendant's counsel's reasonable actions and, as discussed below, the lack of prejudice to Plaintiff.

Plaintiff's further argues that "good cause" is absent because L3 should have disclosed the 2019 L3/Harris contracts in response to Plaintiff's 2018 non-party Subpoena issued to L3.  Pl. Opp. at 1-2.  Plaintiff's argument is unpersuasive.  As noted, Plaintiff issued the Subpoena on November 14, 2018, prior to the Army's award of the May 30, 2019 OTA to L3.  L3 responded to the Subpoena on December 12, 2018, and in its objections clarified that it was responding only with respect to the 2018 contract specifically identified by the Subpoena.  *See* Def. Reply Ex. 3 at 4-5 ¶ 14 ("L3's responses will be limited to the items procured by the Defendant under the contract specifically identified in the definition, contract No. W91CRB-18-D0003").  L3's response was reasonable because it had not yet entered into the 2019 contract with the Army, and its objection cabining its response to the 2018 contract, among other factors, meant that L3 had no obligation to subsequently supplement its response.

Finally, Plaintiff contends that the delay in notification has resulted in prejudice, obviating

---

[5] Plaintiff's reliance on *John R. Sand & Gravel Co. v. United States*, 60 Fed. Cl. 272 (2004) to argue Defendant's delays are unjustified is inapposite.  *See* Pl. Opp. at 8.  Unlike in *John R. Sand & Gravel*, Defendant's notification obligation here was not ripe pre-answer and Defendant could not possibly have filed its notice pre-answer under any set of circumstances.  *C.f. Morphotrust*, 2017 WL 4081812, at *1.

any "good cause" under Rule 14(b). Plaintiff's argument is initially compelling, but on further examination it appears that little, if any, prejudice attributable to the notification delay exists. First, over the last year, this case has been reassigned three times to different judges, causing some administrative delay. *See* Reassignment Orders (ECF Nos. 67, 85, 112). Further, although the parties have submitted their opening claim construction briefs, no *Markman* hearing occurred prior to the filing of this motion, due in part to the Court's stay of this action from November 26, 2019 through February 20, 2020. *See* Stay Order (ECF No. 102); Order Lifting Stay (ECF No. 111). After the stay lifted, there was no schedule for future proceedings in place, and a week later the case was reassigned to the undersigned judge. In sum, Plaintiff has not demonstrated prejudice stemming from the notification delay and Defendant has shown that it acted promptly and in good faith in filing its Rule 14(b) motion upon learning of the L3/Harris contracts.

Defendant has shown "good cause" sufficient to file its Rule 14(b) motion post-answer. *See* Rule 14(b)(2)(B)(iii). Accordingly, for the reasons stated above, this Court grants Defendant's Rule 14(b) motion and directs the Clerk of Court to issue Rule 14 Notices to L3 and Harris. Although Defendant acted reasonably regarding the subject of this motion, this Court nevertheless urges the Department of Justice to work with Army personnel and counsel to ensure the future efficient reporting of such relevant contracts, if any, to Defendant's counsel of record. Because, among other reasons, a new schedule will soon be established in this case, this Court will not consider "good cause" to exist under Rule 14(b)(2)(B)(iii) if the Army fails to promptly notify Defendant's counsel in the future of other relevant contracts requiring implementation of the accused technology and containing the FAR patent indemnification clause.

## CONCLUSION

Defendant's Motion for a Rule 14(b) Notice (ECF No. 114) is **GRANTED**. The Clerk of

Court is directed to issue a Rule 14 Notice, as specified in Rule 14(b), to each of the following entities: (1) L3 Technologies, Inc. c/o Scott Mikuen, Senior Vice President, General Counsel, and Secretary, 1025 W. Nasa Boulevard, Melbourne, FL 32919, and (2) Harris Corporation c/o Elbit Systems of America, LLC, 4700 Marine Creek Parkway, Fort Worth, TX 76179.

    IT IS SO ORDERED.


                              s/Eleni M. Roumel
                            ELENI M. ROUMEL
                                  Judge

May 12, 2020
Washington, D.C.