# In the United States Court of Federal Claims

SCIENCE APPLICATIONS
INTERNATIONAL CORP.,

        Plaintiff,

        v.

THE UNITED STATES,

        Defendant,

        and

MICROSOFT CORPORATION,

        Intervenor-Defendant,

        and

L3 TECHNOLOGIES, INC.,

        Third-Party Defendant.

No. 17-cv-825

Filed: April 21, 2021

*Stephen R. Smith*, Cooley LLP, Washington, D.C. for Plaintiff.  With him on the brief were *DeAnna D. Allen, Erin M. Estevez, Stephen C. Crenshaw,* and *James P. Hughes*, Cooley LLP, Washington, D.C.; *Douglas P. Lobel*, Cooley, LLP, Reston, Virginia; and *Goutam Patnaik* and *Gwendolyn Tawresey*, Pepper Hamilton LLP, Washington, D.C.

*Alex Hanna*, United States Department of Justice, Civil Division, Washington, D.C. for Defendant.  With him on the briefs were *Joseph H. Hunt*, Assistant Attorney General, Civil Division, *Gary Hausken*, Director, Commercial Litigation Branch, Civil Division, and *Scott Bolden*, United States Department of Justice, Civil Division, Washington, D.C.

1

## MEMORANDUM AND ORDER

Plaintiff Science Applications International Corp. (SAIC) alleges that Defendant United States (Defendant or Government) infringed four (4) patents by entering into contracts with Plaintiff's competitors for the manufacture and use of specialized heads up displays (HUD) and night vision goggles that allegedly use SAIC's patented technology.  *See generally* Complaint (ECF No. 1) (Compl.); *see also Sci. Applications Int'l Corp. v. United States*, 135 Fed. Cl. 661, 662 (2018).

Pending before the Court is Plaintiff's Motion to Strike certain of the Government's invalidity contentions and evidence supporting such contentions as untimely.  *See generally* Science Applications International Corporation's Motion to Strike Defendant's Untimely Indefiniteness Positons [sic] (ECF No. 74) (Pl. Mot.); Science Applications International Corporation's Reply in Support of Its Motion to Strike Defendant's Untimely Indefiniteness Positons [sic] (ECF No. 86) (Pl. Reply).  Specifically, SAIC takes issue with the alleged untimely submission of the Government's indefiniteness positions with respect to the following phrases: (1) "in registration with," and "registering,"[1] (2) "wherein boundaries of the displayed video images are in registration with boundaries of portions of the visual field represented by the displayed video images," and "registering the portion of the video feed with the underlying visual field,"[2] and (3) "motion data."[3]  *See* Joint Claim Construction Chart (ECF No. 63-1) at 8, 14-15; Defendant United States' Opening Claim Construction Brief (ECF No. 89) (Def. Opening Cl. Constr. Br.) at 15-20

---

[1] As the terms are used in '012 Patent, claims 1, 17; '103 Patent, claim 1; '230 Patent, claims 3, 17, 31; '752 Patent, claims 1,7, 13.

[2] As the terms are used in '012 Patent, claims 1, 17; '103 Patent, claim 1.

[3] As the terms are used in '230 patent, claims 1-3, 5, 15, 17, 19, 29, 31, 33; '752 patent, claims 1, 2, 7, 8, 13, 14.

(arguing "motion data" is indefinite), at 39-42 (arguing "wherein boundaries of the displayed video images are *in registration with* boundaries of portions of the visual field represented by the displayed video images" and "*registering* the portion of the video feed with the underlying visual field" are indefinite) (emphasis in original).[4]

The Government argues that it timely submitted its invalidity contentions concerning indefiniteness because it did so prior to the close of claim construction.  *See* Defendant United States' Response to Plaintiff's Motion to Strike Indefiniteness Defenses (ECF No. 84) (Def. Resp.) at 16-18.  Moreover, the Government asserts that even if its invalidity contentions regarding indefiniteness are untimely, striking them would be a severe sanction that is unwarranted here.  *Id.* at 7.

On August 27, 2020, this Court held oral argument on SAIC's Motion to Strike.  As noted during the hearing and in this Court's August 27, 2020 Order, the Court directed SAIC and the Government to file supplemental briefs addressing whether this Court has the authority to award costs and expenses in response to SAIC's Motion to Strike and whether such an award would be appropriate here.  *See* Transcript, August 27, 2020 Hearing (ECF No. 139) at 62-64; September 9, 2020 Order Amending Schedule (ECF No. 143).

In its supplemental briefs, Plaintiff argues that an award of expenses is appropriate in this action, in addition to striking the Government's indefiniteness arguments.  *See generally* Science Applications International Corporation's Supplemental Brief in Support of Its Motion to Strike Defendant's Untimely Indefiniteness Positons [sic] (ECF No. 144) (Pl. Supp. Br.); Science Applications International Corporation's Reply in Support of Its Supplemental Brief In Support of

---

[4] When citing deposition transcripts and the parties' briefs, the page numbers refer to the page numbers of the original documents and not the page numbers generated by CM/ECF.  When citing to the parties' other filings, including the parties' exhibits, the page numbers refer to the CM/ECF page numbers located in the heading of each page.

