**CORRECTED**

# In the United States Court of Federal Claims

| | |
|---|---|
| SCIENCE APPLICATIONS INTERNATIONAL CORP., | |
| Plaintiff, | |
| v. | |
| THE UNITED STATES, | No. 17-cv-825 |
| Defendant, | Filed Under Seal: October 19, 2021 |
| and | Publication: October 27, 2021[1] |
| MICROSOFT CORPORATION, | |
| Intervenor-Defendant, | |
| and | |
| L3 TECHNOLOGIES, INC., | |
| Third-Party Defendant. | |

*Stephen R. Smith*, Cooley LLP, Washington, D.C. for Plaintiff. With him on the briefs are *DeAnna D. Allen* and *Emily Terrell*, Washington, D.C.; *Douglas P. Lobel*, Cooley, LLP, Reston, Virginia; and *William D. Belanger* and *Gwendolyn Tawresey*, Pepper Hamilton LLP, Washington, D.C.

*William Carl Bergmann*, Baker & Hostetler, LLP, Washington, D.C., for Third-Party Defendant. With him on the briefs are *Michael Anderson* and *Cassandra Simmons*, Baker & Hostetler, LLP, Washington, D.C.

---

[1] This Memorandum and Order was filed under seal in accordance with the Protective Order entered in this case (ECF No. 34) and was publicly reissued after the parties informed this Court that no redactions would be necessary for public release. (ECF No. 223.) The sealed and public versions of this Memorandum and Order are identical, other than the publication date and this footnote.

**<u>MEMORANDUM AND ORDER</u>**

This case is entering its fourth year of litigation before the trial court, and familiarity with prior proceedings in this action is presumed.  *See* January 19, 2018 Order Denying Motion to Dismiss (ECF No. 14); April 21, 2021 Order Granting in Part and Denying in Part Plaintiff's Motion to Strike (ECF No. 172); August 6, 2021 Claim Construction Opinion (ECF No. 192) (Claim Constr. Op.).  On August 6, 2021, this Court issued its Claim Construction Opinion, holding indefinite several key claim terms in Plaintiff Science Applications International Corporation's (SAIC's) asserted patents.  *See* Claim Constr. Op. at 70-91.  These indefinite terms pervade the claims in SAIC's asserted patents.  Indeed, they are so widespread that, when the parties jointly stipulated to invalidity of the claims containing those indefinite terms, only one of the four asserted patents survived.  *See* Joint Stipulation of Invalidity and Motion for Partial Summary Judgment Regarding the Asserted Patents (ECF No. 208).  As is typical in patent cases, SAIC indicated that it will likely appeal this Court's claim construction given its impact.  *See* Sept. 15, 2021 Joint Status Conference Transcript (ECF No. 205) (Status Conference Tr.) at 13:20-25 ("When we appeal, we need to make sure it's teed up correctly").

That SAIC may appeal this Court's Claim Construction Opinion is unremarkable. However, before embarking on its journey to the U.S. Court of Appeals for the Federal Circuit (Federal Circuit), SAIC effectively seeks to supplement the record.  SAIC contends that additional discovery regarding a license to Third-Party Defendant L3 Technologies, Inc. (L3) from non-party BAE Systems, Inc. (BAE) (the L3-BAE license) and a patent included in that license may uncover evidence that would necessitate a reversal of the Court's claim construction ruling concerning the terms "registering" and "in registration with."  *See id.* at 13:10-14:7.  Specifically, SAIC alleges that this "newly discovered" extrinsic evidence will purportedly demonstrate that one of ordinary

2

skill in the art would understand that the referenced invalid claim terms have a definite meaning. *Id* at 13:1-19.

