# In the United States Court of Federal Claims

SCIENCE APPLICATIONS
INTERNATIONAL CORP.,

          Plaintiff,

          v.

THE UNITED STATES,

          Defendant,

          and

MICROSOFT CORPORATION,

          Intervenor-Defendant,

          and

L3 TECHNOLOGIES, INC.,

          Third-Party Defendant.

No. 17-cv-825

Filed Under Seal: July 28, 2022

Publication: August 5, 2022[1]

---

*Stephen R. Smith*, Cooley LLP, Washington, District of Columbia for Plaintiff.  With him on the briefs are *DeAnna D. Allen*, Cooley LLP, Washington, District of Columbia; *Douglas P. Lobel*, Cooley LLP, Reston, Virginia; and *Gwendolyn Tawresey*, Troutman Pepper Hamilton Sanders LLP, Washington, District of Columbia.

*Alex Hanna*, United States Department of Justice, Civil Division, Commercial Litigation Branch, Washington, District of Columbia for Defendant.  With him on the briefs are *Brian M. Boynton*, Principal Deputy Assistant Attorney General, Civil Division; *Gary L. Hauskin*, Director, Intellectual Property; and *Scott Bolden*, Civil Division.

*Thomas L. Halkowski*, Fish & Richardson P.C., Washington, District of Columbia for Intervenor-Defendant.  With him on the briefs are *Ahmed J. Davis*, *W. Freeman, Jr.*, and *Tracea L. Rice*, Fish & Richardson P.C., Washington, District of Columbia.

---

[1] This Memorandum and Order was originally filed under seal, in accordance with the Protective Order entered in this case (ECF No. 34), and the parties consented to republication without redactions.  (ECF No. 298.)  The sealed and public versions of this Memorandum and Order are identical, except for the publication date and this footnote.

*William C. Bergman*, Baker & Hostetler LLP, Washington, District of Columbia for Third-Party Defendant. With him on the briefs are *Charles C. Carson* and *Cassandra Simmons*, Baker & Hostetler LLP, District of Columbia.

## MEMORANDUM AND ORDER

On August 6, 2021, this Court issued its Claim Construction Opinion, holding indefinite several key claim terms in Plaintiff Science Applications International Corporation's (SAIC's) asserted patents. *See Sci. Applications Int'l Corp. v. United States*, 154 Fed. Cl. 594, 634-39 (2021) (Claim Construction Opinion). In response, the parties jointly stipulated to the invalidity of the claims containing those indefinite terms, and consequently only one of the four originally asserted patents remains. *See* Joint Stipulation of Invalidity and Motion for Partial Summary Judgment Regarding the Asserted Patents (ECF No. 208) (Joint Stipulation). Plaintiff spent the next several months pursuing discovery regarding Defendant L3 Technologies, Inc.'s (L3's) procurement of an intellectual property license that it contends is related to the accused products. *See* L3's Motion for Protective Order (ECF No. 210) (L3's Mot.); Plaintiff's Response in Opposition to L3's Motion for Protective Order (ECF No. 215) (Pl.'s Opp'n).

Due to its discovery pursuits, Plaintiff waited until four months after this Court issued its Claim Construction Opinion to move for reconsideration of the Opinion. *See* Plaintiff's Motion for Reconsideration (ECF No. 253) (Pl.'s Recons. Mot.) at 23 (noting Plaintiff originally filed its Motion for Reconsideration on December 10, 2021).[2] Pending before this Court is Plaintiff's Motion for Reconsideration pursuant to Rule 59 of the Rules of the United States Court of Federal Claims, seeking reversal of this Court's holding that "in registration with" and "registering"

---

[2] This Court struck Plaintiff's initial motion for reconsideration based on noncompliance with U.S. Court of Federal Claims formatting requirements. *See* Order Striking Plaintiff's Motion for Reconsideration, Plaintiff's Redacted Motion for Reconsideration, and Plaintiff's Reply in Support of Its Motion for Reconsideration (ECF No. 252). The version of Plaintiff's Motion for Reconsideration addressed in this Memorandum and Order — ECF No. 253 — is substantively identical to the original version filed at ECF No. 250.

(collectively the Registration Terms) are indefinite.  Plaintiff's Motion for Reconsideration (ECF No. 253) (Pl.'s Recons. Mot.).   Plaintiff's Motion for Reconsideration largely recycles the arguments it previously asserted to oppose L3's Motion for a Protective Order.  *Compare* Pl.'s Recons. Mot. at 10-22, *with* Pl.'s Opp'n at 1-3.  Plaintiff adds to those arguments by contending that L3's patent license from a non-party demonstrates that a person of ordinary skill in the art (POSITA) would understand the Registration Terms with reasonable certainty, rendering those terms definite.  Pl.'s Recons. Mot. at 5-6.  This Court remains unpersuaded.  Accordingly, and for the reasons explained below, Plaintiff's Motion for Reconsideration is **DENIED**.

<u>BACKGROUND</u>

Familiarity with prior proceedings in this action is presumed.  *See, e.g.*, *Sci. Applications Int'l Corp. v. United States*, 135 Fed. Cl. 661 (2018); Claim Construction Opinion; *Sci. Applications Int'l Corp. v. United States*, 156 Fed. Cl. 486 (2021).  As a brief overview, Plaintiff filed a complaint with this Court alleging "that the United States infringed the SERVAL Patents by entering into contracts with Plaintiff's competitors for the manufacture and subsequent use of night vision goggle weapon systems with specialized heads up displays that allegedly use Plaintiff's patented technology."  *Sci. Applications Int'l Corp. v. United States*, 148 Fed. Cl. 268, 269 (2020); Complaint (ECF No. 1) (Compl.) ¶¶ 2, 37.  The complaint asserted four patents: U.S. Patent Nos. 7,787,012 (the '012 patent), 8,817,103 (the '103 patent), 9,229,230 (the '230 patent), and 9,618,752 (the '752 patent) (collectively the Asserted Patents).  This Court's Claim Construction Opinion provides comprehensive overviews of each patent.  *See* Claim Construction Opinion at 598-609.

