# In the United States Court of Federal Claims

|  |  |
|---|---|
| SCIENCE APPLICATIONS INTERNATIONAL CORP., <br><br> Plaintiff, <br><br> v. <br><br> THE UNITED STATES, <br><br> Defendant, <br><br> and <br><br> MICROSOFT CORPORATION, <br><br> Intervenor-Defendant, <br><br> and <br><br> L3 TECHNOLOGIES, INC., <br><br> Third-Party Defendant. | No. 17-cv-825 <br><br> Filed Under Seal: September 8, 2022 <br><br> Publication: September 15, 2022[1] |

*Gwendolyn Tawresey*, Troutman Pepper Hamilton Sanders LLP, Washington, District of Columbia for Plaintiff.  With her on the briefs is *William D. Belanger*, Troutman Pepper Hamilton Sanders LLP, Washington, District of Columbia.

*Thomas L. Halkowski*, Fish & Richardson P.C., Washington, District of Columbia for Intervenor-Defendant.  With him on the briefs are *Ahmed J. Davis*, and *Kenton W. Freeman, Jr.*, Fish & Richardson P.C., Washington, District of Columbia.

---

[1] This Memorandum and Order was filed under seal in accordance with the Protective Order entered in this case (ECF No. 34) and was publicly reissued after incorporating all redactions proposed by the parties.  (ECF No. 317.)  The sealed and public versions of this Memorandum and Order are identical, except for the addition of the publication date and this footnote.

## MEMORANDUM AND ORDER

Plaintiff Science Applications International Corporation (Plaintiff or SAIC) accuses Defendant the United States (Government or Defendant) of infringing Plaintiff's patent, which relates to heads-up displays, "by entering into contracts with Plaintiff's competitors for the manufacture and subsequent use of night vision goggle weapon systems with specialized heads up displays that allegedly use Plaintiff's patented technology." *Sci. Applications Int'l Corp. v. United States*, 148 Fed. Cl. 268, 269 (2020); *see also* Complaint (ECF No. 1) (Compl.) ¶¶ 2, 37. Intervenor-Defendant Microsoft Corporation (Microsoft) is a contractor that provides such products to the Government.   *See* Microsoft Corporation's Unopposed Motions to: Intervene Pursuant to Rule 24 and Modify Schedule (ECF No. 59).  The parties agree that Microsoft's source code relating to the Rapid Target Acquisition (RTA) feature is key evidence that may establish whether Microsoft's product infringes Plaintiff's patent.  *See* Transcript of December 9, 2021 Hearing (ECF No. 238) (Dec. 9, 2021 Tr.) at 7:3-11, 22:5-14, 40:5-7.  Unsurprisingly, issues concerning this source code have caused conflict throughout discovery.

Pending before the Court is Plaintiff's Motion for Costs and Sanctions Under Rule 37 (ECF No. 272) (Pl.'s Mot.).  Plaintiff alleges that Microsoft produced deficient code in September 2021 and provided inaccurate responses to Plaintiff's interrogatories.  *Id.* at 5-6.[2]  Plaintiff asserts that it relied on these purportedly deficient discovery responses in crafting its January 6, 2021 supplemental infringement contentions.  *Id.*  Subsequently, Microsoft revised its interrogatory responses several times and, in March 2022, produced additional source code, even after certifying on September 18, 2021, that it had "substantially completed" its source code and document production.  *Id.* at 6.  Plaintiff states that Microsoft's 2022 production and interrogatory revisions

---

[2] Citations throughout this Memorandum and Order refer to the ECF-assigned page numbers, which do not always correspond to the pagination within the document.

necessitated a second source code review, for which Plaintiff now moves for reimbursement.  *Id.* at 6-7.  Plaintiff further seeks to prevent Microsoft "from relying on documents and source code produced after SAIC's January 6, 2021 supplemental contentions to support its non-infringement arguments."  *Id.* at 7.  Microsoft opposes on the grounds that it "timely produced substantially all of the relevant code," and that the source code it produced in March 2022 is "ancillary code."  Microsoft's Opposition to Plaintiff's Rule 37 Motion (ECF No. 279) (MSFT's Response) at 4-5.  For the reasons explained below, Plaintiff's Motion for Costs and Sanctions Under Rule 37 is **DENIED**.