Its Motion to Strike Defendant's Untimely Indefiniteness Positons [sic] (ECF No. 146) (Pl. Supp. Reply).

In contrast, the Government contends that it was substantially justified in disclosing its indefiniteness contentions as part of claim construction after obtaining pertinent discovery in a deposition; accordingly, it argues that neither striking its indefiniteness positions nor an award of costs is warranted.  *See generally* Defendant United States' Response to Plaintiff's Supplemental Brief in Support of its Motion to Strike Defendant's Indefiniteness Positions (ECF No. 145) (Def. Supp. Resp.).

This Court has considered each of the parties' filings and arguments.  For the reasons explained below, Plaintiff's Motion to Strike is **GRANTED in part** and **DENIED in part**.

<u>BACKGROUND</u>

The patents at issue here are U.S. Patent No. 7,787,012 (the '012 Patent), U.S. Patent No. 8,817,103 (the '103 Patent), U.S. Patent No. 9,229,230 (the '230 Patent) and U.S. Patent No. 9,618,752 (the '752 Patent) (collectively, the Soldier Enhanced Rapid Engagement and Vision in Ambient Lighting or SERVAL patents).  *See* Compl. ¶ 3.  "The four patents form two patent families due to the interrelatedness of the applications."  *Sci. Applications Int'l Corp.*, 135 Fed. Cl. at 664.  The first patent family consists of the '012 Patent and the '103 Patent.  The '012 Patent is entitled "System and Method for Video Image Registration in a Heads Up Display."  Compl. Exhibit (Ex.) A ('012 Patent).  It was issued on August 31, 2010, with nineteen (19) claims, all of which are method claims.  *See id*. at 1-19.  The '103 Patent is likewise entitled "System and Method for Video Image Registration in a Heads Up Display."  Compl. Ex. B ('103 Patent).  The '103 Patent is a division of the '012 Patent and shares a common specification with the '012 Patent. It issued on August 26, 2014, with twelve (12) claims.  *See id*. at 20-37.  The second patent family

consists of the '230 Patent and the '752 Patent.  The '230 Patent is entitled "System and Method for Video Image Registration and/or Providing Supplemental Data in a Heads Up Display." Compl. Ex. C ('230 Patent).  It issued on January 5, 2016, with forty-two (42) claims.  *See id*. at 21-92.  System claim 1, method claim 15, and non-transitory machine-readable medium 29 are independent claims.  The '752 Patent is also entitled "System and Method for Video Image Registration and/or Providing Supplemental Data in a Heads Up Display."  Compl. Ex. D ('752 Patent).  The '752 Patent is a continuation of the '230 Patent and shares a common specification with the '230 Patent.  It issued on April 11, 2017, with eighteen (18) claims.  *See id*. at 93-146.

The Court initially issued its Scheduling Order on April 30, 2018.  *See* April 30, 2018 Scheduling Order (ECF No. 31) (Initial Scheduling Order).[5]  After resolving several threshold challenges, including a motion to dismiss for failure to state a claim and a standing challenge as to one of the patents at issue, the parties eventually agreed on a proposed discovery schedule.  *See* Proposed Discovery Schedule (June 8, 2018) (ECF No. 40); *Sci. Applications Int'l Corp.*, 135 Fed. Cl. at 669 (denying Defendant's motion to dismiss for failure to state a claim); Transcript, May 31, 2018 Hearing (ECF No. 39) at 22:11-23:18 (denying Defendant's request to engage in limited discovery to address standing issues).  On June 12, 2018, the Court adopted the parties' proposed discovery schedule in part.  *See* June 12, 2018 First Amended Scheduling Order (ECF No. 41).  In its Order, the Court included the parties' desired schedule for claim construction discovery but did not include deadlines for discovery beyond claim construction.  *See id.*  On September 11, 2018, the Court issued a Second Amended Scheduling Order which ordered, *inter alia*, that by October

---

[5] Prior to the transfer of this Case to the undersigned judge, the Court's April 30, 2018 Scheduling Order was amended six (6) times.  *See* First Amended Scheduling Order (June 12, 2018) (ECF No. 41); Second Amended Scheduling Order (September 11, 2018) (ECF No. 43); Third Amended Scheduling Order (November 14, 2018) (ECF No. 50); Fourth Amended Scheduling Order (January 31, 2019) (ECF No. 55); Fifth Amended Scheduling Order (March 15, 2019) (ECF No. 58); Sixth Amended Scheduling Order (May 6, 2019) (ECF No. 60).

12, 2018, "Defendant shall serve . . . its initial invalidity claim chart."   Second Amended Scheduling Order (ECF No. 43).

On October 12, 2018, the Government timely served its initial invalidity contentions asserting that each of SAIC's ninety-one (91) total asserted claims is disclosed or taught in prior art references.  *See* Pl. Mot. Ex. F.  However, the Government's initial invalidity contentions did not chart any claims or claim terms as indefinite.  *See id.*

On November 5, 2018, SAIC and the Government filed their respective disclosures of claim construction experts.  *See* Defendant's Disclosure of Claim Construction Expert Ulrich Neumann, Ph.D. (ECF No. 48); SAIC's Disclosure of Claim Construction Expert Gregory Welch, Ph.D. (ECF No. 49).