The history of how this extrinsic evidence suddenly became an issue post-claim construction merits recitation. After SAIC served discovery requests seeking this evidence from L3 and non-party BAE, L3 filed a motion for a protective order seeking to "prohibit[] SAIC from further claim construction discovery." L3 Motion for Protective Order (ECF No. 210) (L3's Mot.) at 1. The protective order that L3 seeks is broad. L3 argues that expanded discovery related to the L3-BAE license and one patent referenced within it will impose an undue burden on L3 to review and produce documents "that are irrelevant to claim construction, cumulative of what the Court has already considered, or which SAIC already had ample opportunity to present." *Id.* at 3. In response, SAIC argues that L3's proposed protective order is overbroad and will inappropriately enable Defendants to avoid discovery related to damages and liability where evidence relevant to those issues is also relevant to claim construction. *See* Opposition to L3 Motion for Protective Order (ECF No. 215) (SAIC's Resp.) at 1. Finally, SAIC urges this Court to deny L3's motion because it lacks the certification required by United States Court of Federal Claims Rule (Rule or RCFC) 26. *Id.* On October 14, 2021, this Court conducted oral argument on the Motion. *See* Oct. 14, 2021 Hearing on L3's Motion for Protective Order Transcript (ECF No. 219) (Hearing Tr.). For the reasons explained below, L3's Motion for a Protective Order is **GRANTED IN PART**.

BACKGROUND

This case assumed its current tack after a prolonged claim construction process, including extensive, multi-year discovery. SAIC filed this patent infringement suit against the United States of America (Government) in June 2017. *See* Complaint for Patent Infringement (ECF No. 1). The Government and SAIC disclosed their respective claim construction experts in November 2018.

3

*See* Defendant's Disclosure of Claim Construction Expert (ECF No. 48); SAIC's Disclosure of Claim Construction Expert (ECF No. 49).  Microsoft intervened in this case as a defendant in April 2019.  *See* Microsoft Corporation's Motion Intervene (ECF No. 59); Order Granting Microsoft's Motion to Intervene (ECF No. 60).  Microsoft, the Government, and SAIC filed a joint claim construction statement in June 2019, in which the parties identified claim terms for construction.  *See* Joint Claim Construction Statement (ECF No. 63).  In that statement, Defendants alleged that the terms "registering" and "in registration with" in the relevant patents are indefinite.  *See* Joint Claim Construction Statement, Ex. A (ECF No. 63-1) at 8.

The parties filed opening claim construction briefs on August 15, 2019.  *See* Microsoft's Opening Claim Construction Brief (ECF No. 87); Government's Opening Claim Construction Brief (ECF No. 89); SAIC's Claim Construction Brief (ECF No. 90).  Two months later, the parties filed responsive claim construction briefs.  *See* Microsoft's Responsive Claim Construction Brief (ECF No. 95); SAIC's Responsive Claim Construction Brief (ECF No. 96); Government's Responsive Claim Construction Brief (ECF No. 97).  After several delays — including a stay related to inter partes review, delays attributable to the Covid-19 pandemic, and subsequent reassignment of the case in 2020 to the present judge — L3 joined the case as a third-party defendant in July 2020.  *See* L3's Answer to Complaint (ECF No. 131); Memorandum and Order Granting Notice to L3 (ECF No. 120); *see also* Order Granting Partial Stay (ECF No. 102); Order Reassigning Proceedings (ECF No. 112).

In October 2020, the Court granted L3 an opportunity to file supplemental claim construction briefing on up to five terms since L3 was not a party when the Government, SAIC, and Microsoft had filed their claim construction briefs.  *See* Sept. 4, 2020 Scheduling Order (ECF No. 141); L3's Opening Claim Construction Brief (ECF No. 148).  Like the other defendants in

4

this action, L3 asserted, *inter alia*, that the terms "registering" and "in registration with" in the patents at issue are indefinite. L3's Opening Claim Construction Brief at 21-24. On the same day that L3 filed its brief, SAIC submitted supplemental briefing on the terms for construction that had L3 proposed. *See* SAIC's Supplemental Claim Construction Brief (ECF No. 149). L3 and SAIC filed their respective responsive claim construction briefs on November 20, 2020. *See* SAIC's Responsive Claim Construction Brief to L3 (ECF No. 151); L3's Responsive Claim Construction Brief (ECF No. 152). On December 15, 2020, this Court held a *Markman* hearing. *See Markman* Hearing Transcript (ECF No. 159).