Relevant to the present Motion, this Court's Claim Construction Opinion held that several key terms in the Asserted Patents were indefinite.  Those terms were so pervasive that that parties

3

stipulated to partial summary judgment of invalidity for all claims of the of the '012 patent, '103 patent, and '752 patent, as well as claims 3, 17 and 31 of the '230 patent. *See* Joint Stipulation; Order Granting Motion for Partial Summary Judgment (ECF No. 213). In the months between issuance of this Court's Claim Construction Opinion and Plaintiff's present Motion for Reconsideration, Plaintiff sought additional discovery that it believed could uncover evidence supporting a motion for reconsideration. *See* Transcript of Status Conference, dated September 15, 2021 (ECF No. 205) at 12:10-18; L3's Mot. at 1. L3 opposed such discovery, filing a motion for a protective order. L3's Mot. On October 19, 2021, this Court granted L3's motion for a protective order precluding such discovery. ECF No. 221 (under seal); *Sci. Applications Int'l Corp. v. United States*, 156 Fed. Cl. 486 (2021) (Protective Order Decision); *see also* ECF 229 (Nov. 3, 2021 Protective Order).

## I.    This Court's Claim Construction Opinion

The parties sought construction of six groups of terms. Claim Construction Opinion at 598. Of those terms, only the Registration Terms are relevant to the present Motion. Pl.'s Recons. Mot. at 5. The Registration Terms appear in four types of claim limitations in the Asserted Patents. *See* '012 patent at 9:62-12:3; '103 patent at 10:6-59; '752 patent at 25:1-28:58; '230 patent at 24:24-30:42.

First, the '012 patent claims "method[s] of registering video images with an underlying visual field" that, among other things, comprise "registering [a] portion of [a] video feed with the underlying visual field." '012 patent at 10:48-57. Second, the '012 and '103 patents claim methods comprising the step of, and systems with components adapted for, displaying video images on a transparent display in positions "that overlay portions of the visual field represented by the displayed video images, wherein boundaries of the displayed video images are in

registration with boundaries of portions of the visual field represented by the displayed video images." '012 patent at 9:62-10:10; '103 patent at 10:6-31. Third, the '752 patent claims (1) systems with a controller capable of, (2) methods comprising the step of, and (3) non-transitory machine-readable media with machine-executable instructions for performing a method step of "displaying at least a portion of [a] first image and [a] selected part of [a] second image such that the selected part of the second image replaces the selected part of the first image and is in registration with regions of the first image surrounding the selected part of the first image." '752 patent at 25:1-36, 26:19-47, 27:31-59. Fourth, the '230 patent claims (1) systems with a controller capable of, (2) methods comprising the step of, and (3) non-transitory machine-readable media with machine-executable instructions for performing a method step of using "motion data to determine an amount by which [a] second video source image portion should be rotated relative to [a] first video source image portion so that the second video source image portion is in registration with areas of the first video source image portion adjacent to the corresponding region." '230 patent at 24:58-25:3, 26:52-63, 28:44-56.

During claim construction briefing, Defendants United States (Government or Defendant) and L3 argued that the Registration Terms "are indefinite because the terms are (1) subjective and the patents fail to disclose parameters for acceptable degrees of error or inform a POSITA *when* registration is achieved, and (2) the patents fail to disclose *how* registration is accomplished." Claim Construction Opinion at 634 (emphasis in original). According to the Government, "without such criteria, a POSITA reviewing the intrinsic record would not be able to determine the objective scope of the registration terms with reasonable certainty." *Id.* This Court agreed and held that the "in registration with" and "registering" terms are indefinite. *Id.*

Starting with a review of the intrinsic record, as required by *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005), this Court explained that "the patents fail to provide objective criteria for a POSITA to determine with reasonable certainty when registration is accomplished." Claim Construction Opinion at 634. The '012 and '103 patents (collectively the First Patent Family) do not define "registration." *See id.* at 635. The '230 and '752 patents (collectively the Second Patent Family) incorporate by reference the First Patent Family's disclosure without adding any definition for "registration" or "in registration with." *See id.*

This Court next addressed four aspects of the Asserted Patents' specifications that Plaintiff misconstrued as offering objective criteria to determine whether "registration" is achieved. *See id.* at 634-38. First, this Court explained that the '230 patent's use of the terms "proper alignment" and "distinctly offset" did not provide objective criteria to determining if images were in registration because the invention could employ a panoply of registration techniques, each with different parameters. *Id.* at 635. "What is considered proper alignment using one measurement technique will not be considered proper alignment using another technique." *Id.*

Second, this Court explained why the figures in the Asserted Patents fail to provide objective guideposts for determining registration. *Id.* at 635-36. The Court noted that the only direction found in the figures is a series of high-level flowcharts that "give very little guidance to a POSITA as to how registration is objectively measured." *Id.* at 636. Those charts merely "direct a POSITA to registration techniques that 'are well known in the art.'" *Id.* at 635 (citing '012 patent at 6:62-64). For example, Figures 5A and 5B of the Second Patent Family illustrate the registration process and only disclose that image alignment is "'evaluated' using image data and adjusted as needed before it is displayed on the HUD." *Id.* at 635. While the specification shared by the Second Patent Family stated that various metrics may be used to evaluate image alignment, it did

not explain when to use certain metrics over others.  *Id.* at 635-36.  As this Court explained, such high-level disclosure "prevents a POSITA from ascertaining the scope of registration with reasonable certainty because different registration methodologies involve different parameters for determining whether registration has been accomplished."  *Id.* at 636 (citing *Ball Metal Beverage Container Corp. v. Crown Packaging Tech., Inc*., 838 F. App'x 538, 542-43 (Fed. Cir. 2020)).