## BACKGROUND

Familiarity with prior proceedings in this action is presumed.  *See, e.g.*, *Sci. Applications Int'l Corp. v. United States*, 135 Fed. Cl. 661 (2018); *Sci. Applications Int'l Corp. v. United States*, 154 Fed. Cl. 594 (2021); *Sci. Applications Int'l Corp. v. United States*, 156 Fed. Cl. 486 (2021); *Sci. Applications Int'l Corp. v. United States*, No. 17-cv-825, 2022 WL 3147518 (Fed. Cl. July 28, 2018).  Relevant here, Plaintiff alleges that "Microsoft is providing systems to the Government, with the Government's authorization and consent," that infringe one or more claims of U.S. Patent No. 9,229,230 (the '230 patent).  Pl.'s Mot. at 7.  The '230 patent is directed to a method and system for video image registration in a heads-up display.  *See* Pl.'s Mot., Exhibit 3 (ECF No. 273) ('230 patent) at Abstract.  The following claim elements are common to all of the '230 patent's claims:[3]

> (a) receive video images from the first video source and from the second video source,
>
> (b) receive motion data indicative of motion of the first and second video sources,

---

[3] Independent claims 15 and 29 — method and computer-readable medium claims, respectively — rephrase operations (a)-(e) using gerunds.  *See* '230 patent at 26:27-47 (Claim 15), 28:16-38 (Claim 29).

(c) identify, based on the received motion data, a part of a first video source image that potentially represents a portion of the external environment represented in a part of a second video source image;

(d) evaluate, based on a comparison of data from the first and second video source images, the identification performed in operation (c); and

(e) display at least a portion of the first video source image and at least a portion of the second video source image such that the second video source image portion overlays a corresponding region of the first video source image portion, wherein the corresponding region represents a portion of the external environment represented in the second video source portion.

'230 patent at 24:25-51 (Claim 1); *see also id.* at 26:27-30:42 (Claims 15-41).

## I.   Plaintiff's Discovery Requests

The present dispute centers on one request for production and two interrogatories.  *See* Pl.'s Mot. at 7-8.  On February 19, 2021, Plaintiff served Request for Production 51 on Microsoft, seeking the following:



MSFT's Response, Exhibit E (ECF No. 279-7) (Ex. E) at 3; *see* Pl.'s Mot. at 7 n.1.

At the same time, Plaintiff "served interrogatories asking Microsoft to identify what source code is used by the accused Rapid Target Acquisition ('RTA') feature (No. 13) and to provide a list of all source code that has been produced and state whether that code has been on a device delivered to the Government (No. 14)."  Pl.'s Mot. at 7-8.  Interrogatory 13 states, "[f]or each Accused Product, including past and planned versions of Accused products, identify what Source Code is compiled, linked, and loaded on that Accused Product when the Rapid Target Acquisition ('RTA') feature is used."  Pl.'s Mot., Exhibit 11 (ECF No. 272-10) (Ex. 11) at 3.  Relatedly, Interrogatory 14 states, "[f]or each Accused Product, including past and planned versions of

Accused Products, identify what Source Code has been produced in response to any Request for Production served in this case and indicate whether that code has been compiled on a device delivered to the Government." *Id.* at 4.

On May 28, 2021, Plaintiff then committed to providing supplemental infringement contentions to Microsoft 90 days after Microsoft certifies "that it has substantially completed production (source code and non-source code) for that prototype/product." Plaintiff's Motion to Move Agreed-On Contentions Date and Compel Discovery Under Court of Federal Claims Rules 26 and 30 (Pl.'s Mot. to Move Contentions Date) (ECF No. 230), Exhibit 1 (ECF No. 230-1) at 3.

## II.    Microsoft's Initial Production and Responses

On September 18, 2021, Microsoft produced the first set of source code for two of the accused products in this case, the ▇▇▇ and ▇▇▇ prototypes. *See* Pl.'s Mot. to Move Contentions Date at 2; Pl.'s Mot. to Move Contentions Date, Exhibit 2 (ECF No. 230-2) at 44. This production included "the repository of code responsible for implementing the RTA feature." MSFT's Response, Exhibit A (ECF No. 279-1) (Ex. A) ¶ 2. On September 27, 2021, Microsoft served supplemental responses to Plaintiff's Interrogatories 13-14. *See* Ex. 11 at 4-6. Microsoft answered Interrogatory 13 by referencing its answer for Interrogatory 14. *Id.* at 4. In response to Plaintiff's Interrogatory 14, Microsoft stated, *inter alia*:

> Microsoft has produced for inspection source code for software corresponding to the ▇▇▇ and ▇▇▇ prototype versions of Microsoft's ▇▇▇▇▇▇▇, which include the source code directories identified in MSFT-0019467-MSFT-00194731 and MSFT-00194623-MSFT-00194678, respectively. The source code produced for inspection can be compiled, when put in the proper environment, and can then be loaded on to a device to allow the ▇▇▇ and ▇▇▇ prototype versions to function, including to perform a prototype version of the Rapid Target Acquisition function. Microsoft further indicates that the source code for the software corresponding to the ▇▇▇ and ▇▇▇ prototype version of Microsoft's ▇▇▇▇▇▇▇▇ has been compiled and delivered on a device to the Government.

*Id.* at 6.