On February 15, 2019, the Government disclosed to SAIC its proposed terms for construction.  *See* Pl. Mot. Ex. B.  In this disclosure, the Government generically alleged that "[o]ne or more of the asserted claims of the Asserted Patents are invalid for failing to meet pre-AIA 35 U.S.C. § 112 *et seq.*"  Pl. Mot. Ex. B at 2.  Though the Government highlighted that the three terms it now alleges are indefinite would need to be construed, it still did not disclose any indefiniteness contentions.  *See e.g.*, Pl. Mot. Ex. B at 5 (highlighting "wherein boundaries of the displayed video images are in registration with boundaries of portions of the visual field represented by the displayed video images."), at 9 (highlighting "motion data"), at 20 (highlighting, in part, "in registration with").

On February 22, 2019, the Government deposed Dr. Ronald Azuma, a non-party witness knowledgeable in the field of augmented reality.  Def. Supp. Resp. Ex. 1 (Excerpt from Azuma Dep.); Azuma Dep. (ECF No. 64-13).  Counsel for SAIC attended the deposition.  *See* Azuma Dep. at 3.  During the deposition, counsel for the Government asked Mr. Azuma about his

understanding of the terms "motion data" and "registration."  *See e.g.*, Azuma Dep. at 126:21-22 ("[W]hen you hear 'motion data' in the field, you have no understanding of what it means?"), 168:10-12 ("We just mentioned the word 'registration' again. When do you consider an object to be accurately registered?").

On March 11, 2019, the Government served its revised preliminary identification of proposed terms, which again identified the terms subject to SAIC's Motion to Strike as proposed terms for construction.  Pl. Mot. Ex. C at 7 ("motion data"), at 2-3 ("wherein boundaries . . . are in registration with . . ."), at 6-7 ("registering . . ." and "in registration with").  Again, however, the Government's revised preliminary identification failed to contend or even indicate that these terms were indefinite.  *See id.*

On March 14, 2019, the parties jointly moved to extend the deadline to "exchange proposed claim constructions including claim terms, supporting intrinsic and extrinsic evidence, and any supporting expert declarations."  Joint Motion to Amend Schedule and Request for Status Conference (ECF No. 57) at 2.  On March 15, 2019, the Court granted the parties' Joint Motion and set a deadline of April 29, 2019 for the exchange of proposed claim constructions along with supporting evidence.  *See* Fifth Amended Scheduling Order, March 15, 2019 (ECF No. 58).  Neither the parties' joint motion nor the Court's Fifth Amended Scheduling Order addresses or mentions indefiniteness contentions.

On April 28, 2019, Dr. Ulrich Neumann, a Government expert, executed a declaration in which he opined that the following terms are indefinite:

- "wherein boundaries of the displayed video images are in registration with boundaries of portions of the visual field represented by the displayed video images."

- "registering the portion of the video feed with the underlying visual field."

- "motion data"

*See* Declaration of Ulrich Neumann in Support of the United States' Proposed Terms for Construction (ECF No. 66) (Neumann Decl.) at 12-18.

Pursuant to the Court's Fifth Amended Scheduling Order, the Government should have disclosed Dr. Neumann's declaration to SAIC on April 29, 2019.  However, without leave from the Court, neither party made the disclosures required by the Court's Fifth Amended Scheduling Order because they had reached an agreement to postpone this deadline to allow Microsoft Corporation to intervene and participate in the claim construction process.  *See* Def. Resp. Ex. 4 (ECF No. 84) at 2.

After Microsoft moved to intervene, the Court amended its Scheduling Order for a sixth time, extending the deadline to "exchange proposed claim constructions including claim terms, supporting intrinsic and extrinsic evidence, and any supporting expert declarations" to June 13, 2019.  *See* Sixth Amended Scheduling Order, May 6, 2019 (ECF No. 60).  Pursuant to this Court's Sixth Amended Scheduling Order, the parties simultaneously exchanged their preliminary identification of proposed terms for construction and supporting evidence on June 13, 2019.  *See* Pl. Mot. Ex. A.  In its June 13, 2019 submission, the Government disclosed for the first time indefiniteness defenses with respect to the following phrases: (1) "wherein boundaries of the displayed video images are in registration with boundaries of portions of the visual field represented by the displayed video images," and "registering the portion of the video feed with the underlying visual field," (2) "in registration with," and (3) "motion data."  Pl. Mot. Ex. A at 10, 12-13.  Also, despite having the declaration in-hand since April 2019, on June 13, 2019, the Government served SAIC with Dr. Neumann's declaration, which opined for the first time on the indefiniteness of: (1) "wherein boundaries of the displayed video images are in registration with

boundaries of portions of the visual field represented by the displayed video images," (2) "registering the portion of the video feed with the underlying visual field," (3) "motion data," and (4) "in registration with."  Neumann Decl. at 12-18.