According to SAIC, L3 was negotiating a patent license agreement with BAE during supplemental claim construction briefing. *See* SAIC's Resp. at 3. L3 and BAE executed the license agreement three days after L3's and SAIC's submission of their responsive claim construction briefs. *See* L3's Mot., Ex. 1 (ECF No. 210-1) at 6. That license covers several patents, but the only one SAIC contends is relevant to this motion is U.S. Patent No. 9,210,384 (the '384 patent). *See id.* The '384 patent is directed to "[a] system and method for real time registration of images . . . ." SAIC Resp., Ex. A (ECF No. 215-1) ('384 patent) at Abstract. Like SAIC's asserted patents, the '384 patent uses the terms "registering" and "registration" in its claims. *See id.* at 6:2-15 (Claim 1), 6:33-36 (Claim 6), 6:62-7:10 (Claim 10). The patent application that ultimately issued as the '384 patent was published on March 20, 2014 — well before SAIC initiated this lawsuit. *See* '384 patent at pg. 2. In March 2019, SAIC also received a copy of the '384 patent from BAE in discovery. *See* L3's Mot., Ex. 4 (ECF No. 210-4) at 1 (listing document number BAE-ENVG-17377 as part of a March 5, 2019 production); L3's Mot., Ex. 2 (ECF No. 210-2) at 13 (noting that the '384 patent was produced at BAE-ENVG-0017377).

Despite that the '384 patent was publicly available to SAIC before it initiated this case, and that SAIC received a copy of the '384 patent early in this case, SAIC did not cite the '384 patent to the Court in support of its arguments that the "registering" and "in registration with" terms are definite. *See generally* SAIC's Claim Construction Brief; SAIC's Responsive Claim Construction Brief; SAIC's Supplement Claim Construction Brief; SAIC's Responsive Claim Construction Brief to L3. Instead, however, SAIC cited several other patents — including one owned by L3 — to suggest that its proposed construction of the terms "registering" and "in registration with" is consistent with how one of ordinary skill in the art would use the term. *See* SAIC's Responsive Claim Construction Brief to L3 at 20 ("Lastly, L3's insistence that the 'registering' claim terms are indefinite contradicts the fact that SAIC's use of these terms is consistent with the way persons of ordinary skill in the art use them, *including Defendants and their contractors*." (emphasis in original)).

SAIC alleges it remained in the dark about L3's license with BAE, covering the '384 patent until June 24, 2021 — six months after this Court conducted its *Markman* hearing — when L3 produced a copy of the L3-BAE license. *See* SAIC's Resp. at 3; Status Conference Tr. at 13:7-9 (SAIC noting that the '384 patent was disclosed to it "in June, late June" 2021), 15:21-16:2 (noting that the L3-BAE license covering the '384 patent was not brought to the Court's attention before issuance of its Claim Construction Opinion). Although SAIC possessed a copy of the L3-BAE license 43 days before this Court issued its August 6, 2021 Claim Construction Opinion, SAIC did not bring the license, or any issues related to the '384 patent, to this Court's attention. *See* SAIC's Resp. at 3; Claim Constr. Op. It was not until over two weeks after the Claim Construction Opinion issued — a total of 60 days after SAIC received the license — that SAIC even hinted to this Court the L3-BAE license or the '384 patent might have had relevance, however remote, to claim

6

construction. *See* Aug. 23, 2021 Joint Status Report (ECF No. 197) at 7. Indeed, rather than straightforwardly filing a motion for reconsideration, SAIC raised the issue of the '384 patent and the L3-BAE license in an unusual way — in a joint status report wherein the parties were to propose to the Court a schedule for further proceedings. *Id.* at 1.

In the joint status report, SAIC alleged that the L3-BAE license was highly relevant to claim construction because the claims and disclosure of the '384 patent "are directly and fundamentally inconsistent with the Defendants' indefiniteness arguments." *Id.* at 7. Three weeks later, SAIC informed the Court at a September 15, 2021 status conference that it may opt to move for reconsideration of the Court's Claim Construction Opinion at some unknown, future point, but only after conducting further post-Opinion discovery relating to claim construction. *See* Status Conference Tr. at 16:15-17:19. The parties also informed the Court at the September 15, 2021 status conference that SAIC had recently served requests for production on L3 and BAE seeking information about the '384 patent and the L3-BAE license. *See id.* at 12:16-18; L3's Mot, Ex. 1; L3's Mot., Ex. 2 (ECF No. 210-2).