Third, this Court rejected SAIC's argument "that the patents provide reasonable certainty by disclosing examples of a registered image and an unregistered image."  *Id.* at 637.  While "a claim term can be rendered definite through the use of examples that provide points of comparison," each example cited by Plaintiff fails to "adequately inform a POSITA of the invention's metes and bounds with reasonable certainty."  *Id.* (citing *Sonix Tech. Co., Ltd. v. Publ'ns Int'l, Ltd*., 844 F.3d 1370, 1379 (Fed. Cir. 2017)).  The Court noted that in the first example, "the patents state that the images in that figure are registered but do not disclose any offset.  In the counterexample taken from the prior art, Figure 1 illustrates a very significant offset, which the patents describe as not in registration."  *Id.* at 637.  These two examples established extremes on the opposite ends of a vast spectrum, leaving a POSITA "to wonder what other images could fall between these two figures and still be considered registered."  *Id.*

Fourth, and finally, this Court explained that the Asserted Patents' discussion of registration error did not provide the requisite certainty for the Registration Terms.  *See id.* at 637-38.  The Court noted that the '012 patent's specification explains how an approximately 2.9-degree parallax error in a video frame's placement when the target is 10 meters away from the user is not an issue because the invention would mostly be used with targets farther than 10 meters away from the user.  *Id.*  This, the Court explained, does not provide objective criteria for when registration occurs as the 2.9 degree error measurement assumes the scope and goggle images are "perfectly

aligned," and both parties' experts agreed that perfect alignment is impossible.  *Id.* at 638 (quoting '012 patent at 8:52-53).

After concluding that the intrinsic evidence did not offer objective criteria for determining registration, this Court examined the extrinsic evidence offered by the parties and again concluded that the Registration Terms are indefinite.  *See* Claim Construction Opinion at 638-39.   As summarized in the Claim Construction Opinion, "testimony from both experts establishes that registration can be measured multiple ways and that different measuring techniques will yield different results in determining whether registration has occurred.  Both experts also agreed that determining whether registration is achieved is dependent upon the application and the user's tolerance for registration errors."  *Id.* at 636.   In such situations, this Court explained, the patent "needs to provide some objective criteria for assessing an acceptable variance from perfect registration for a POSITA to determine the scope of the registration terms with reasonable certainty."  *Id.* at 637 (citing *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1371-74 (Fed. Cir. 2014)).  As this Court noted, Plaintiff's expert confirmed that no such objective criteria exists: "[s]itting here right now, I don't recall that there's anywhere where the patents disclose something like acceptable offsets."  *Id.* at 638 (quoting Joint Submission of Cl. Constr. Experts, Ex. 2 Gregory Welch Deposition Transcript (ECF No. 79-2) at 170:2-18).

The Court concluded by noting the similarities between the Registration Terms in the Asserted Patents and the "minimal redundancy" term held indefinite in *Berkheimer v. HP Inc.*, 881 F.3d 1360 (Fed. Cir. 2018):

> Here, like in *Berkheimer*, neither the disclosure of examples nor registration errors provide reasonable certainty of the bounds of registration.  As was the case in *Berkheimer*, because perfect registration cannot be accomplished, the patents must disclose an acceptable level of "offset."  The examples here are too extreme to provide objective criteria to a POSITA; and, like *Berkheimer*, expert testimony supports this conclusion.  Both experts agree that (1) registration is context

dependent, (2) the patents do not claim perfect registration, and (3) the patents do not disclose an acceptable offset.

Claim Construction Opinion at 639.   After careful review and consideration of the parties' arguments, this Court held that the terms "registering" and "in registration with" are indefinite.  *Id.*

## II.   Stipulation Following Claim Construction

Subsequently, the Government moved for partial summary judgment of invalidity under Rule 56.  Defendant's Rule 56 Motion for Partial Summary Judgment of Invalidity Based on Court's Prior Holding of Indefiniteness (ECF No. 202).  Defendant withdrew the motion, however, after the parties filed a Joint Stipulation of Invalidity and Motion for Partial Summary Judgment. *See* Joint Stipulation; Order Withdrawing Defendant's Motion for Partial Summary Judgment (ECF No. 212).  The parties jointly stipulated "to entry of summary judgment under RCFC 56 that all claims of the '012, '103, and '752 patents and claims 3, 17, and 31 of the '230 patent, are invalid."  Joint Stipulation ¶ 2.  They further stipulated that "the parties do not seek entry of a partial final judgment under Rule 54(b)."  *Id.* ¶ 9.  On October 4, 2021, this Court granted the parties' motion and entered "summary judgment under Rule 56 that all claims of the '012, '103, and '752 patents and claims 3, 17, and 31 of the '230 patent, are invalid."  Order Granting Motion for Partial Summary Judgment (ECF No. 213).