### III.     The Parties' Subsequent Discovery Correspondence

Plaintiff quickly challenged the sufficiency of Microsoft's responses and productions.  *See,*
*e.g.*, Pl.'s Mot., Exhibit 1 (ECF No. 272-1) (Ex. 1); Pl.'s Mot., Exhibit 2 (272-2) (Ex. 2).  First, on
September 30, 2021, Plaintiff's counsel emailed Microsoft's counsel seeking more definite
responses to Plaintiff's Interrogatories 13 and 14.  Ex. 2 at 3.  Microsoft stood by its September
18, 2021 certification of substantial completion of document production, including its production
of source code.  *Id.* at 2.  Specifically, Microsoft reiterated that the code directories identified in
its response to Interrogatory 14 "correspond to the software for the ███ and ███ prototype
versions of Microsoft's ██████, and accordingly, reflect what Source Code is compiled,
liked [sic], and loaded on each Accused Product when the Rapid Target Acquisition feature is
used."  *Id.* (internal quotations omitted).

Subsequently, after reviewing Microsoft's produced source code, Plaintiff raised more
detailed objections to the adequacy of Microsoft's production.  *See* Ex. 1 at 5-6.  According to
Plaintiff's source code expert, Microsoft's September 2021 code production lacked several crucial
files.  *See* Pl.'s Mot., Exhibit 10 (ECF No. 272-9) (Ex. 10).  Plaintiff alleged that the produced
code lacked files necessary to determine whether the accused products receive ██████ from
various data sources:



> The September 2021 code production included source code files for two versions
> of the accused device – ███ and ███ .  For each version, Microsoft produced the
> files ████████ and ████████, which can
> ████████ .  But Microsoft did not produce the corresponding files
> responsible    for    ███ ███ ███ ███ ███ ███ ███
> ████████ .  Without these corresponding
> files, certain interfaces within these files appeared to be inactive or not used.  As a
> result, it was unclear exactly what type of ██████████
> ████████████████████ .

*Id.* ¶ 6(a) (emphasis in original).  It further alleged that the produced code lacked files necessary
for ██████ :



Microsoft's September 2021 code production for ▮▮▮ and ▮▮▮ did not contain the ▮▮▮▮▮▮▮.  Instead, Microsoft only produced ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  Microsoft produced technical documents in March 2022 confirming that ▮▮▮▮▮▮▮▮▮.

*Id.* ¶ 6(d) (emphases in original).

Plaintiff explained these perceived deficiencies, as well as a few more, in a November 1, 2021 email to Microsoft.  *See* Ex. 1 at 5-6.  Specifically, Plaintiff raised six perceived shortcomings in Microsoft's production: (1) the produced files did not appear to use ▮▮▮▮▮; (2) the code appeared to be ▮▮▮▮▮▮▮; (3) the produced code allowed for ▮▮▮▮▮▮▮; (4) the produced code could ▮▮▮▮▮; (5) the production lacked the code that causes ▮▮▮▮▮; and (6) the production lacked the ▮▮▮, which was referenced in the produced source code.  *Id.*

Two weeks later, Microsoft sent an email to Plaintiff addressing these concerns.  *See id.* at 4.  Microsoft's counsel again confirmed "that the source code produced by Microsoft for inspection includes . . . the code for the RTA function that is compiled, linked, and/or loaded on the two prototypes, ▮▮ and ▮▮."  *Id.*  Microsoft also disclosed for the first time "that the produced code also includes ▮▮▮▮ prototype that included a ▮▮▮▮▮▮ ▮▮▮▮▮."  *Id.*  It further explained that the code used to invoke the RTA feature "is outside the RTA feature and . . . would require production of essentially the entire source code for the ▮▮▮, which would entail production of a vast amount of code that has nothing to

do with the RTA feature." *Id.*  Similarly, Microsoft took issue with the request for the code to

████████████████████████████████████████████████████. *Id.*  Finally, Microsoft

clarified that ███████████████████████████████████████████████████████

████████████████████████." *Id.*

Plaintiff then flew its experts back to Microsoft's offices to reanalyze the produced code.

*See* Pl.'s Mot. to Move Contentions Date at 4; Ex. 1 at 3.  Plaintiff's experts again concluded "that

the produced code is currently configured to use ██████████████████████████." Pl.'s

Mot. to Move Contentions Date at 4.  When pressed on this perceived defect, Microsoft again

stated that it "stands by its representations . . . that the source code provided for inspection allows

for both ████████████████████████." Pl.'s Mot., Exhibit 7 (ECF No. 272-6) (Ex. 7) at 8.