Upon receipt, SAIC immediately informed the Government that its indefiniteness arguments were untimely and subject to a motion to strike.  *See* Def. Resp. Ex. 1 at 2-3.  Moreover, because the June 20, 2019 deadline for filing the parties' Joint Claim Construction Statement (JCCS) and supporting evidence was imminent, SAIC was forced to hastily procure a responsive declaration on indefiniteness from Dr. Gregory Welch in less than a week.  *See* Def. Resp. Ex. 7 at 9; Sixth Amended Scheduling Order at 2.  Notwithstanding this extremely short timeline, Plaintiff timely obtained a rebuttal declaration from Dr. Welch.  *See* Declaration of Gregory F. Welch, Ph.D. in Support of Science Applications International Corp.'s Proposed Terms for Construction (ECF No. 65) (Welch Decl.).

On June 20, 2019, the parties filed their JCCS with the disputed indefiniteness arguments, Dr. Neumann's declaration supporting those arguments, and Dr. Welch's declaration rebutting those arguments.  *See* JCCS (ECF Nos. 63 & 64); Neumann Decl.; Welch Decl.

On July 11, 2019, SAIC deposed Dr. Neumann.  During the nearly seven-hour deposition, SAIC counsel questioned Dr. Neumann extensively on his opinion as to the arguments subject to this Motion.  *See e.g*., Transcript of Ulrich Neumann Deposition (ECF No. 79-1) (Neumann Dep.) at 96:16-97:15 (questioning relating to the term "registering"), at 132:14-158:9 (questioning relating to the term "wherein boundaries of the displayed video images are in registration with boundaries of portions of the visual field represented by the displayed video images"), at 229:20-257:14 (questioning relating to the term "motion data").  On July 17, 2019, the Government deposed Dr. Welch, SAIC's claim construction expert, who testified that he reviewed Dr.

Neumann's opinion and disagreed with Dr. Neumann's statements that the terms at issue were indefinite.  *See* Transcript of Gregory Welch Deposition (ECF No. 79-2) (Welch Dep.) at 112:5-128:10.

On July 18, 2019, the period for claim construction discovery closed and the parties jointly filed deposition transcripts of their respective claim construction experts.  *See* Science Applications International Corporation's and the United States' Joint Submission of Claim Construction Experts' Deposition Testimony (ECF No. 79).

On October 15, 2019, claim construction briefs were completed.  *See* Defendant-Intervenor Microsoft Corporation's Opening Claim Construction Brief (ECF No. 87) (Microsoft Opening Cl. Constr. Br.); Def. Opening Cl. Constr. Br.; Plaintiff Science Applications International Corp.'s Claim Construction Brief (ECF No. 90) (Pl. Opening Cl. Constr. Br.); Defendant-Intervenor Microsoft Corporation's Responsive Claim Construction Brief (ECF No. 95) (Microsoft Resp. Cl. Constr. Br.); Plaintiff Science Applications International Corp.'s Responsive Claim Construction Brief (ECF No. 96) (Pl. Resp. Cl. Constr. Br.); Defendant United States' Responsive Claim Construction Brief (ECF No. 97) (Def. Resp. Cl. Constr. Br.).  Included in these briefs were the indefiniteness arguments at issue and Plaintiff's responses thereto.  *See, e.g.*, Pl. Resp. Cl. Constr. Br. at 9-12 (arguing the term "motion data" is not indefinite), at 18-20 (arguing the terms "wherein boundaries of the displayed video images are in registration with boundaries of portions of the visual field represented by the displayed video images," "registering the portion of the video feed with the underlying visual field," "in registration with," and "registering," are not indefinite).[6]

After the parties completed claim construction briefing, Microsoft Corporation moved to stay this action pending a decision from the United States Patent Trial and Appeal Board (PTAB)

---

[6] Microsoft did not take a position on these indefiniteness arguments in its claim construction briefs.  Microsoft Opening Cl. Constr. Br. at 1.

concerning whether to institute *inter partes* review (IPR) of the patents-in-suit. *See* Microsoft's Motion to Stay Proceedings (ECF No. 92). The prior judge overseeing this case, the Honorable Mary Ellen Coster Williams, deferred ruling on SAIC's Motion to Strike pending the resolution of Microsoft's Motion to Stay. *See* Order Deferring Decision on Motion to Strike (ECF No. 98). On November 26, 2019, Judge Williams granted a partial stay pending a decision by the PTAB on whether to institute *inter partes* review of the patents-in-suit. *See* Order for Partial Stay (ECF No. 102). On January 27, 2020, the PTAB issued a decision denying institution on each of Microsoft's five petitions for IPR. On February 20, 2020, Judge Williams lifted the stay. *See* Order Lifting Partial Stay (ECF No. 111). On February 27, 2020, the Clerk of Court transferred this case to the undersigned judge. *See* Order Reassigning Case (ECF No. 112).

On May 12, 2020, this Court held a status conference during which it established a schedule for the proceedings in this case through claim construction. *See* May 12, 2020 Scheduling Order (ECF No. 121).