SAIC's requests for production to L3 and BAE are nearly identical. *Compare* L3's Mot, Ex. 1 at 7 (L3 RFP Nos. 34-36) *with* L3's Mot., Ex. 2 at 13-14 (BAE RFP Nos. 1-3). SAIC requested all documents related to the '384 patent, including documents related to the decision to enter into the L3-BAE license, the inclusion of the '384 patent in the license, and negotiations for the terms of the license. *See* L3's Mot., Ex. 1 at 7 (L3 RFP No. 34); L3's Mot., Ex. 2 at 13 (BAE RFP No. 1). SAIC also requested "[a]ll Documents relating to any analysis of the '384 patent, including but not limited to its scope, its validity, and its applicability to the Instrumentalities." *See* L3's Mot, Ex. 1 at 7 (L3 RFP No. 35); L3's Mot., Ex. 2 at 14 (BAE RFP No. 2). Finally, SAIC requested all documents related to communications between L3, BAE, the Government, and

7

any other entity, regarding the '384 patent, the L3-BAE license, and any communications regarding those documents. *See* L3's Mot., Ex. 1 at 7 (L3 RFP No. 36); L3's Mot., Ex. 2 at 14 (BAE RFP No. 3).

SAIC explicitly moored these post-claim construction requests for production to its potential future challenge to the Court's construction of the terms "registration" and "in registration with." Indeed, during a recent status conference, SAIC expressly linked its requests to its quest for further extrinsic evidence — all of which, remarkably, SAIC had in hand well prior to issuance of this Court's Claim Construction Opinion. As SAIC's counsel stated during the September 15, 2021 status conference:

> BAE and L3 entered into a license agreement for a patent, the '384 patent, that talks about in claims registering two different images from two different cameras. And we think it has less disclosure than the patents that Your Honor found invalid. . . . We think there is more evidence in the record about what people think are skilled in the art on registration. . . . We're in a situation where now we have evidence that is disclosed after claim construction[2] that we're going to bring to Your Honor's attention at the appropriate time because we need it for the appellate record if we're going to appeal.

Status Conference Tr. at 13:1-19. SAIC further explained that in addition to outstanding discovery requests concerning this extrinsic evidence (*i.e.,* the L3-BAE license and the '384 patent), it had not yet received source code. *See id.* at 16:23-17:12. SAIC contends that source code will refer to registration in a manner consistent with its unsuccessful claim construction positions. *Id.* While the parties discussed damages at the September 15, 2021 status conference in the context of whether to bifurcate proceedings, damages were not discussed in relation to SAIC's discovery requests about the '384 patent and the L3-BAE license. *See id.* at 12:10-26:23. L3 filed the present

---

[2] Later in the status conference, however, SAIC's counsel explained that it had received such information *prior* to issuance of this Court's Claim Construction Opinion. *See* Status Conference Tr. at 13:7-9 (SAIC stating that the '384 patent was disclosed to it "in June, late June" 2021); Claim Construction Op. (issued August 6, 2021).

8

motion two weeks after that status conference. To date, SAIC has not filed a motion to reconsider this Court's Claim Construction Opinion.

## APPLICABLE LEGAL STANDARDS

This Court may issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense if good cause exists. RCFC 26(c)(1). "Good cause requires a showing that the discovery request is considered likely to oppress an adversary or might otherwise impose an undue burden." *Forest Prods. Nw., Inc. v. United States*, 453 F.3d 1355, 1361 (2006). "[T]he party seeking the protective order must show good cause by demonstrating a particular need for protection." *Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1121 (3d Cir.1986). Generic statements that discovery is burdensome or oppressive do not suffice; the moving party must show how each request is not relevant, overly broad, or unduly burdensome by offering evidence of the burden. *Lakeland Partners, L.L.C. v. United States*, 88 Fed. Cl. 124, 133 n.6 (2009).