## III.   SAIC's Belated *Markman* Discovery

On September 13, 2021, more than 9 months after this Court's *Markman* hearing and approximately 1 month after this Court published its Claim Construction Opinion, Plaintiff served requests for production on L3 and non-party BAE Systems, Inc. (BAE) seeking information about U.S. Patent No. 9,210,384 (the '384 patent) and a license for the '384 patent from BAE to L3 (the L3-BAE license).  L3's Mot, Ex. 1 (ECF No. 210-1); L3's Mot., Ex. 2 (ECF No. 210-2).

Three days after L3's and SAIC's submission of their responsive claim construction briefs, L3 and BAE executed an intellectual property license, relating in part to BAE's licensure of the '384 patent. *See* L3's Mot., Ex. 1 at 7. The '384 patent is directed to "[a] system and method for real time registration of images . . . ." SAIC Resp., Ex. A (ECF No. 215-1) ('384 patent) at Abstract. Like SAIC's Asserted Patents, the '384 patent uses the terms "registering" and "registration" in its claims. *See, e.g.*, *id.* at 6:2-15 (Claim 1), 6:33-36 (Claim 6), 6:62-7:10 (Claim 10). Despite its later position that the L3-BAE license itself was important for use in claim construction, it failed to bring the license to the Court's attention prior to issuance of the Claim Construction Opinion. Specifically, Plaintiff could have brought the license to this Court's attention in the six weeks between its June 24, 2021 receipt of the license and the August 6, 2021 issuance of this Court's Claim Construction Opinion; it chose not to do so. *See* Claim Construction Opinion (published on August 6, 2021); Protective Order Decision at 493-94. Instead, Plaintiff first alerted the Court of the L3-BAE license in a Joint Status Report proposing schedule revisions following this Court's Claim Construction Opinion. Joint Status Report, dated August 23, 2021 (ECF No. 197) (JSR). Specifically, Plaintiff "alleged that the L3-BAE license was highly relevant to claim construction because the claims and disclosure of the '384 patent 'are directly and fundamentally inconsistent with the Defendants' indefiniteness arguments.'" Protective Order Decision at 490 (quoting JSR at 7).

As noted, Plaintiff claims it did not learn of this allegedly crucial claim construction evidence "until June 24, 2021 — six months after this Court conducted its *Markman* hearing — when L3 produced a copy of the L3-BAE license." Protective Order Decision at 489. While Plaintiff may not have received a copy of the L3-BAE license until that date, it is undisputed that Plaintiff received a copy of the '384 patent in early 2019, during claim construction discovery.

*See* L3's Mot., Ex. 4 (ECF No. 210-4) at 2 (listing document number BAE-ENVG-17377 as part of a March 5, 2019 production); L3's Mot., Ex. 2 (ECF No. 210-2) at 13 (noting that the '384 patent was produced at BAE-ENVG-0017377).  Additionally, Plaintiff had access to the patent application that ultimately issued as the '384 patent before Plaintiff filed this lawsuit, as the Patent Office published that patent application on March 20, 2014.  *See* '384 patent at Prior Publication Data.

Notwithstanding that Plaintiff possessed the '384 patent during claim construction discovery and chose not to discuss it during briefing, Plaintiff contended that the '384 patent took on new importance when L3 began negotiating with BAE for a license that encompassed the '384 patent.  *See* Protective Order Decision at 489.  Based on that new importance, Plaintiff's requests for production sought broad swaths of information related to the '384 patent:

> SAIC requested all documents related to the '384 patent, including documents related to the decision to enter into the L3-BAE license, the inclusion of the '384 patent in the license, and negotiations for the terms of the license.  *See* L3's Mot., Ex. 1 at 7 (L3 RFP No. 34); L3's Mot., Ex. 2 at 13 (BAE RFP No. 1).  SAIC also requested "[a]ll Documents relating to any analysis of the '384 patent, including but not limited to its scope, its validity, and its applicability to the Instrumentalities."  *See* L3's Mot, Ex. 1 at 7 (L3 RFP No. 35); L3's Mot., Ex. 2 at 14 (BAE RFP No. 2).  Finally, SAIC requested all documents related to communications between L3, BAE, the Government, and any other entity, regarding the '384 patent, the L3-BAE license, and any communications regarding those documents.  *See* L3's Mot., Ex. 1 at 7 (L3 RFP No. 36); L3's Mot., Ex. 2 at 14 (BAE RFP No. 3).

Protective Order Decision at 490.

IV.   This Court's Protective Order Prohibiting Post-*Markman*, Claim-Construction Discovery

Sensing that Plaintiff's discovery requests were an improper attempt to relitigate claim construction, L3 requested this Court issue a protective order to "prohibit[ ] SAIC from further claim construction discovery."  L3's Mot. at 1.  Specifically, L3 argued that discovery related to the L3-BAE license and the '384 patent would impose an undue burden on L3 to review and

produce documents "that are irrelevant to claim construction, cumulative of what the Court has already considered, or which SAIC already had ample opportunity to present." *Id.* at 3.

This Court agreed with L3 and issued a protective order prohibiting Plaintiff "from further discovery related solely to claim construction." Protective Order Decision at 494. As this Court explained, the evidence L3 sought "is, at most, cumulative." *Id.* at 492. Indeed, during claim construction briefing, SAIC referenced several patents with similar terms to support its contention that the Registration Terms would be understood as definite terms by a POSITA. *Id.* The Court found the '384 patent even less persuasive evidence than those patents, especially because, unlike the '384 patent, one such patent was assigned to a party, L3. *Id.* at 492-93.