Microsoft then explained it would not provide "detailed technical information . . . regarding how

the source code functions" through emails between counsel.  *Id.*  Instead, it explained that "such

detailed analysis of the specifics of the lines of code involved and how the various files relate to

one another to perform various steps to implement the accused RTA function ██████████ is, of

course, more suitably addressed via discovery, such as expert analysis of the code." *Id.*

IV.     **SAIC's Motion for Extension of Time to Supplement Infringement Contentions**

On November 24, 2021, the day after Plaintiff's experts reviewed Microsoft's source code

for a second time, Plaintiff filed a letter brief seeking additional time to serve the supplemental

infringement contentions it had agreed to serve on Microsoft.  *See* Pl.'s Mot. to Move Contentions

Date.  Plaintiff explained that although it had originally agreed to serve supplemental infringement

contentions 90 days after Microsoft certified substantial completion of document production,

which had already occurred, it should not be required to serve updated infringement contentions

because it had "discovered material deficiencies in Microsoft's production, calling into question

both Microsoft's certification and the methodology that Microsoft has used to search for and produce documents in this case." *Id.* at 2.  Specifically, Plaintiff argued that Microsoft (1) failed to produce relevant software development kits (SDKs) in its initial disclosures, even after Plaintiff specifically asked for the SDKs; (2) refused to produce documents describing algorithms referenced in previously produced materials or state that it did not have such additional documents; and (3) refused to update its discovery responses, specifically to Plaintiff's Interrogatories 13 and 14, to state which source code is actually run on the accused devices that had been delivered to the Government.  *Id.* at 2-4.  Plaintiff concluded by averring "that the code produced is not the code that has been used for ███████." *Id.* at 4.

Microsoft responded by explaining "that the code produced is the actual code used in the two accused prototypes."  Letter to Honorable Eleni M. Roumel from Thomas L. Halkowski Regarding Discovery Dispute (ECF No. 234) at 3.  It also explained that its discovery response as to which code the prototypes use "clarifies that the code could not be compiled on the production laptop, but that it can be compiled, when put in the proper environment, and can then be loaded to allow the two accused prototypes to perform the allegedly infringing RTA function." *Id.* (internal quotations omitted).  Notwithstanding its contention that it had responded completely to Plaintiff's requests, Microsoft committed to supplementing its responses to Plaintiff's Interrogatories 13 and 14, as Plaintiff had requested.  *Id.*  Microsoft further stated that it had located additional SDK materials and that it would be producing those documents.  *Id.* at 4.  Regarding algorithm documentation, Microsoft explained that documentation is continuously generated as development on the prototypes proceeds and that it anticipated "providing another general supplement to its document production early next year." *Id.*

On December 9, 2021, at a hearing on Plaintiff's motion for additional time to serve supplemental infringement contentions, Microsoft again reiterated its position that the code it produced was what Plaintiff requested: "I've confirmed with SAIC in writing that this is the actual source code that's in the product — the prototype that went to the Government."  Dec. 9, 2021 Tr. at 26:23-25.  During the hearing, this Court asked Microsoft whether it understood that Plaintiff's complaint entailed its inability to see "████████ of how the product work[s]."  *Id.* at 27:17-18.  Microsoft confirmed that it understood Plaintiff's complaint and had produced the information Plaintiff sought:

> That's my understanding of their argument, but as we've explained, . . . I've consulted with the engineers at Microsoft and I've confirmed for SAIC, as we did, I think, in our interrogatory, . . . this is the source code.  It allows for both ████████ ████████, and that's not unusual, particularly in a code type form, to have that dual capability because you want to be able to check things and work out some issues by allowing ████████.  But we have confirmed . . . that this source code is the stuff that went into the device that went to the Government, the prototype that works on ████████.  It couldn't be any more clear. . . . But our point is we've produced it.  And, in fact, as I mentioned before, we have a real -- at least in my view, an incentive to produce and make sure they've got the best information because what we get back in contentions is only going to be as good as the information we give them.  And so we're trying to give them the best information we've got, most up to date information we've got.

*Id.* at 27:23-29:5.

This Court also urged Microsoft to provide more certainty on when it planned to supplement its responses to Plaintiff's Interrogatories 13 and 14.  *Id.* at 29:9-11.  Microsoft represented to this Court that it would update its responses within 30 days of the hearing.  *See id.* at 30:6-8.

After considering the parties' briefing and arguments, this Court denied in part Plaintiff's Motion for an Extension of Time to Serve Its Infringement Contentions.  *Id.* at 46:11-13; Order Denying in Part Plaintiff's Motion for Extension of Time to Supplement Infringement Contentions and Compel Discovery (ECF No. 235) (Order on Mot. for Extension of Time).  The Court further

noted that "the time has come for . . . some initial infringement contentions." Dec. 9, 2021 Tr. at 46:14-16.  It also explained that Plaintiff could move to amend those contentions with new evidence as Microsoft supplemented its discovery responses and made additional productions.  *Id.* at 47:24-48:12.  While this Court did not grant Plaintiff's broad request for an extension of time based on deficiencies in Microsoft's discovery responses and productions, it did grant a short extension, until January 6, 2022, for Plaintiff to obtain source code printouts from Microsoft.  *Id.* at 51:12-52:4; Order on Mot. for Extension of Time.

### V.   Post-Hearing Supplemental Discovery Responses and Productions

Following the December 9, 2021 hearing, the parties continued negotiating over source code printouts.  *See* MSFT's Response, Exhibit G (ECF No. 279-9).  While Microsoft continued to take a narrow view of the source code to which it believed Plaintiff was entitled as "reasonably necessary," it eventually agreed to move discussions forward by identifying the source code files most relevant to the accused RTA functionality.  *Id.* at 2.