After the status conference, L3 intervened in this case. *See* June 17, 2020 Order (ECF No. 128); L3's Answer (ECF No. 131). Subsequently, the Court permitted L3 to file a claim construction brief and permitted SAIC to respond. *See* September 4, 2020 Scheduling Order (ECF No. 141). In its opening claim construction brief, L3 contended that: "in registration with;" "registering;" "wherein boundaries of the displayed video images are in registration with boundaries of portions of the visual field represented by the displayed video images;" and "registering the portion of the video feed with the underlying visual field" are indefinite. *See* L3 Technologies Opening Claim Construction Brief (ECF No. 148) (Def. L3 Opening Cl. Constr. Br.) at 20-24.[7]

---

[7] This Motion does not relate to L3's indefiniteness arguments.

On November 20, 2020, SAIC filed its responsive supplemental claim construction brief addressing L3's indefiniteness arguments.  *See* Plaintiff Science Applications International Corp.'s Responsive Claim Construction Brief to Third-party Defendant L3 Technolgies, [sic] Inc. (ECF No. 151) (Pl. Resp. Cl. Constr. Br. to Def. L3) at 15-20.

On December 1, 2020, the Court held a pre-Markman hearing during which it informed the parties that it would not strike the indefiniteness arguments but was still considering whether an award of fees to SAIC was appropriate.  Transcript, December 1, 2020 Hearing (ECF No. 156) at 7:6-16.

The Court held a Markman hearing on December 15, 2020, during which, inter alia, the parties fully addressed the indefinite arguments.  *See generally* Transcript, December 15, 2020 Hearing (ECF No. 159).

DISCUSSION

Plaintiff seeks to strike the Government's indefiniteness defenses and seeks an award of expenses for its allegedly untimely disclosure of its indefinite defenses.  *See generally* Pl. Mot.; Pl. Reply; Pl. Supp. Br.; Pl. Supp. Reply.  Plaintiff argues that the Government failed to timely disclose its indefiniteness contentions and that no good cause exists to excuse this untimeliness. Pl. Mot. at 6-11; Pl. Reply at 3-8.  Plaintiff further argues that it is unduly prejudiced by the untimeliness of these disclosures because it did not have an opportunity to fully consider such defenses as it developed its claim construction positions.  Pl. Mot. at 11-12; Pl. Reply at 8-9. Specifically, Plaintiff argues that its counsel and its expert, Dr. Gregory Welch, had less than a week to develop rebuttal positions to the Government's identified theories and that procuring an expert report on this condensed timeline is prejudicial to SAIC.  *See* Pl. Mot. at 2-3, 11-12.

The Government responds that it timely disclosed its indefiniteness defenses because (1) its invalidity positions were disclosed prior to the close of claim construction discovery, and (2) the parties had agreed on their own to allow the Government to supplement its invalidity charts even subsequent to a claim construction order.  Def. Resp. at 3-5, 16.  In other words, the Government argues that it has conformed with this Court's Orders.  *Id.* at 4.  The Government further contends that Plaintiff has not suffered prejudice because it had adequate opportunity to fully respond to the Government's indefiniteness arguments.  *Id.* at 5, 21.  The Government additionally asserts that even if its invalidity contentions were untimely, striking these contentions would be a drastic sanction.  *Id.* at 3 n.3.

Rule 16(b)(4) of the Rules of the United States Court of Federal Claims (RCFC or Rule(s)) permits the modification of a court-imposed schedule "only for good cause and with the judge's consent."[8]  The good cause inquiry is two-fold, asking: (1) whether the moving party was diligent in amending its contentions; and (2) whether the non-moving party would suffer prejudice if these amending contentions were permitted.  *See Cellcast Techs., LLC v. United States*, No. 15-1307, 2019 WL 5959571, at *5 (Fed. Cl. Oct. 30, 2019).  "Considerations in determining a party's diligence include additional or unexpected results of discovery, along with the possibility of unanticipated construction of claim terms according to the court's claim construction order."  *Id.* (citation omitted).  For weighing any prejudice to the moving party, "[c]onsiderations . . . include the effect of amendments on the construction of claim terms or whether experts have staked out

---

[8] On July 2, 2018, this Court adopted the Patent Rules of the United States Court of Federal Claims (PRCFC or Patent Rules), available at Appendix J of the Rules of the United States Court of Federal Claims.  Under these Patent Rules, a defendant and any defendant-intervenors must serve on all parties a Preliminary Disclosure of Invalidity Contentions within fifty-six (56) days after the filing of the Preliminary Disclosure of Infringement Contentions, or as otherwise ordered by the Court.  These Patent Rules were not in effect at time this suit was initiated, and all parties agree that they are inapplicable to the present dispute.  *See* Transcript, August 27, 2020 Hearing at 19:17-23:7, 28:2-17; PRCFC 6.

comprehensive positions with respect to claim construction." *Id.* (internal quotations and citation omitted).