Further, Rule 26(b)(2)(c) authorizes a court to impose limits if: "(i) the discovery sought is unreasonably cumulative or duplicative, or . . . (ii) the party seeking discovery has had ample opportunity by discovery to obtain the information [sought.]" RCFC 26(b)(2)(C)(i)-(ii). "[D]iscovery, like all matters of procedure, has ultimate and necessary boundaries . . . . [L]imitations come into existence when the inquiry touches upon the irrelevant . . ." *Kellogg Brown & Root Svcs., Inc. v. United States*, 117 Fed. Cl. 1, 5-6 (quoting *Hickman v. Taylor*, 329 U.S. 495, 507-08 (1947)) (alterations in original).

Under this Court's Rules, motions for a protective order "must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an

9

effort to resolve the dispute without court action." RCFC 26(c)(1). L3 did not include a certification in its motion indicating that a meet and confer had occurred. *See* L3's Mot. The Court does not look lightly on noncompliance with its Rules. However, in this circumstance it is evident to the Court from its prior status conference that the parties were at an obvious impasse on whether SAIC's claim construction discovery is appropriate at this stage of the litigation, and it is further evident that L3's motion presents a pressing issue that this Court will have to confront. *See* Status Conference Tr. Given the prior delays in this case,[3] and the clear previous discussion of this issue among the parties to no effect, the most efficient resolution is to address SAIC's discovery requests now.

## DISCUSSION

L3 argues that a protective order is necessary because SAIC continues to request claim construction discovery — after extensive discovery and this Court's Claim Construction Opinion — seeking what would amount to irrelevant and cumulative evidence. L3's Mot. at 2. Specifically, L3 argues that SAIC's September 13, 2021 requests for production are irrelevant because the L3-BAE license does not mention the indefinite terms and only mentions the '384 patent in a list of patents being licensed. *Id.* L3 also argues that the requests for production seek evidence that is cumulative of extrinsic evidence submitted to the Court during claim construction. *Id.* at 2-3. Finally, L3 argues that SAIC's pursuit of broad fact discovery improperly seeks source

---

[3] In addition to the stay and reassignment referenced in the Background, this action involved several previous reassignments to other judges, all of which appears to have delayed proceedings. *See* Apr. 5, 2018 Transfer Order (ECF No. 24) (transferring case from the Honorable Eric G. Bruggink to the Honorable Mary Ellen Coster Williams); June 21, 2019 Transfer Order (ECF No. 67) (transferring case from the Honorable Mary Ellen Coster Williams to the Honorable Richard A. Hertling); July 23, 2019 Recusal Order (ECF No. 83) (recusing the Honorable Richard A. Hertling and transferring the case back to the Honorable Mary Ellen Coster Williams).

code. *Id.* at 3.  SAIC responds that its discovery requests relate to issues beyond claim construction and that further discovery on the L3-BAE license is warranted given its purportedly recent disclosure.  *See* SAIC's Resp. at 1-3.  It also contends that licensing communications are relevant to damages while source code is relevant to the infringement analysis.  *Id.* at 2.  Having considered the parties' arguments, the Court finds it appropriate to issue a protective order precluding further claim construction discovery but notes that SAIC shall not be precluded from propounding discovery legitimately connected to other relevant, remaining issues remaining in this suit.