Putting aside that Plaintiff failed to alert the Court of the L3-BAE license prior to issuance of the Claim Construction Opinion, the Court found that Plaintiff's lack of access to the L3-BAE license during claim construction discovery and briefing was irrelevant. *Id.* at 493 ("the license is irrelevant to whether the 'registering' terms are indefinite"). It further reasoned that "L3's license concerning the '384 patent [should not] be construed as a statement that all of the terms in the '384 patent are definite." *Id.* Specifically, this Court explained that:

> While parties enter into agreements assuming that the licensed patents are valid, and while many patent owners will warrant as much, parties also understand that an issued patent is merely presumed valid. *See* 35 U.S.C. § 282(a). At most, L3's position in this case might suggest that it overpaid for a license that may include patents with one or more invalid claims. L3's risk tolerance for licensing BAE patents that may potentially include invalid claims does not shed any light on the meaning of the "registering" terms in the patents at issue in the present action.

*Id.* This Court further distinguished the cases Plaintiff cited in support of its position, as those cases involved a defendant's use, as opposed to a non-party's use, of an allegedly indefinite term. *Id.* (distinguishing *Procter & Gamble Co. v. CAO Grp., Inc.*, No. 1:13-cv-337, 2014 WL 2116994 (S.D. Ohio May 21, 2014), and *Bancorp Servs., L.L.C. v. Hartford Life Ins. Co.*, 359 F.3d 1367 (Fed. Cir. 2004)). Accordingly, to protect the Defendants from "a fishing expedition based on

irrelevant evidence that itself is not likely to lead to any relevant evidence," this Court entered a "protective order [that] prohibits SAIC from conducting further discovery that is relevant solely to claim construction." *Id*. at 494.

On December 10, 2021, approximately 1 month after this Court entered the Protective Order prohibiting post-*Markman* claim construction discovery, Plaintiff filed the present Motion for Reconsideration. *See* Pl.'s Recons. Mot. at 23.

<u>APPLICABLE LEGAL STANDARDS</u>

The Court's Rules offer two avenues to reconsider a previous holding. First, Rule 59(a)(1) permits a court to "grant a motion for reconsideration when there has been an intervening change in the controlling law, newly discovered evidence, or a need to correct clear factual or legal error or prevent manifest injustice." *Biery v. United States*, 818 F.3d 704, 711 (Fed. Cir. 2016) (citing *Young v. United States,* 94 Fed. Cl. 671, 674 (2010)). As other members of this court have explained, "RCFC 59 governs reconsideration of decisions after Judgments." *E&I Glob. Energy Servs., Inc. v. United States*, 152 Fed. Cl. 524, 530 (2021). A motion for reconsideration under Rule 59 must be supported "by a showing of extraordinary circumstances which justify relief." *Biery v. United States*, 818 F.3d at 711 (quoting *Caldwell v. United States*, 391 F.3d 1226, 1235 (Fed. Cir. 2004)). Such a motion "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (citation omitted).

The Court's Rules also permit reconsideration of "any order or other decision, however designated, that adjudicates fewer than all the claims . . . at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." RCFC 54(b). Several judges of this court have held that Rule 54(b), not Rule 59, applies to review of interlocutory orders. *See,*

*e.g.*, *E&I Glob. Energy Servs., Inc.*, 152 Fed. Cl. at 530; *Lodge Const., Inc. v. United States*, 159 Fed. Cl. 414, 418 (2022); *Sergent's Mech. Sys., Inc. v. United States*, 157 Fed. Cl. 41, 46 (2021). Rule 54 is generally considered less stringent that Rule 59, reflecting that "[c]ourts possess inherent power to modify their interlocutory orders before entering a final judgment." *Fla. Power & Light Co. v. United States*, 66 Fed. Cl. 93, 96 (2005).  Indeed, Rule 54 permits this Court to revisit its interlocutory orders "as justice requires."  *E&I Glob. Energy Servs., Inc.*, 152 Fed. Cl. at 532 (quoting *Greene v. Union Mut. Life Ins. Co. of America*, 764 F.2d 19, 22 (1st Cir. 1985)).

<u>DISCUSSION</u>

Plaintiff argues "that the Court's ruling that the Registration Terms are indefinite was mistaken and warrants reconsideration in light of newly discovered evidence that was unavailable to SAIC at the time of claim construction briefing and argument."  Pl.'s Recons. Mot. at 10. Plaintiff further argues that "L3's marketplace behavior shows that Defendants' indefiniteness arguments were crafted in a litigation vacuum that is inconsistent with the intrinsic evidence and with persons of ordinary skill in the art's use and understanding of the registration terms." Plaintiff's Reply in Support of Its Motion for Reconsideration (ECF No. 255) (Pl.'s Reply) at 13. According to Plaintiff, L3 advocated in this Court "to have the Court view the registration terms in the SAIC patents in the abstract, separated from the context provided by the intrinsic evidence and the knowledge and understanding of a POSITA in view of the art," while simultaneously working outside this Court "to license the '384 patent which is directed to real time registration of images from two video cameras using inertial data (e.g., a measured attitude change) but which . . . does not disclose objective criteria for either the 'registration' or 'false registration' that is disclosed and claimed."  Pl.'s Recons. Mot. at 11-12.