Then, on January 12, 2022, Plaintiff pressed Microsoft for additional information regarding its source code productions and its prior statements regarding its substantial completion of document production.  *See* Ex. 7 at 2-3.  Plaintiff requested Microsoft identify the ███████ that Microsoft had told this Court were present in the previously produced source code.  *Id.* at 2.  Plaintiff also asked for the identification of the engineer whom Microsoft's counsel referenced when stating to the Court that Microsoft had confirmed the produced source code was the ███ ███████.  *Id.*  Microsoft's counsel refused to answer those questions during the parties' meet and confer.  *Id.*; *see also* Pl.'s Mot., Exhibit 8 (ECF No. 272-7).  Microsoft agreed only to provide the requested information after Plaintiff served an interrogatory, and even then, requested an extension

of time to put together a substantive response to support the representations it made to this Court. *See* Pl.'s Mot., Exhibit 9 (ECF No. 272-8).

Meanwhile, on January 28, 2022, Microsoft finally supplemented its responses to Plaintiff's Interrogatories 13 and 14. *See* Ex. 11. As with its initial response, Microsoft responded to Interrogatory 13 by incorporating its answer to Interrogatory 14. *Id.* Microsoft offered the following new information for Interrogatory 14:



> As SAIC was advised via November 16, 2021, correspondence: (i) the code produced for inspection (see source code directories identified in MSFT-00194679–MSFT-00194731 and MSFT-00194623–MSFT-00194678) includes, but is not limited to, the code for the ████████████████ that is compiled, linked and executed on the two prototypes, ███ and ███, that have been delivered to the Government; and (ii) the produced source code includes ████████ ████████████████████████████████████. Among the ████████████ ███ within the files produced for inspection to SAIC is ████████████ As SAIC was also advised, via December 15, 2021, correspondence, the bulk of the source code concerning the algorithms for the prototype RTA function is located within: ████████████████████████████████████████
>
> A list of the ████████████████████ on the prototype as of December 2021 to implement the ████████████████ are identified in MSFTsc-0000230-MSFT-SC-0000234. A list of the ████████ ████████████████████████████████████ on the ███ prototype delivered to the government are identified in MSFT-SC-0000235-MSFT-SC-0000239. A list of the ████████████ ████████████████ on the ███ prototype delivered to the government are identified in MSFT-SC-0000240-MSFT-SC-0000244.

*Id.* at 6-7.

Plaintiff again raised objections to Microsoft, requested production of additional source code, including a list of ████████ for the already-produced RTA code, and requested supplemental responses to Plaintiff's Interrogatories 13 and 14. *See* Pl.'s Mot., Exhibit 4 (ECF No. 272-3). Microsoft promptly began assembling a list of ████████ for Plaintiff. Ex. A ¶ 15. While Plaintiff waited for further code supplements, Microsoft responded to Plaintiff's

Interrogatory 20, which Microsoft had originally suggested Plaintiff interpose to learn the technical

basis for Microsoft's representations that the originally produced code could accept ███████. *See*

MSFT's Response, Exhibit M (ECF No. 279-15).  As Microsoft explained in its February 21, 2022

response to Interrogatory 20:



*Id.* at 2.

Next, in March of 2022, Microsoft made a second source code production.  *See* Ex. 10 ¶ 6;

Ex. A ¶¶ 11-12.  This new code included files responsible for ████████████████. Ex. 10

¶¶ 6(b), (e).  The parties disagree on whether this supplemental code was necessary for determining

the type of ██████████████ the core RTA code and the type of ████████████████

███ the core RTA code.  *Compare* Ex. 10 ¶ 6(a) (declaring that Microsoft's source code produced

in September 2021 lacked certain files, making it "unclear exactly what type of ████████████

███████████████████████████████████████████████████████████

████████"), *with* Ex. A ¶ 10 ("Because input data and output data needs to be of the same type to

reliably test or debug the code, a person knowledgeable about code would have understood, from

a review of the ████████████ along with the remainder of the code produced in September

2021, the type of ███████████████████ the core RTA code and ███████████████

the RTA code.").

On April 1, 2022, nearly two months after Plaintiff's objection to Microsoft's second

supplemental response to Interrogatory 14, Microsoft served its third updated response to

Plaintiff's Interrogatory 14:

> In response to the Requests for Production served in this case and certain requests
> from SAIC for additional code, Microsoft further supplements its prior responses
> to this interrogatory to state it has produced for inspection source code for software
> corresponding to the ███████████████ and a more current prototype version of
> Microsoft's ███████████ – as detailed in MSFTSC-0000362-894. A list of the ██
> ████████████████████████████████████ on the more current
> prototype to implement the ████████████████████ are identified in
> MSFT-SC-0000355-361. A list of the ██████████████████████████
> ██████████████████████████████████ on the
> ███ prototype delivered to the government are identified in MSFT-SC-0000895-
> 900. A list of the ███████████████████████████████████████
> █████████████████████████ on the ██████ prototype
> delivered to the government are identified in MSFT-SC-0000901-907.