If a court determines that the party seeking to amend or supplement its contentions was not diligent, the court need not consider the question of prejudice as to that party. *See O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1368 (Fed. Cir. 2006); *see also Phigenix, Inc. v. Genentech, Inc.*, 783 F. App'x 1014, 1020 (Fed. Cir. 2019). The court, however, retains discretion to consider untimely submissions even in the absence of diligence so long as there is no prejudice to the opposing party. *Aventis Pharma S.A. v. Hospira, Inc.*, 675 F.3d 1324, 1333 (Fed. Cir. 2012) (finding that the district court did not abuse its discretion in allowing a party to amend its pleadings in part because the non-moving party was not unduly prejudiced by the amendment); *see also Apple Inc. v. Samsung Elecs. Co*., 2012 WL 5632618, at *5-6 (N.D. Cal. Nov. 15, 2012); *U.S. Ethernet Innovations, LLC v. Acer, Inc*., 2013 WL 5609325, at *3 (N.D. Cal. Oct. 11, 2013).

A party's failure to abide by court-ordered deadlines may warrant striking the untimely submissions or may warrant the award of the payment of reasonable expenses, including attorneys' fees. *See* RCFC 16(f)(1)(C); *see also* RCFC 37(b)(2)(C).

I. Timeliness and Diligence

Plaintiff notes that the Government's invalidity defenses are based on the asserted patents. *See* Pl. Mot. at 8-9. These patents were attached to SAIC's Complaint and in the Government's possession since at least June 19, 2017, when SAIC filed the Complaint. *See* Pl. Mot. at 8-9; *see also* Compl. Plaintiff argues that the Government has not explained why it did not disclose its invalidity defenses by October 12, 2018, as directed by the Court's Second Amended Scheduling Order; by February 15, 2019, when the Government served its preliminary identification of proposed terms for construction; by March 11, 2019, when the Government served its

supplemental disclosures of claim terms for construction; or by April 28, 2019, when the Government obtained, but did not disclose, Dr. Neumann's declaration. *See* Pl. Mot. at 2, 4.

The Government does not argue that it acted diligently; instead, it relies heavily on an erroneous interpretation of this Court's scheduling orders. The Government states that SAIC ignores the parties' agreement for "Defendant's final supplementation of Invalidity References and Invalidity Charts." Def. Resp. at 4. In other words, according to the Government, its indefiniteness arguments and supporting evidence could be submitted at any time before the close of claim construction, regardless of Court order, because indefiniteness is part of claim construction. Def. Supp. Resp. at 6-7. Further, according to the Government, these invalidity contentions can be freely amended even after this Court issues its claim construction ruling because the parties' proposed status report allowed for supplementation of invalidity defenses after the Court's claim construction order. Def. Resp. at 16-18 (citing June 8, 2018 Joint Proposed Discovery Schedule (ECF No. 40) which allowed for supplementation of Invalidity References and Invalidity Charts up to ninety (90) days after Claim Construction).

These arguments are without merit. The Government's interpretation of Judge Williams's Scheduling Orders would render the Court's deadline for submission of initial invalidity contentions pointless and does not comport with the norms of discovery practice in patent cases. The United States Court of Appeals for the Federal Circuit, in interpreting the local patent rules in the Northern District of California, noted that discovery practice in patent cases is "designed to address this problem by requiring both the plaintiff and the defendant in patent cases to provide early notice of their infringement and invalidity contentions, and to proceed with diligence in amending those contentions when new information comes to light in the course of discovery." *O2 Micro Int'l Ltd.*, 467 F.3d at 1365-66. These same principles of notice and diligence were

embodied in this Court's scheduling orders, establishing deadlines by which the Government was to submit initial invalidity contentions.  *See e.g.*, Second Amended Scheduling Order (providing that "Defendant shall serve its revised disclosure of prior art and its initial invalidity claim chart" almost four months before the deadline for submission of the JCCS).

The Government's reliance on the parties' April 30, 2018 Joint Proposed Discovery Schedule (which provided for supplemental invalidity contentions to be filed ninety (90) days after the Court's claim construction order) is unavailing because that deadline was never adopted by the Court.  *Compare* April 30, 2018 Joint Proposed Discovery Schedule (ECF No. 30) and June 8, 2018 Joint Proposed Discovery Schedule (providing for supplemental invalidity contentions after the Court's Claim Construction Order) *with* Initial Scheduling Order (April 30, 2018) and First Amended Scheduling Order (June 12, 2018) (not providing for supplemental invalidity contentions after Markman Hearing).  Moreover, while indefiniteness is generally part of claim construction and invalidity defenses generally may be supplemented after a court's claim construction order, supplementing these arguments generally requires a showing of diligence.  *See Johns Hopkins University v. CellPro, Inc*., 152 F.3d 1342, 1357 (Fed. Cir. 1998) (a court's claim construction opinion may provide a basis for a defendant to cite additional invalidating art when the claim construction "change[s] the rules of the game").  Nor did the Court's use of the term "initial" in setting a deadline for "<u>initial</u> invalidity claim chart" excuse the Government from the good cause requirement.  As noted, it is clear from the structure of the Court's Second Amended Scheduling Order that the Court intended for SAIC to disclose its infringement contentions and for the Government to disclose its invalidity contentions well in advance of claim construction.  While the use of "initial" indicates the Court's willingness to amend its scheduling order, it does not indicate that the Court intended the parties to do so without seeking leave to amend.  The last-

minute disclosure of these indefiniteness arguments until days before the JCCS deadline, without seeking leave to amend was not a reasonable interpretation of the Court's Second Amended Scheduling Order.  This is especially true here where the Government's indefiniteness arguments easily could have been advanced near the inception of the case.