L3 has satisfied its burden under RCFC 26(c)(1) by demonstrating that SAIC's discovery requests, tailored to gather new, post-claim construction evidence, are irrelevant and cumulative. *Lakeland Partners*, 88 Fed. Cl. at 133 n.6 ("The objecting party bears the burden of demonstrating specifically how, despite the broad and liberal construction afforded the federal discovery rules, each [request] is not relevant" (internal citations and quotations omitted)).  The cumulative and duplicative nature of the evidence related to the '384 patent also supports an order under Rule 26(b)(2)(C) limiting SAIC's ability to further conduct claim construction discovery.  Evidence touching solely on claim construction is irrelevant to issues that remain pending before this Court. SAIC was clear that its recent discovery requests to L3 and BAE are directed at supplementing the record on claim construction, despite the availability of extensive claim construction discovery and access to the license and '384 patent well before this Court resolved claim construction.  At a status conference with this Court, SAIC explained that it served its requests for production of documents related to the '384 patent and the L3-BAE license because it believes that "there is more evidence in the record about what people think are skilled in the art on registration."  Status Conference Tr. at 13:10-13:12.  That may be so, but SAIC possessed the '384 patent both before *Markman* discovery closed on July 18, 2019 and before the October 14, 2020 deadline to submit

11

supplemental claim construction briefing with L3.  *See* May 6, 2019 Scheduling Order (ECF No. 60); Sept. 4, 2020 Scheduling Order. (ECF No. 141).  The appropriate time to submit that evidence was a year ago.

L3's disclosure of its license from BAE several months after the *Markman* hearing does not imbue SAIC's requested discovery with new relevance.  First, it is of no moment that SAIC failed to appreciate the alleged importance of the '384 patent until after it received a copy of the L3-BAE license.  *See, e.g.*, *GoDaddy.com LLC v. RPost Commc'ns Ltd.*, No. CV-14-00126, 2015 WL 6468370 at *2 (D. Ariz. Oct. 27, 2015) ("In its briefing on this motion, GoDaddy does not contend that it was wholly unaware of the Supplemental Exhibits at the time it filed its Responsive Claim Construction Brief.  Rather, GoDaddy ostensibly argues that it was oblivious as to the *relevance* of the Supplemental Exhibits at the time of filing.  Such an argument does not result in a finding of 'good cause.'" (emphasis in original)).  As noted, the '384 patent was in the public domain prior to the inception of this case.  *See* '384 patent at pg. 2 (listing Date of Patent as Dec. 8, 2015).  Further, BAE produced a copy of the '384 patent to SAIC well before the deadline for the parties to submit extrinsic evidence on claim construction.  *See* L3's Mot., Ex. 4 (ECF No. 210-4) at 1 (listing document number BAE-ENVG-17377 as part of a March 5, 2019 production); L3's Mot., Ex. 2 (ECF No. 210-2) at 13 (noting that the '384 patent was produced at BAE-ENVG-0017377).  Additionally, SAIC possessed a copy of the L3-BAE license 43 days before this Court issued its claim construction opinion, and SAIC chose not to alert the Court of, what SAIC now seeks to characterize as, newly-discovered, relevant evidence.  It is inappropriate to burden Defendants with post-*Markman* claim construction discovery now that SAIC regrets its decision to forgo citing the '384 patent during claim construction briefing.

Limiting discovery on this evidence is particularly appropriate where, as here, the evidence is, at most, cumulative. SAIC claims that the discovery it seeks is relevant because the '384 patent's claims and disclosure indicate how the "registering" terms were understood to one of ordinary skill in the art. But SAIC already offered several other patents as extrinsic evidence for the same reason. *Compare* SAIC's Responsive Claim Construction Brief to L3 at 20 (discussing that a patent assigned to L3 uses the term "registration" consistent with SAIC's proposed construction) *with* Status Conference Tr. at 13:10-19 (suggesting that evidence related to the '384 patent and its licensing history show "what people think [that] are skilled in the art on registration"). SAIC has not demonstrated that the '384 patent adds anything new. Nor could it. If anything, the '384 patent's insight into the terms in the patents in suit adds less than the other cited patents because it is assigned to a third party, while at least one of the patents that SAIC previously cited on this issue is assigned to L3. *See* SAIC's Responsive Claim Construction Brief to L3 at 20 (discussing that a patent assigned to L3 uses the term "registration" consistent with SAIC's proposed construction). Because such evidence is duplicative of evidence SAIC cited to the Court during claim construction, and since SAIC did not timely pursue such discovery before the claim construction hearing, SAIC is precluded from seeking discovery related to the '384 patent now.