This Court disagrees.  The '384 patent — which Plaintiff could have but chose not to reference during claim construction— is cumulative of the evidence considered during claim construction.  Similarly, L3's marketplace behavior does not heighten the '384 patent's relevance such that "justice requires" this Court to consider that cumulative relevance.  *E&I Glob. Energy Servs., Inc.*, 152 Fed. Cl. at 534.  After review of the parties' arguments, this Court stands by its Claim Construction decision and denies Plaintiff's Motion for Reconsideration for the reasons stated below.

I.   Plaintiff's Failure to File Its Motion Under Rule 54 Is Not Decisive

Before addressing the merits of Plaintiff's Motion for Reconsideration, the Court must address Defendants' argument that Plaintiff's Motion for Reconsideration is untimely under Rule 59.  Defendant's Response to Plaintiff's Motion for Reconsiderations (ECF No. 248) (Def.'s Resp.) at 24-27.  A motion for reconsideration under Rule 59 "must be filed no later than 28 days after the entry of judgment."  RCFC 59(b)(1).[3]  Defendants argue that deadline bars Plaintiff's Motion for Reconsideration because Plaintiff filed its Motion for Reconsideration 126 days after this Court issued its Claim Construction Opinion.  Def.'s Resp. at 24.  However, the 28-day deadline does not apply here because, as discussed *supra*, reconsideration of interlocutory orders occurs under Rule 54.  *E&I Glob. Energy Servs., Inc.*, 152 Fed. Cl. at 530.  This Court has broad discretion under Rule 54 to revisit its interlocutory orders "at any time."  *Fla. Power & Light Co.*, 66 Fed. Cl. at 97.  While this Court disfavors delayed motions like Plaintiff's Motion for Reconsideration, the Court's Rules do not preclude this Court from reaching the merits here.

---

[3] The lone exception to this deadline is when evidence shows "that any fraud, wrong, or injustice has been done to the United States."  RCFC 59(a)(1)(C), (b)(2).

The Court acknowledges "that there is diversity of opinion among the judges of this court as to which Rule applies to motions for reconsideration of interlocutory decisions." *E&I Glob. Energy Servs., Inc.*, 152 Fed. Cl. at 530.  However, even if Rule 59 were the proper vehicle for analyzing requests to reconsider interlocutory orders, Rule 59 would not time bar Plaintiff's Motion for Reconsideration.  Rule 59 clearly ties the deadline to file a motion for reconsideration to "the entry of judgment."  RCFC 59(b)(1).  This Court has not entered judgment in this case.  *See* Order Granting Motion for Partial Summary Judgment.  Indeed, the parties specifically stipulated that they "do not seek entry of a partial final judgment under Rule 54(b)."  Joint Stipulation ¶ 9.  As this Court has not entered final judgment, Plaintiff's motion cannot be considered untimely under Rule 59.

While Defendants correctly note "SAIC's RCFC 59 motion cites to no other Rule," that is of no moment.  Def.'s Resp. at 25.  Rule 54 reflects the principle that "[c]ourts possess inherent power to modify their interlocutory orders before entering a final judgment." *Fla. Power & Light Co.*, 66 Fed. Cl. at 96.  Thus, this Court may assess whether "justice requires" modification of its Claim Construction Opinion regardless of whether Plaintiff explicitly invoked Rule 54. *E&I Glob. Energy Servs., Inc.*, 152 Fed. Cl. at 532 (citation omitted).  That is precisely what the court did in *E&I Global Energy Services*, which Defendants cite in support of their position that this Court cannot consider Plaintiff's Motion for Reconsideration under Rule 59. *See* 152 Fed. Cl. at 530 (exercising the court's vast discretion under RCFC 54(b) to query whether justice required a different outcome for plaintiff's motion to compel even though plaintiff moved for reconsideration solely under RCFC 59).  Accordingly, this Court will not deny Plaintiff's Motion on procedural grounds.  The distinction concerning which Rule this Court should apply here is ultimately insignificant; Plaintiff's Motion fails even under the less stringent Rule 54 standard.

II.   Justice Does Not Require This Court to Alter Its Claim Construction Opinion

Plaintiff argues that the '384 patent — which is unrelated to the Asserted Patents, was not prosecuted by any of the defendants, and is not assigned to any of the defendants — illustrates that this Court erroneously held the Registration Terms indefinite in its Claim Construction Opinion. *See* Pl.'s Recons. Mot. at 10-11; '384 patent at Front Page.  Plaintiff offered a similar patent as extrinsic evidence during claim construction.  *See* Plaintiff's Claim Construction Brief (ECF No. 90) at 33-35 (discussing the use of the terms "registration" and "co-registration" throughout U.S. Pat. No. 8,587,659, which does not disclose "a corresponding degree of error or tolerance").  It argued, unsuccessfully, that the use of similar Registration Terms in the claims of other patents supports its argument that a POSITA would understand the Registration Terms as sufficiently definite to pass muster under 35 U.S.C. § 112.  *Id.*  It argues the same for the '384 patent.  Pl.'s Recons. Mot.  at 14.  To convince this Court that it is not merely rehashing evidence this Court found unpersuasive during claim construction, Plaintiff argues that the '384 patent takes on special significance because L3 negotiated a license for the '384 patent while arguing to this Court that the Registration Terms are indefinite.  *Id.* at 17.  Neither the '384 patent nor L3's licensing activity offer anything different than the evidence already considered and found unpersuasive by this Court.  At bottom, the extrinsic evidence presented here, like the extrinsic evidence presented during claim construction, cannot overcome the intrinsic evidence's lack of error criteria necessary to render the Registration Terms definite.