Ex. 11 at 7.

## APPLICABLE LEGAL STANDARDS

Under the Rules of the United States Court of Federal Claims (RCFC or Rule(s)), a party

"who has responded to an interrogatory [or] a request for production . . . must supplement or correct

its disclosure or response . . . in a timely manner if the party learns that in some material respect

the disclosure or response is incomplete or incorrect."   RCFC 26(e)(1)(A).   Supplemental

responses and disclosures are unnecessary when the additional or corrective information has

"otherwise been made known to the other parties during the discovery process or in writing."  *Id.*

"The duty to supplement is a continuing duty, and no additional interrogatories by the requesting

party are required to obtain the supplemental information — rather, the other party has an

affirmative duty to amend a prior response if it is materially incomplete or incorrect." *Zoltek Corp.*

*v. United States*, 71 Fed. Cl. 160, 164 (2006).  This Court evaluates a party's compliance with its

duty to supplement under Rule 26 by analyzing: "(1) whether there was a prior response; (2) whether the response became materially incorrect or incomplete; (3) whether the [party] knew that the response was incomplete; and (4) whether the corrective information was otherwise made known to [the movant] through the discovery process or in writing." *Id.*

Failure to comply with the duty to supplement may result in sanctions. *See Securiforce Int'l Am., LLC v. United States*, 127 Fed. Cl. 386, 402 (2016) ("[I]f a party fails to supplement its discovery responses in accordance with RCFC 26(e), including the party's previous responses to requests for admissions and interrogatories, the court may order that party to pay the reasonable expenses, including attorney's fees, caused by the failure."). Rule 37 states:

> If a party fails to provide information or identify a witness as required by RCFC 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court . . . may order payment of the reasonable expenses, including attorney's fees, caused by the failure.

RCFC 37(c)(1).

The violating party bears the burden "to prove that the violation was justified or harmless." *Zoltek*, 71 Fed. Cl. at 167. Courts consider several factors to determine if a party deserves sanctions: "(1) the importance of the information withheld; (2) the prejudice or surprise to the party against whom the evidence is offered; (3) the likelihood of disruption of the trial; (4) the possibility of curing the prejudice; (5) the explanation for the failure to disclose; and (6) the presence of bad faith or willfulness in not disclosing the evidence." *Id.* at 168. The moving party generally need not demonstrate the non-movant's bad faith. *See id.* (declining to impose a bad faith requirement for Rule 37 motions, "instead choosing to subsume it into the justification requirement in analyzing the explanation for the party's failure to disclose"); *Securiforce*, 127 Fed. Cl. at 396 (noting that

although Rule 37 does not explicitly impose a bad faith requirement, harsh sanctions such as "de facto dismissal" necessitate a showing of bad faith).

DISCUSSION

Plaintiff asks this Court to sanction "Microsoft [for] making statements to SAIC and to the Court that Microsoft knew or should have known were false." Pl.'s Mot. at 7. Specifically, SAIC urges this Court to order Microsoft "to reimburse SAIC for the costs and fees incurred in analyzing incorrect and incomplete source code and preparing supplemental contentions." *Id.* In addition or in the alternative, SAIC seeks an order prohibiting Microsoft "from relying on documents and source code produced after SAIC's January 6, 2021 supplemental contentions to support its non-infringement arguments." *Id.* Plaintiff's requests stem from several responses to Plaintiff's discovery requests, including: (i) Microsoft's production of additional code in March 2022 after Microsoft had stated in September 2021 that it had substantially completed production of the core RTA code; and (ii) Microsoft's responses to Plaintiff's Interrogatories 13 and 14, which purportedly "are wrong all the way through April of 2022 because they state that all of the source code produced in this case is used by the accused feature." *Id.* at 17-18. In both contexts, however, the record does not indicate that Microsoft engaged in deception "or other egregious conduct worthy of sanctions." *Securiforce*, 127 Fed. Cl. at 407. Accordingly, the Court declines to impose the sanctions Plaintiff seeks.

## I.  Microsoft's Source Code Production Does Not Warrant Sanctions

According to Plaintiff, "there is no reasonable dispute that Microsoft withheld crucial information after it told SAIC that it had 'substantially completed' production and even after SAIC identified the specific information being withheld." Pl.'s Mot. at 16. Specifically, Plaintiff alleges that Microsoft "withheld █████████████ code [that] is directly relevant to asserted claim

elements, which require, *inter alia*, 'receiv[ing] video images from a first' and second 'video source' and 'display[ing] at least a portion of the first video source image and at least a portion of the second video source image.'" *Id.* at 16-17 (quoting '230 patent at Claim 1).