Additionally, if the Government believed that the disclosure of indefiniteness was controlled by the deadline for parties to submit their joint claim construction statement, it should have notified the Court of that view.  *See MorphoTrust USA, LLC v. United States*, 132 Fed. Cl. 419, 420 (2017) (defendants should have notified the court if they thought a disclosure deadline should not apply to indefiniteness).  Because the Government did not notify the Court of its interpretation of the scheduling orders or demonstrate diligence prior to amending its invalidity contentions, the Court cannot find that the Government acted diligently.

II. Lack of Prejudice to SAIC

Although the Government's indefiniteness contentions were untimely, SAIC had an adequate opportunity to fully respond to the Government's indefiniteness arguments.  Therefore, contrary to SAIC's assertions, striking the Government's indefiniteness defenses is unwarranted.

In support of its contention that this Court should strike the Government's indefiniteness defenses, SAIC relies heavily on a United States Court of Federal Claims decision, *Morphotrust USA, LLC v. United States*, 132 Fed. Cl. 419, 420 (Fed. Cl. 2017).  *See* Pl. Mot. at 2, 8-10.  That case is inapposite.  Unlike the plaintiff in *Morphotrust*, SAIC has not alleged any prejudice other than having to rebut the Government's newly advanced indefiniteness positions on a compressed deadline.  *Cf. MorphoTrust USA, LLC*, 132 Fed. Cl. at 421 (finding undue prejudice where movant's expert staked out comprehensive positions with respect to claim construction without the understanding the non-movant would challenge several additional terms as indefinite);

*Phigenix, Inc.*, 783 F. App'x at 1017 (excluding infringement theory and supporting evidence that "markedly transformed the nature of the infringement theory, and consequently, impacted [Defendant]'s ability to prepare a defense" (citation omitted)).

Here, the only prejudice to SAIC was having to address the Government's newly asserted indefiniteness positions in on a remarkably rapid timeline.  SAIC has never asserted that it was unable to address the Government's invalidity contentions.  *See Hitkansut LLC v. United States,* 127 Fed. Cl. 101, 109 (2016) ("Plaintiffs do not explicate how the additional disclosure prejudiced them—there is no assertion that their expert was unable to analyze and address this prior art or that any other harm resulted, apart from an assertion by plaintiffs that defendant had adopted a 'new invalidity position.'" (citations omitted)).  Indeed, likely due to Plaintiff's counsel's diligence and swift reaction, Plaintiff fully addressed the Government's indefiniteness contentions by filing an expert rebuttal and by deposing the Government's claim construction expert; it has already addressed these indefiniteness arguments in its claim construction briefs.  *See* Pl. Resp. Cl. Constr. Br. at 9-12 (arguing the term "motion data" is not indefinite), at 18-20 (arguing the terms "wherein boundaries of the displayed video images are in registration with boundaries of portions of the visual field represented by the displayed video images," "registering the portion of the video feed with the underlying visual field," "in registration with," and "registering," are not indefinite); Pl. Resp. Cl. Constr. Br. to Def. L3 at 15-20 (responding to the same indefiniteness arguments made by L3).

Additionally, striking evidence is a remedy typically reserved for severe discovery violations. *Zoltek Corp. v. United States*, 71 Fed. Cl. 160, 171 (2006) ("Exclusion of evidence is an extreme sanction and should be applied only when lesser sanctions are inadequate." (citations omitted)).  While failure to comply with a court order is certainly a severe violation, Rule 37 is

flexible—providing the Court with discretion to ensure such orders are "just." *See* RCFC 37(b)(2)(A); s*ee also* Discretion of District Court in Imposing Sanctions, 8B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2284 (3d ed.). Where a party has not clearly suffered prejudice, this Court's Rules counsel in favor of admission over striking the defense at issue. *See generally* RCFC 37(c) (counseling in favor of permitting the use of untimely information where failure to disclose earlier is harmless); *see also Ty, Inc. v. Softbelly's*, *Inc*., 353 F.3d 528 (7th Cir. 2003) (discovery sanctions should be proportional to the discovery violation). Further, there is a strong public interest in deciding patent invalidity arguments on their merits. *See Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc*., No. C03–01431 SBA, 2006 WL 1329997, at *7 (N.D. Cal. May 15, 2006) ("[D]istrict courts are strongly encouraged to decide issues pertaining to invalidity when presented." (citation omitted)).