SAIC's discovery requests related to the history of the L3-BAE license are more complicated. The license relates to technology that arguably has some overlap with the accused products. This suggests the license may be relevant to evaluating damages. It would be inappropriate to limit damages discovery at this point in the litigation. Accordingly, related to the L3-BAE license, it is necessary for the Court to issue a targeted order protecting Defendants from

13

the burden of irrelevant discovery while also allowing SAIC the full extent of discovery on issues such as infringement and damages.

That SAIC did not receive a copy of the L3-BAE license until six months after the *Markman* hearing is inconsequential at this litigation stage, as the license is irrelevant to whether the "registering" terms are indefinite. SAIC suggests that cases like *Procter & Gamble Co. v. CAO Grp., Inc.*, No. 1:13-cv-337, 2014 WL 2116994 (S.D. Ohio May 21, 2014), and *Bancorp Servs., L.L.C. v. Hartford Life Ins. Co.*, 359 F.3d 1367 (Fed. Cir. 2004), support an inference that L3's payment to license a patent that includes the term "registering" is a representation at odds with L3's argument that SAIC's patent claims asserting similar terms are indefinite. *See* SAIC's Resp. at 3. SAIC is mistaken. Both cases explain that it is the defendant's, rather than a third party's, use of a term that is relevant. *See Procter & Gamble*, 2014 WL 2116994 at *4 (explaining how defendant's advertisements described the accused product in terms like those that it alleged lacked discernable meaning in the asserted patents, and concluding that "[*d*]*efendant's* documents support a finding that the 'unobtrusive' phrase has a discernable meaning and is not indefinite" (emphasis added)); *Bancorp*, 359 F.3d at 1376 ("[T]he evidence of *defendants'* knowledge and use of the term prior to patenting is relevant to show that the term was in use and had a discernible meaning to at least some persons practicing in the field." (emphasis added)). Here, the '384 patent's use of the term "registering" is not a statement by L3; L3 is not the owner of the patent, and L3 did not prosecute the patent. *See* SAIC Resp., Ex. A at pg. 2. L3 is a mere licensee.

Nor should L3's license concerning the '384 patent be construed as a statement that all of the terms in the '384 patent are definite. While parties enter into agreements assuming that the licensed patents are valid, and while many patent owners will warrant as much, parties also understand that an issued patent is merely presumed valid. *See* 35 U.S.C. § 282(a). At most, L3's

14

position in this case might suggest that it overpaid for a license that may include patents with one or more invalid claims. L3's risk tolerance for licensing BAE patents that may potentially include invalid claims does not shed any light on the meaning of the "registering" terms in the patents at issue in the present action. Even if timely raised, which it was not, SAIC's proposed line of discovery is exceedingly unlikely to produce new evidence relevant to claim construction. Accordingly, a protective order is appropriate to shield Defendants and third parties from the costs of such burdensome, irrelevant discovery.

SAIC's conduct after receiving the L3-BAE license further undercuts SAIC's claim that this allegedly new evidence would be necessary for this Court to reconsider its claim construction. Forty-three days elapsed between when SAIC received the license and when the Court issued its Claim Construction Opinion. *See supra* Background, p.6. SAIC could have brought the license to the Court's attention if it believed that it would affect this Court's claim construction decision. It chose not to do so. SAIC's inaction suggests that it did not believe the L3-BAE license was important for claim construction until the Court issued an Opinion holding key terms indefinite.

Even after the Court issued its Claim Construction Opinion, SAIC did not present the license issue to this Court with any urgency. It only brought the license to this Court's attention in a joint status report. Rather than file a motion for reconsideration based on the allegedly newly-disclosed license, SAIC instead seeks further discovery, presumably because it understands that the license itself is not the significant type of evidence that could support a reconsideration of this Court's Claim Construction Opinion. This Court's discretion to enter a protective order is designed for just this scenario: where a party wants to embark on a fishing expedition based on irrelevant evidence that itself is not likely to lead to any relevant evidence. *See Monarch Assur. P.L.C. v. United States*, 244 F.3d 1356, 1365 (Fed. Cir. 2001) (explaining that "the trial court is

not expected to, nor should it, simply allow plaintiffs to embark on a wide-ranging fishing expedition in hopes that there may be gold out there somewhere").