A.   The '384 Patent is Cumulative of Evidence This Court Did Not Find Persuasive During Claim Construction

Although Rule 54 gives this Court great flexibility to revise its interlocutory orders, it "is not an invitation for litigants to treat interlocutory decisions as mere first drafts, subject to revision and reconsideration at a litigant's pleasure."  *E&I Glob. Energy Servs., Inc.*, 152 Fed. Cl. at 533

(citation and internal quotations omitted).  Justice does not require reconsideration where the movant seeks to "merely reassert arguments that were previously made and carefully considered by the court." *Bos. Edison Co. v. United States*, 156 Fed. Cl. 632, 637 (2021) (cleaned up).  As another Court of Federal Claims jurist explained, the "as justice requires" standard under Rule 54 neither requires nor permits litigants to refight a battle already settled before the court, without good reason.  *L-3 Commc'ns Integrated Sys., L.P. v. United States*, 98 Fed. Cl. 45, 49 (2011).  Plaintiff does not offer this Court good reason to revisit its Claim Construction Opinion.  Plaintiff merely asks the Court to revisit arguments it previously advanced unsuccessfully.  Indeed, Plaintiff makes the identical argument concerning Registration Terms here, with the '384 patent, that it asserted with U.S. Pat. No. 8,587,659 (the '659 patent) during claim construction briefing.

    i.    <u>Plaintiff's Argument Advanced During Claim Construction</u>

Plaintiff argued during claim construction that the '659 patent, which was neither acquired nor owned by a party to this case, undermined Defendants' expert's opinion that the Registration Terms are indefinite.  *See* Plaintiff's Claim Construction Brief at 33-35; '659 patent at Front Page (listing non-party Equinox Corp. as the applicant and assignee).  Plaintiff pointed specifically to the '659 patent because it was issued to a company that Plaintiff believes "is a major supplier of technology to [another contractor] in connection with prime contracts at issue in this litigation." *Id.* at 34 n.15.  "The '659 Patent at claim 1 recites an apparatus 'for co-registering video images generated by multiple camera sensors' that uses 'relative angular orientation' to generate a 'combined video image output signal in which first information from [a] first video image is spatially co-registered with second information from [a] second video image.'" *Id.* at 34 (internal citations omitted).  According to Plaintiff, the specification does not disclose a "degree of error or tolerance" for registration even though "[t]he terms 'registration' and 'co-registration' are used

throughout the '659 Patent." *Id.* Plaintiff further argued that "[o]rientation data (including, e.g., derived from pitch, yaw and roll data formats) is disclosed throughout the '659 Patent with no apparent concern that a POSITA would fail to understand what is meant." *Id.* Plaintiff compared the '659 to the Asserted Patents and concluded that the Registration Terms in the Asserted Patents must be at least as definite as those in the '659 patent, as "the '659 Patent figures do not provide more detail than those of the Asserted Patents." *Id.* Thus, Plaintiff contended, it would be inconsistent for this Court to impose an "acceptable degree of error requirement" when patents "held by the Government's relevant contractors do not include the purported acceptable degree of error requirement." *Id.* at 33.

ii.   <u>Plaintiff's Argument Advanced After Claim Construction</u>

Plaintiff's Motion for Reconsideration performs the same comparative exercise with the '384 patent, which, like the '659 patent, was neither issued nor currently assigned to a party in this case. *See* Motion for Reconsideration at 14-15; '384 patent at Front Page (listing non-party BAE Systems Information and Electronic Systems Integration, Inc. as the applicant and assignee). Plaintiff begins by explaining that the '384 patent "discloses that its real time image registration process positions and aligns video images in registration using two independently moveable video cameras' inertial data and relative orientation (i.e., attitude), and reduces the chance of 'false registration' or 'registration error,' and further loops back to the start mode and begins again if there is a 'registration error.'" Pl.'s Recons. Mot. at 13 (quoting '384 patent at Abstract, 1:63-2:2, 2:14-32, 3:23-4:2, 4:22-55, 5:9-37, 6:2-23, Fig. 3.). Plaintiff then argues the '384 patent lacks disclosure of the type of error criteria Defendant searches for in the Asserted Patents. *Id.* at 13-14. Plaintiff attempts to contrast this alleged lack of disclosure with SAIC's Asserted Patents, which Plaintiff contends "provide more (and certainly at least as much) detail concerning the

meaning and scope of registration terms." *Id.* at 14.  According to Plaintiff, it would therefore be inconsistent for Defendants to allege that the SAIC Asserted Patents are indefinite when "the '384 patent, which necessarily is directed to those of ordinary skill in the art," lacks similar detail.  *Id.* at 13.  This is precisely what Plaintiff argued during claim construction regarding the '659 patent. *See supra* p. 18.

This is not the first time the Court has addressed Plaintiff's duplicative argument.  This Court addressed the same argument in its October 19, 2021 Protective Order Decision.  *See* Protective Order Decision at 492-93.  As the Court noted then, the application leading to the '384 was published before this case's inception, and Plaintiff received a copy of the '384 patent in a production set well before the parties' deadline to submit extrinsic evidence for claim construction. *Id.* at 492.  Thus, Plaintiff could have offered it during the normal course of claim construction but did not.  *Id.*  This Court further explained that the '384 patent provides even less probative evidence for construing the Asserted Patent claims than the other extrinsic evidence offered in claim construction because the '384 patent "is assigned to a third party, while at least one of the patents that SAIC [had] previously cited on this issue is assigned to L3."  *Id.* at 493.  In presenting the '384 patent to this Court now, months after this Court published its Claim Construction Opinion, Plaintiff "merely reassert[s] arguments that were previously made and carefully considered by the court."  *Bos. Edison Co.*, 156 Fed. Cl. at 637 (2021) (cleaned up).  Accordingly, justice does not require departing from this Court's Claim Construction Opinion.