Plaintiff contends that Microsoft's failure to produce the ███████████ code in September 2021 prejudiced SAIC by necessitating a second code review and forcing Plaintiff "to re-do a substantial proportion of its code review and . . . re-do parts of its infringement contentions to address the issues that SAIC raised months ago." *Id.* at 17-18. This prejudice, Plaintiff argues, is uncurable because Plaintiff "has already incurred the expense of reviewing the wrong source code based on Microsoft's misrepresentations and has no choice but to do another round of review now that the correct code has been produced." *Id.* at 18. Finally, Plaintiff argues that Microsoft's failure to produce the live input and output code in September 2021 is unjustifiable, as evidenced by Microsoft's March 25, 2022 email characterizing more recent code request (*i.e.*, not the requests leading to the September 2021 code production) as seeking "the code for displaying the output from the RTA algorithm." *Id.* at 20 (quoting Pl.'s Mot., Exhibit 5 (ECF No. 272-4)). In addition to the costs it seeks for a second code review, Plaintiff urges this Court preclude Microsoft from relying on the ███████ source code "to support its non-infringement arguments." *Id.* at 21.

This Court finds both requests inappropriate. Microsoft adequately produced source code responsive to Plaintiff's Request for Production 51, and Microsoft did not have a duty under Rule 26 to supplement that production. Furthermore, even if this Court had determined that such duties under Rule 26 were triggered in this case, Microsoft's conduct does not warrant sanctions under Rule 37.

a. <u>Microsoft Did Not Have a Duty to Supplement the Source Code It Produced in Response to Request for Production 51</u>

A party is not obligated to "supplement or correct its disclosure or response" to a discovery request unless "the party learns that in some material respect the disclosure or response is incomplete or incorrect." RCFC 26(e)(1)(A); *see also Zoltek*, 71 Fed. Cl. at 164 (explaining that the party from whom discovery is sought "has an affirmative duty to amend a prior response if it is materially incomplete or incorrect"). Request for Production No. 51, seemingly at issue here,[4] requests Microsoft produce "Source Code sufficient to demonstrate ███████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

Ex. E at 3. The source code Microsoft produced in September 2021 sufficiently demonstrates how the RTA feature works. *See* Ex. A ¶¶ 2-3. SAIC's own expert — notwithstanding some uncertainty about the acceptance of ███████████ — understood from the code produced in September 2021 that the algorithm had ████████████████; he just did not know "exactly what type" of data was inputted. Ex. 10 ¶ 6(a). Although the asserted claims do not include limitations regarding the ███████████████, it was possible to determine from the ██████ produced in September 2021 the ███████████████████████████. Ex. A ¶ 10. Plaintiff therefore received "Source Code sufficient to demonstrate ██████████

████████████████████████████████████████████████

█████████████████████████████████████████." Ex. E at

---

[4] Plaintiff's Motion discusses how Plaintiff "served detailed and specific Requests for Production of source code on Microsoft on February 19, 2021." Pl.'s Mot. at 7. It then offers as an example Request for Production No. 51. *Id.* at n.1. As Plaintiff does not cite any other Request for Production, the Court assumes that Plaintiff's discussions of purportedly deficient source code production all relate Microsoft's compliance with Request for Production No. 51. *See generally* Pl.'s Mot.

3.  As Plaintiff has not demonstrated that Microsoft's September 2021 source code production was "materially incorrect or incomplete," Microsoft was not obligated under Rule 26 to supplement its source code production.  *Zoltek*, 71 Fed. Cl. at 164.

>    b.  Even if Circumstances Had Obligated Microsoft to Supplement Its Source Code Production Under Rule 26, the Record Does Not Support Awarding Sanctions

"The decision whether to impose discovery sanctions rests within the sound discretion of the trial court." *AG–Innovations, Inc. v. United States*, 82 Fed. Cl. 69, 79 (2008) (quoting *Ingalls Shipbuilding, Inc. v. United States*, 857 F.2d 1448, 1450 (Fed. Cir. 1988)).  If this Court had held that Microsoft violated Rule 26, Microsoft would have been required to "prove that the violation was justified or harmless" to avoid sanctions.  *Zoltek*, 71 Fed. Cl. at 167.  Factors relevant to harmlessness include "(1) the importance of the information withheld; (2) the prejudice or surprise to the party against whom the evidence is offered; (3) the likelihood of disruption of the trial; [and] (4) the possibility of curing the prejudice." *Id.* at 168.  Here, the information purportedly withheld is ancillary code upstream and downstream of the disputed RTA function, not the crucial RTA code.  *See* Ex. A ¶¶ 10-13.  Further minimizing the importance of this ancillary code is the fact that it is possible to determine the existence of ██████████████ from the produced RTA code. *Id.* ¶ 10.  Furthermore, this Court made clear that it would permit Plaintiff to amend its infringement contentions if it uncovered additional evidence after the deadline for serving infringement contentions.  *See* Dec. 9, 2021 Tr. at 47:24-48:1 ("My ruling today does not preclude the possibility that SAIC may later supplement its contentions again if new evidence emerges."). Thus, Plaintiff was not prejudiced by the delay between Microsoft's initial source code production and its production of ancillary source code.  Finally, any prejudice to Plaintiff was cured when Microsoft produced the upstream and downstream code.  *See* Ex. 10 ¶ 6; Ex. A ¶¶ 11-12.  Based on these facts, Rule 37 sanctions against Microsoft would be inappropriate even if this Court

believed — which it does not — that Microsoft was obligated to supplement its response to Request for Production 51 with the ancillary code produced in March 2022.