Balancing the equities, this Court does not accept that striking potentially dispositive arguments that were fully addressed by SAIC is proportional to the violation at issue here. *Accord Mortg. Grader, Inc. v. First Choice Loan Servs. Inc*., 811 F.3d 1314, 1323 (Fed. Cir. 2016) (finding district court did not err in denying the plaintiff's motion to strike where "(1) expert depositions had not yet occurred, (2) [Plaintiff] had its full length of time to prepare rebuttal expert reports, and (3) there was still approximately a month and a half until the close of discovery" (internal quotation marks and citation omitted)).

III. Appropriate Remedy

It is well-established that a court may award expenses as a sanction pursuant to Rule 16 and Rule 37, where, as here, a party violates a court order. *See Pac. Gas & Elec. Co. v. United States*, 82 Fed. Cl. 474, 483-86 (2008) (finding an award of expenses under Rule 16(f) was appropriate where sanctioned party did not act in bad faith but nonetheless violated a court order

based on an unreasonable interpretation of that order).  Pursuant to Rule 16(f), "[o]n motion or on its own, the court may issue any just orders, including those authorized by RCFC 37(b)(2)(A)(ii)-(vii), if a party or its attorney . . . fails to obey a scheduling or other pretrial order."  RCFC 16(f)(1).  Further, "[i]nstead of or in addition to any other sanction, the court *must* order the party, its attorney, or both to pay the reasonable expenses—including attorney's fees—incurred because of noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust."  RCFC 16(f)(3) (emphasis added) (discussing sanctions in the context of pretrial conferences, scheduling, and management); *see also* RCFC 37(b)(2)(C) (discussing sanctions in the context of noncompliance with a court order); *Zeidman Techs., Inc. v. United States*, 141 Fed. Cl. 726, 732 (2019) (awarding expenses for failure to abide by a court order where, although "the court's language could have been more precise," non-movant's interpretation of that order was unreasonable).

This Court does not condone the Government's actions; it holds that the Government violated Judge Williams's Second Amended Scheduling Order and that such noncompliance was not substantially justified.  *See* ECF No. 43.  Though sufficient prejudice does not exist to warrant striking the Government's indefiniteness defenses, it is undeniable that the Government's tardy disclosure caused SAIC to incur costs it would not otherwise have incurred.  Specifically, the Government's tardiness led to SAIC's good faith Motion to Strike and forced SAIC to scramble to obtain a rebuttal expert report in a matter of days upon the Government's untimely disclosures.  Accordingly, this Court finds that an award of reasonable expenses, including attorneys' fees, is appropriate.  *See* RCFC 16(f)(3); RCFC 37(b)(2)(C).

The Government has not offered any justification, much less a substantial justification, for why it failed to seek leave to amend its indefiniteness contentions.  As noted, the Government filed

its indefiniteness contentions well past the October 12, 2018 deadline established by this Court's Scheduling Order. *See* Second Amended Scheduling Order at 1 (establishing that Defendant shall serve invalidity contentions by October 12, 2018). The Government asserts, for the first time in its supplemental brief, that it did not begin to fully form its specific indefiniteness contentions until early 2019, after deposing Dr. Azuma. *See* Def. Supp. Resp. at 5-6. The Government's assertions may very well have constituted good cause for a motion to amend at that time. However, the Government should have moved to amend its indefiniteness contentions shortly after Dr. Azuma's deposition, or even after its April 2019 execution of Dr. Neumann's Declaration, and certainly prior to its June 13, 2019 exchange of preliminary identification of proposed terms for construction and supporting evidence. It did not do so. The Government should have promptly brought its defenses forward and should not have held disclosure of such defenses until days before the JCCS deadline, forcing Plaintiff to obtain a rebuttal expert report—a process that typically takes some time—in mere days to meet this Court's deadline.

Instead, the Government appears to have relied on an erroneous interpretation that Judge Williams's Scheduling Order permitted the Government to assert indefinite defenses at any time without moving to amend. As noted, that interpretation is not supported by the record. While Plaintiff's litigation position was not prejudiced, the Government's action caused Plaintiff to incur expenses, including but not limited to the costs and fees in filing this Motion and costs and fees associated with obtaining the June 20, 2019 rebuttal expert declaration of Dr. Welch on such short notice.

Accordingly, pursuant to Rules 16 and 37, this Court holds that the appropriate remedy in this circumstance is to award Plaintiff the reasonable costs and expenses, including attorneys' fees, associated with filing its Motion to Strike.

CONCLUSION

For the foregoing reasons, SAIC's Motion to Strike is **GRANTED in part** and **DENIED in part**.  By May 14, 2021, Plaintiff shall submit a certified accounting of reasonable costs and expenses, including attorneys' fees, associated with filing its Motion to Strike.  The certification shall include actual bills, with descriptions, discounted for any redundancies and redacted if necessary.  Additionally, the certification shall explain why the attorneys' hourly rates are reasonable and how the Government's untimely disclosure caused Plaintiff to incur extra costs.  If the Government wishes to oppose the requested costs and expenses as unreasonable, it must do so by May 28, 2021.  Plaintiff may reply to any opposition by June 11, 2021.

IT IS SO ORDERED.

  s/Eleni M. Roumel
ELENI M. ROUMEL
Judge

Dated: April 21, 2021
Washington, D.C.