However, as L3 acknowledges and this Court agrees, discovery concerning other issues such as damages must remain available to SAIC at this stage in the proceedings.  *See* Hearing Tr. at 21:5-8; *see also In re MSTG, Inc.*, 675 F.3d 1337, 1348 (Fed. Cir. 2012) (holding documents pertinent to the issue of a reasonable royalty).  Accordingly, if a discovery request is directed towards evidence with relevance to both claim construction and other issues such as damages, Defendants must produce it.  *See* Hearing Tr. at 8:3-13, 21:6-8.  For example, SAIC's requests for source code, to the extent otherwise relevant, would be permissible under this protective order because SAIC will likely need to review the source code to prove its infringement case.  Additionally, SAIC may pursue discovery on the economic terms of the L3-BAE license because that information may be relevant to damages.  This protective order prohibits SAIC from conducting further discovery that is relevant solely to claim construction.  Going forward in discovery, consistent with this Memorandum and Order, SAIC must clearly articulate the relevance of any discovery that Defendants in good faith challenge as solely relevant to claim construction issues.

Finally, as noted *supra*, based on SAIC's own statements that its September 15, 2021 discovery requests are intended to further develop claim construction arguments premised on the '384 patent, SAIC may not seek discovery related to the '384 patent.  *See* Status Conference Tr. at 13:1-25, 16:23-17:12; *supra* Background, pp. 7-8.

CONCLUSION

For good cause shown, L3's Motion for a Protective Order (ECF No. 210) is **GRANTED IN PART**. Consistent with this Memorandum and Order, SAIC is prohibited from further discovery related solely to claim construction. The parties are **ORDERED** to meet and confer to discuss proposed terms for a supplemental protective order consistent with the terms of this Memorandum and Order. Following that meeting, the parties shall **FILE** a joint proposed protective order **by October 28, 2021**.

If the parties cannot agree on the terms of the joint proposed protective order, the parties shall highlight in a Joint Status Report any such specific terms and the basis for such disagreement. The Joint Status Report shall also include a meet and confer certification consistent with this Court's Rules.

The terms of the joint proposed protective order shall not preclude SAIC from obtaining discovery concerning relevant remaining issues in this action, including by way of example, infringement and damages. Additionally, the joint proposed protective order shall prohibit SAIC from pursuing discovery on topics that SAIC indicates, or has indicated, were directed towards claim construction, such as the following topics outlined in SAIC's September 13, 2021 requests for production to L3 and BAE:

- Analysis of the '384 patent's scope, *see e.g.*, L3's Mot., Ex. 1 at 7 (L3 RFP No. 35); L3's Mot., Ex. 2 at 14 (BAE RFP No. 2);

- Analysis of the '384 patent's validity, *see e.g.*, L3's Mot., Ex. 1 at 7 (L3 RFP No. 35); L3's Mot., Ex. 2 at 14 (BAE RFP No. 2);

- Analysis of the '384 patent's applicability to the accused instruments, *see e.g.*, L3's Mot., Ex. 1 at 7 (L3 RFP No. 35); L3's Mot., Ex. 2 at 14 (BAE RFP No. 2);

- Communications concerning the '384 patent, *see e.g.*, L3's Mot., Ex. 1 at 7 (L3 RFP No. 36); L3's Mot., Ex. 2 at 14 (BAE RFP No. 3); and

- Communications concerning a summary or assessment of the '384 patent, *see e.g.*, L3's Mot., Ex. 1 at 7 (L3 RFP No. 36); L3's Mot., Ex. 2 at 14 (BAE RFP No. 3).

The parties are directed to **CONFER** and **FILE** a **NOTICE by October 26, 2021**, attaching a proposed public version of this Sealed Memorandum and Order, with any competition-sensitive or otherwise protected information redacted.

IT IS SO ORDERED.

                                            s/Eleni M. Roumel
                                            ELENI M. ROUMEL
                                                   Judge

October 19, 2021
Washington, D.C.