### B.  L3's Marketplace Behavior Does Not Imbue the '384 Patent with Heightened Importance

Likely anticipating this Court's view on its arguments concerning the relevancy of the '384 patent, Plaintiff contends that it is really "L3's marketplace (i.e., licensing) behavior" that cannot be squared with this Court indefiniteness holding.  Pl.'s Reply at 4.  Plaintiff suggests that while

the '384 patent may be cumulative "[h]ad L3 not licensed the '384 patent," L3's licensure of the '384 patent from BAE is "highly relevant, objective evidence that Defendants' indefiniteness allegations were crafted in a litigation vacuum that is inconsistent with both the intrinsic evidence and Defendants' own marketplace activity."  *Id.* at 7.  Specifically, Plaintiff argues that "L3's efforts in obtaining a license to BAE's '384 patent claiming a 'method for real time registration of two video images from two cameras' is an acknowledgement that a person of ordinary skill in the art would have understood the meaning and scope of the registration terms with reasonable certainty and supports definiteness."  Pl.'s Recons. Mot. at 17-18.  This Court rejects Plaintiff's flawed analysis.

Unlike in the cases Plaintiff cites to support its "marketplace activity" theory, L3 has not itself "used" the Registration Terms.  A party's use of a claim term may offer relevant extrinsic evidence to corroborate intrinsic claim construction evidence.  *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1260 (Fed. Cir. 2014).  For a defendant's use of a claim term to constitute a concession of the term's definiteness or meaning, the use must be attributable to that defendant.  *See id.* (citing *defendant's* use of the claim term "look and feel" in its advertisements as evidence that the term had an established meaning that was well understood by defendant and defendant's customers where the patent specification provided objective examples of the term's meaning); *3form, Inc. v. Lumicor, Inc.*, 678 F. App'x 1002, 1008 (Fed. Cir. 2017) (concluding that testimony from *defendant's* Quality Assurance Manager about how defendant visually inspected products supported the notion that a POSITA would not need "specific compression percentages" to understand the disputed claim term "substantially natural appearing conformation"); *U.S. Well Servs., LLC v. TOPS Well Servs.*, No. 3:19-CV-00237, 2020 WL 9439469, *17 (S.D. Tex. Sept. 18, 2020) ("Defendants cannot persuasively argue that the 'variable frequency drive' [claim]

language fails to identify structure to a POSITA *when Defendants use* the same language in their own documents to refer to a structure." (emphasis added)); Protective Order Decision at 493 (summarizing additional cases).

Here, neither the '384 patent nor the L3-BAE license constitute a use of Registration Terms by Defendants. BAE, which is not a party to this case, filed the '384 patent and is the '384 patent's assignee. *See* '384 patent at Front Page. Thus, it is BAE's use of "registration" in the '384 patent, to which Plaintiff cites, not L3's use of that term. *See* Protective Order Decision at 492-93. L3's licensure of the '384 patent as part of a larger intellectual property license for BAE's "Battery Pack product" does not transform BAE's use of "registration" in the '384 patent into a use of those terms by L3. Further, L3's license of the '384 patent is entirely consistent with its view that the Registration Terms are indefinite. A party's decision to pay for a patent license is often driven by a desire to avoid further litigation, not by belief that the patents are particularly valuable or even valid. *See LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 78 (Fed. Cir. 2012) ("The $6 million lump sum license fee is six times larger than the next highest amount paid for a license to the patent-in-suit, and ostensibly reflects not the value of the claimed invention but the strong desire to avoid further litigation under the circumstances.").

While issued patents are presumed valid, parties execute licenses knowing that many patents may be invalidated by a court or the Patent Trial and Appeal Board (PTAB). *See Chore-time Equip., Inc. v. Cumberland Corp.*, 713 F.2d 774, 780 (Fed. Cir. 1983) (explaining that the presumption under 35 U.S.C. § 282 that issued patents are valid, "is, like all presumptions in law, a starting place" and can be overcome). Indeed, "[p]romising to pay royalties on patents that have not been held invalid does not amount to a promise *not to seek* a holding of their invalidity." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 135 (2007). To hold otherwise would

undermine the public interest in free competition, which necessitates allowing licensees to "attack the validity of the patent under which he was licensed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 387 (1948).  Accordingly, this Court cannot assume that L3's licensure of the '384 patent indicates a concession that any of the '384 patent's terms are definite.  That is particularly true here, where BAE disclaimed all warranties except those expressly set forth in the L3-BAE license and the L3-BAE license did not warrant to the '384 patent's validity.  *See* L3-BAE License Agreement (ECF No. 253-1).

This Court is unpersuaded that an inconsistency exists between Defendants' claim construction position, which this Court adopted when it held the Registration Terms indefinite, and L3's marketplace activity.  Plaintiff, therefore, has not shown that justice requires a different result than the one this Court reached in its Claim Construction Opinion.

<u>CONCLUSION</u>

For the reasons explained above, Plaintiff's Motion for Reconsideration (ECF No. 253) is **DENIED**.  The parties are directed to **CONFER** and **FILE** a **NOTICE by August 4, 2022**, attaching a proposed public version of this Sealed Memorandum and Order, with any competition-sensitive or otherwise protected information redacted.

IT IS SO ORDERED.

*Eleni M. Roumel*
ELENI M. ROUMEL
Judge

July 28, 2022
Washington, D.C.