## II.     Microsoft's Responses to Interrogatories 13 and 14 Do Not Warrant Sanctions

Plaintiff's request for sanctions based on Microsoft's responses to Interrogatories 13 and 14 is based on the premise Microsoft inaccurately represented "that all of the source code produced in this case is used by the accused feature." Pl.'s Mot. at 17.  Specifically, Plaintiff faults Microsoft for originally stating in its responses to Interrogatories 13 and 14 that all files produced on the source code computer are also run on the Accused Products when the RTA feature is used despite that the code produced in September 2021 allegedly only showed ████████████████████

████████████████ *Id.* at 8.  Plaintiff contends that Microsoft should have told Plaintiff that some lines of the code produced in September 2021 were ████████████████. *See id.* at 17 ("SAIC should have had an accurate response to Interrogatory Nos. 13 and 14 when it started its source code review so that it would know what source code is relevant.").  In other words, Plaintiff objects to Microsoft's discovery responses because they purportedly make the absolute statement "that all of the source code produced in this case is used by the accused feature" and that "Microsoft did not even attempt to correct this responses [sic] until April [2022]." *Id.*

Plaintiff does not specifically allege how Microsoft's purportedly deficient interrogatory responses prejudiced it; it again relies on the cost and additional time necessary to perform a second code review and update its infringement contentions. *Id.* at 17-18.  There is no possibility for Microsoft to cure this prejudice, Plaintiff argues, because Plaintiff "SAIC has already served its supplemental contentions" and fact discovery is at hand. *Id.* at 19.  Plaintiff argues that "[t]here is likewise no justification for Microsoft's failure to respond to Interrogatories 13 and 14 with complete and correct information." *Id.* at 20.  Plaintiff points to several alleged concessions by

Microsoft to demonstrate that Microsoft's initial responses to Interrogatories 13 and 14 were knowingly false: (1) responding to the two interrogatories with the same file list was incorrect, and (2) the review computer actually included ███████████. *Id.* Thus, Plaintiff argues, Microsoft should have corrected its interrogatory responses before SAIC began its code review. *Id.* at 21.

This Court disagrees that Microsoft's responses warrant sanctions. Microsoft truthfully stated in its initial responses to Interrogatories 13 and 14 that "[t]he source code produced for inspection can be compiled, when put in the proper environment, and can then be loaded on to a device to allow the ████ and ████ prototype versions to function, including to perform a prototype version of the Rapid Target Acquisition function." Ex. 11 at 6; Ex. A ¶ 3. Microsoft produced the code that was compiled for use in the ████ and ████ prototypes provided to the Government; that code also happens to include some ██████████████. Ex. A ¶¶ 2-5.

The ██████████ — which "is commonly known to exist within code repositories – particularly in code being developed for prototypes, as new versions are often built upon the code of prior versions" — did not prejudice Plaintiff. *Id.* ¶ 5. SAIC was aware from the outset that a portion of the produced code included ██████████████, and Microsoft confirmed this fact when Plaintiff raised the issue during discovery. *See* Dec. 9, 2021 Tr. at 27:23-28:16. Similarly, Microsoft immediately advised SAIC of the presence of ██████████ on November 16, 2021, after it had promptly investigated SAIC's mistaken assertion that Microsoft had only produced ██████████████, stating: "Please be advised that the produced code also includes ██████████ from the ████ prototype that included a ████████████████████████████████." MSFT's Response, Exhibit B (ECF No. 279-4) at 2-3. Given (i) the ██████████ was produced along with the functioning Rapid Target Acquisition code, and (ii) it is possible to distinguish the ██████████ from the ██████████ of the compiled code, any imprecision in Microsoft's initial

response to Plaintiff's Interrogatories 13 and 14 was "justified or harmless." *Zoltek*, 71 Fed. Cl. at 167. Accordingly, sanctions are inappropriate under Rule 37.

<u>CONCLUSION</u>

For the reasons explained above, Plaintiff's Motion for Costs and Sanctions Under Rule 37 (ECF No. 272) is **DENIED**. The parties are directed to **CONFER** and **FILE** a **NOTICE by September 15, 2022**, attaching a proposed public version of this Sealed Memorandum and Order, with any competition-sensitive or otherwise protected information redacted.


IT IS SO ORDERED.



*Eleni M. Roumel*
ELENI M. ROUMEL
Judge


September 8, 2022
Washington, D.C.