# In the United States Court of Federal Claims

SCIENCE APPLICATIONS
INTERNATIONAL CORP.,

Plaintiff,

v.

THE UNITED STATES,

Defendant,

and

MICROSOFT CORPORATION,

Intervenor-Defendant,

and

L3 TECHNOLOGIES, INC.,

Third-Party Defendant.

No. 17-cv-825

Filed Under Seal: November 29, 2022

Publication: December 7, 2022[1]

*Stephen R. Smith*, Cooley LLP, Washington, D.C. for Plaintiff.  With him on the briefs were *DeAnna D. Allen*, Cooley LLP, Washington, D.C.; *Douglas P. Lobel*, Cooley LLP, Reston, Virginia; and *Gwendolyn Tawresey*, Troutman Pepper Hamilton Sanders LLP, Washington, D.C.

*Alex Hanna*, United States Department of Justice, Civil Division, Washington, D.C. for Defendant. With him on the briefs were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, Washington, D.C.; *Gary L. Hausken*, United States Department of Justice, Civil Division, Washington, D.C.; *Scott Bolden*, United States Department of Justice, Civil Division, Washington, D.C.; and *Hayley A. Dunn*, United States Department of Justice, Civil Division, Washington, D.C.

*Thomas L. Halkowski*, Fish & Richardson P.C., Washington, D.C. for Intervenor-Defendant.  With him on the briefs were *Ahmed J. Davis*, Fish & Richardson P.C., Washington, D.C.; *Kenton W.*

---

[1] This Memorandum and Order was filed under seal in accordance with the Protective Order entered in this case (ECF No. 34) and was publicly reissued after incorporating all redactions proposed by the parties.  (ECF No. 328.)  The sealed and public versions of this Memorandum and Order are otherwise identical, except for the publication date and this footnote.

*Freeman, Jr.*, Fish & Richardson P.C., Washington, D.C.; and *Tracea L. Rice*, Fish & Richardson P.C., Washington, D.C.

*William C. Bergmann*, Baker & Hostetler LLP, Washington, D.C. for Third-Party Defendant. With him on the briefs were *Charles C. Carson*, Baker & Hostetler LLP, Washington, D.C.; and *Cassandra Simmons*, Baker & Hostetler LLP, Washington, D.C.

## <u>MEMORANDUM AND ORDER</u>

Pending before the Court are dueling motions for varying levels of sanctions, brought pursuant to Rule 37 of the Rules of the United States Court of Federal Claims (Rules). First, Plaintiff Science Applications International Corporation (Plaintiff or SAIC) filed a Combined Motion for Sanctions Pursuant to Rule 37 and Partial Motion to Strike Invalidity Contentions against Defendant the United States (the Government), Intervenor-Defendant Microsoft Corporation (Microsoft), and Third-Party Defendant L3 Technologies, Inc. (L3) (collectively, Defendants). ECF No. 289 (Pl.'s Mot. or Combined Motion). Specifically, Plaintiff seeks sanctions pursuant to Rules 37(d) and 16(f) in its Combined Motion, urging the Court to (i) preclude the Government and L3 from introducing evidence concerning the qualification of non-patent references as prior art, and (ii) strike obviousness defenses and certain indefiniteness theories from Defendants' Final Invalidity Contentions. *See id.*; ECF No. 314 (Pl.'s Reply). In response to Plaintiff's Combined Motion, Defendants lodged a Cross-Motion to Exclude Plaintiff's Undisclosed Damages Theory, pursuant to Rule 37. ECF No. 308 (Defs.' Resp.). Defendants urge the Court to impose the Rule 37(c) sanction of exclusion to preclude any evidence pertaining to Plaintiff's damages theory from consideration during future proceedings. *See id.*; ECF No. 319 (Defs.' Reply).

For the reasons explained below, Plaintiff's Motion for Sanctions Pursuant to Rule 37 is **DENIED**, Plaintiff's Partial Motion to Strike Invalidity Contentions is **DENIED**, and Defendants' Rule 37 Cross-Motion to Exclude Plaintiff's Undisclosed Damages Theory is **DENIED.**

## BACKGROUND

This action has a lengthy history, familiarity with which is presumed.[2]  *See, e.g.*, *Sci. Applications Int'l Corp. v. United States*, 135 Fed. Cl. 661 (2018); *Sci. Applications Int'l Corp. v. United States*, 154 Fed. Cl. 594 (2021); *Sci. Applications Int'l Corp. v. United States*, 156 Fed. Cl. 486 (2021); *Sci. Applications Int'l Corp. v. United States*, 161 Fed. Cl. 373 (2022); *Sci. Applications Int'l Corp. v. United States*, 162 Fed. Cl. 213 (2022).  A background summary pertinent to the current motions follows.

Plaintiff alleges the Government infringed Plaintiff's patent, U.S. Patent No. 9,229,230 (the '230 patent), related to a heads-up display for night vision goggle weapons systems "by entering into contracts with Plaintiff's competitors for the manufacture and subsequent use of night vision goggle weapon systems with specialized heads up displays that allegedly use Plaintiff's patented technology." *Sci. Applications Int'l Corp. v. United States*, 148 Fed. Cl. 268, 269 (2020). The following claim elements are common to the '230 patent's claims[3]:

> (a) receive video images from the first video source and from the second video source,
>
> (b) receive motion data indicative of motion of the first and second video sources,

---

[2] Since its inception in June 2017, this action has been reassigned four times to different judges. *See Sci. Applications Int'l Corp. v. United States*, 148 Fed. Cl. 268, 270 (2020); *see also* ECF No. 25 (Notice of Reassignment, dated April 5, 2018); ECF No. 68 (Notice of Reassignment, dated June 21, 2019); ECF No. 85 (Notice of Reassignment, dated July 23, 2019); ECF No. 113 (Notice of Reassignment to undersigned judge, dated February 27, 2020).

[3] Independent claims 15 and 29 — method and computer-readable medium claims, respectively — rephrase steps (a)–(e) as gerunds.  *See* '230 patent at 26:27–47 (Claim 15), 28:16–38 (Claim 29).

(c) identify, based on the received motion data, a part of a first video source image that potentially represents a portion of the external environment represented in a part of a second video source image;

(d) evaluate, based on a comparison of data from the first and second video source images, the identification performed in operation (c); and

(e) display at least a portion of the first video source image and at least a portion of the second video source image such that the second video source image portion overlays a corresponding region of the first video source image portion, wherein the corresponding region represents a portion of the external environment represented in the second video source portion.

'230 patent at 24:25–51 (Claim 1), 26:27–30:42 (Claims 15–41).

## I.   Plaintiff's Motion for Rule 37 Sanctions

### A.   Interrogatory No. 18

Plaintiff moves to sanction the Government and L3 pursuant to Rule 37(d)(1)(A)(ii) for allegedly deficient responses to Plaintiff's Interrogatory No. 18.  Pl.'s Mot. at 15.[4]  On February 18, 2022, Plaintiff served Interrogatory No. 18 on the Government, and subsequently, on March 31, 2022, served the same Interrogatory No. 18 on L3.  Pl.'s Mot. at 7; Pl.'s Mot., Exhibit 1 (ECF No. 289-1); Pl.'s Mot., Exhibit 4 (ECF No. 289-4).  Plaintiff did not serve Interrogatory No. 18 on Microsoft.  *See* Pl.'s Mot. at 8 n.3.  Specifically, in its Motion, Plaintiff seeks the exclusion of "all evidence that the Government or L3 would offer or benefit from to qualify non-patent references as prior art because they refused to respond to Plaintiff's Interrogatory No. 18."  Pl.'s Mot. at 15.

Plaintiff's Interrogatory No. 18 states:

For each non-patent reference (e.g., non-patent literature or system art) that You contend is prior art that invalidates any asserted claim of any Asserted Patent alone or in combination with other prior art and that is included in Your Preliminary Election of Asserted Prior Art (or any revision or amendment thereof) and/or that You intend to rely upon in any dispositive motion or at trial, identify all factual and legal bases for Your contention that the reference qualifies as prior art under any subsection of 35 U.S.C. § 102.  A complete response should state the subsections

---

[4] Citations throughout this Memorandum and Order reference the ECF-assigned page numbers, which do not always correspond to the pagination within the document.

of 35 U.S.C. § 102 under which the reference allegedly qualifies as prior art, identify all evidence supporting your contention that the reference qualifies as prior art under any subsection of 35 U.S.C. § 102, state the critical dates on which the reference was first known, used, offered for sale, sold, publicly used, or made in this country, and the identity and knowledge of each Person who possesses knowledge regarding the reference's qualification as prior art.

*Id.* at 7–8.

On March 21, 2022, the Government served its objections and response to Interrogatory

No. 18.  Pl.'s Mot., Exhibit 1 (ECF No. 289-1).  The Government's objections were multiple:

The government objects to this Interrogatory to the extent it imposes an obligation on the government to respond with information that does not relate to the only remaining asserted U.S. Pat. No. 9,229,230.  The government objects to this Interrogatory to the extent it seeks to impose on the government obligations that are not required by or inconsistent with the Scheduling Order, the Rules of the Court of Federal Claims, the Patent Rules of the Court of Federal Claims, or any other Order in this case.  The government further objects to this Interrogatory as vague and ambiguous, particularly in its use of the phrase "non-patent reference (e.g., non-patent literature or system art)" that the Army "contend[s] is prior art that invalidates any asserted claim of any Asserted Patent alone or in combination with other prior art".  The government further objects to this Interrogatory as expressly calling for a legal conclusion, including as to any "non-patent reference (e.g., non-patent literature or system art)" that the Army "contend[s] is prior art that invalidates any asserted claim of any Asserted Patent alone or in combination with other prior art", and as to "all . . . legal bases for [the Army's] contention that the reference qualifies as prior art".  The government further objects to this interrogatory to the extent it calls for the government to speculate as to its future "inten[t]", or disclosure its work-product, vis-à-vis what the government will "rely upon in any dispositive motion or at trial[.]"  The government also objects to this Interrogatory as containing multiple subparts, being unduly prolix, unduly complex and violating [Rules] 33(a)(1) & (2).

Pl.'s Mot., Exhibit 1 (ECF 289-1) at 22.

In addition to its objections, the Government's response to Interrogatory No. 18 stated:

The government will disclose its invalidity contentions in accordance with the Rules and Orders of this Court.  In accordance with the Court's Scheduling Order, the government has served its initial and revised listing of prior art and invalidity claim charts, as well as a preliminary election of asserted prior art (dated November 1, 2021).  The government hereby incorporates by reference as if fully set forth herein any identified prior art and invalidity contentions that have been served or will be served by Microsoft and/or L3.  To the extent the government understands this Interrogatory, the government will serve final invalidity contentions, which are

currently due on May 31, 2022, as well as an invalidity expert report, which is currently due on August 12, 2022, in accordance with the Court's Scheduling Order (*see* Dkt. 203, 262)[.]

*Id.* at 23.

Plaintiff's counsel contacted the Government's counsel via e-mail on March 30, 2022, requesting a "meet-and-confer" to discuss "[r]esponses and objections to Interrogatories Nos. 15, 16, and 18." Defs.' Resp., Exhibit 7 (ECF No. 308-7) at 2. In the ensuing e-mail correspondence, Plaintiff's counsel sought "clarification regarding whether the Government will fully answer [Interrogatory No. 18] on [May 31, 2022]." Pl.'s Mot., Exhibit 3 (ECF 289-3) at 4, 9. The Government's counsel responded by stating "the responses and objections speak for themselves, and the government is aware of, and intends to fully cooperate with, the Rules, including the duty to supplement under [Rule] 26(e)." *Id.* at 2 (E-mail dated June 6, 2022).

On March 31, 2022, one day after Plaintiff's counsel contacted the Government's counsel requesting a meet-and-confer, Plaintiff served Interrogatory No. 18 on L3. Pl.'s Mot., Exhibit 2 (ECF No. 289-2) at 12–13. L3 served its objections and response on May 2, 2022. Pl.'s Mot., Exhibit 4 (ECF No. 289-4) at 18. L3's response was substantively identical to that of the Government. *See id.*; Pl.'s Mot., Exhibit 1 (ECF No. 289-1) at 23. Specifically, L3 objected to Interrogatory No. 18 on the following grounds:

L3 incorporates its general objections as though the same were set forth fully herein. L3 objects to this interrogatory to the extent that it seeks information subject to the attorney client privilege, work product immunity, common interest doctrine of joint defense privilege, or other applicable immunity. L3 also objects that this interrogatory is vague, ambiguous, overly broad, unduly burdensome, not relevant to any party's claim or defense, and not proportional to the needs of the case to the extent it seeks identification of information relating to claims and patents not specifically identified in SAIC's Infringement Contentions and seeks a response regarding "knowledge of each Person who possesses knowledge regarding the reference's qualification as prior art." L3 objects to this Interrogatory as containing multiple subparts, being unduly prolix, unduly complex and violating [Rules] 33(a)(1) & (2). L3 objects to this interrogatory to the extent it purports to require

L3 to produce documents in the possession of third parties (such as other parties to this litigation). L3 also objects that this interrogatory is premature to the extent it seeks expert disclosures or other information prior to the deadlines created by the Court.

Pl.'s Mot., Exhibit 4 (ECF 289-4) at 16.

On June 30, 2022, Defendants served their Final Invalidity Contentions, which totaled over 600 pages. *See* Pl.'s Mot., Exhibit 13 (ECF No. 289-13) at 2–3. According to the Government and L3, they incorporated their Final Invalidity Contentions by reference into their responses to Interrogatory No. 18. *Id.* Subsequently, on July 8, 2022, Plaintiff's counsel contacted the Government's and L3's counsel requesting a conference regarding several points of contention, including the responses to Interrogatory No. 18. Pl.'s Mot., Exhibit 9 (ECF No. 289-9) at 3. The parties ultimately conferred on July 11, 2022, but did not resolve their dispute. *See* Pl.'s Mot., Exhibit 13 (ECF No. 289-13) at 2–4.

## II.   Plaintiff's Motion to Strike Defendants' Invalidity Contentions

### A.  Obviousness Combinations and Motivations

Plaintiff moves, pursuant to Rule 16(f)(1), to strike Defendants' obviousness defenses from their Final Invalidity Contentions for failing "to obey a scheduling or other pretrial order." Rule 16(f)(1)(C); Pl.'s Mot. at 19. Plaintiff advances two arguments to this end. *First*, Plaintiff alleges Defendants' Final Invalidity Contentions disclose a near-infinite amount of obviousness combinations of prior art. *Id.* at 20–23. *Second*, Plaintiff asserts the specific combinations provided by Defendants are not accompanied by contentions and evidence as to each combination's obviousness. *Id.* at 23–27.

Consistent with this Court's June 14, 2022 Scheduling Order, Defendants served their Final Invalidity Contentions on June 30, 2022. *See* Pl.'s Mot., Exhibit 13 (ECF No. 289-13) at 2–3; Scheduling Order dated June 14, 2022 (ECF No. 285). Defendants' Final Invalidity Contentions

include "a cover pleading (discussing groups of related claim elements)" and "seven (7) specific

element-by-element claim charts mapping particular disclosures from prior art to the asserted

claims." Defs.' Resp. at 36. The cover pleading's use of "groups of related claim elements"

creates, in effect, "buckets" of prior art references.[5] Defendants cite to these buckets throughout

their claim charts, including two paragraphs in each claim chart row referring to specific groupings

of prior art references in the cover pleading. For example, a row in the Dobbie claim chart states:

> Other image alignment systems also disclose a first video source configured to generate images representing portions of an external environment. *See* Cover Pleading §§ IV.A.1 and IV.A.2.b.
>
> Regardless of whether Dobbie and/or Roberts is found to disclose this element, it would have been obvious to modify and/or combine it with any of the references discussed in Cover Pleading §§ IV.A.1 and IV.A.2.b, including '993 Publication, Desert's Edge Report, Desert's Edge Videos, Land Warrior Review, Land Warrior Report, Roberts Case Study, Roberts SPIE Paper, Equinox Phase I, Equinox Phase II, Naval SBIR Proposal, Valery, Hanson, Dobbie, Belt, and You CGE to obtain it.

Pl.'s Mot., Exhibit 16 (ECF 289-16) at 4.

In addition to the language found in the second paragraph included in each claim chart row,

Defendants' cover pleading also addresses obviousness motivations for combining prior art

references:

> Accordingly, if SAIC argues that the concept of using rapid target acquisition, or any aspect thereof, is missing from any reference, it would have been obvious at the time of the '230 Patent's purported invention to modify the reference to include that feature or to combine it with any of the references that disclose the feature, including the '993 Publication, both in light of the knowledge of one of skill in the art and of the specific teachings discussed here. A person of ordinary skill would have been motivated to make the modification combination in order to obtain the benefits discussed above. Such a modification or combination would have been a conventional and well known substitution according to known methods to yield

---

[5] These buckets list groups of prior art that reference a given concept relevant to the asserted patent claims. Elements upon which buckets are based include the following: rapid target acquisition; system components to generate and display graphical and video images; system components to compute orientation and motion of rifle and head; aligning weapon scope images with the shooter's view; displaying graphical or video images; and a computer to perform image registration steps. Pl.'s Mot., Exhibit 10 (ECF No. 289-10) at 11-178.

predictable results, the use of known technique to improve similar devices in the same way, and would also have been obvious to try.

Pl.'s Mot., Exhibit 10 (ECF No. 289-10) at 22–23.

### B.  Microsoft's Indefiniteness Theories

Plaintiff also moves, pursuant to Rule 16(f)(1), to strike Microsoft's indefiniteness theories from Defendants' Final Invalidity Contentions for failing "to obey a scheduling or other pretrial order."  Rule 16(f)(1)(C); Pl.'s Mot. at 19.  Specifically, Plaintiff contends the introduction of new indefiniteness theories is improper at this point in the litigation, as they "should have been disclosed years ago, before issues of claim construction were briefed, argued, and decided."  Pl.'s Mot. at 29.

A review of pertinent background information is helpful.  On August 27, 2020, this Court held an oral argument and status conference regarding a previously-filed motion to strike and several issues raised in a Joint Status Report.  *See* Hearing Transcript, August 27, 2020 (ECF No. 139).  During the hearing and status conference, the parties discussed, among other topics, how ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ could affect claim construction and could potentially create a need for supplemental claim construction after a *Markman* hearing.  Defs.' Resp., Exhibit 4 (ECF 308-4); Hearing Transcript, August 27, 2020 (ECF No. 139).  In response, the Court stated that it would conduct a *Markman* hearing to interpret the claims as asserted against ▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and would consider conducting supplemental claim construction related to ▮▮▮▮▮▮▮▮▮, to the extent necessary.  *See* Hearing Transcript, August 27, 2020 (ECF No. 139) at 61:11–22.

The Court held a *Markman* hearing on December 15, 2020, and subsequently issued its Claim Construction Opinion.  *See Markman* Hearing Transcript, December 1, 2020 (ECF No. 159); Claim Construction Opinion (ECF No. 192).  The *Markman* Opinion specifically addressed

indefiniteness.  Claim Construction Opinion (ECF No. 192) at 28–29, 61–81.  In view of the holdings in that Opinion, Plaintiff provided a "narrowed list of asserted claims" in November 2021, and supplemental infringement contentions on January 6, 2022.  *See* Defs.' Resp. at 24; Defs.' Resp., Exhibit 20 (ECF No. 308-20) (Plaintiff's Amended Infringement Contentions).

On February 11, 2022, Microsoft provided updated invalidity contentions, which raised new indefiniteness defenses related to terms Microsoft contends are newly-relevant ███████ ████████████████████ and Plaintiff's January 2022 infringement contentions.  *See* Defs.' Resp. at 23, 53–54.  These allegedly newly-relevant terms include "potentially represents," "represent," and "overlays a corresponding region."  *See* Defs.' Resp. at 22.  On February 18, 2022, Plaintiff requested that Microsoft "withdraw its new indefiniteness claims, as they are not a legally cognizable theory."  Pl.'s Mot., Exhibit 11 (ECF No. 289-11) at 2.  Microsoft declined to do so.

## III.  Defendants' Motion to Strike Plaintiff's Damages Disclosures Pursuant to Rule 37(c)

### A.  Plaintiff's Rule 26(a)(1)(A)(iii) Initial Disclosures

On May 4, 2018, Plaintiff served its initial Rule 26(a)(1)(A)(iii) disclosure concerning damages pursuant to the Court's April 30, 2018 Scheduling Order.  Scheduling Order, dated April 30, 2018 (ECF No. 31) at 1.  Plaintiff's 2018 initial disclosure of its damages computation reads as follows:

> Discovery has not yet commenced.  Accordingly, SAIC is still developing its damages theories.  SAIC reserves the right to continue developing its damages theories through document production requests, written discovery, depositions of parties and non-parties, and expert discovery.  As a result of its ongoing investigation, SAIC may rely on the evidence it discovers while conducting its investigation and will supplement its response to include such evidence as required by the [Rules].

Defs.' Resp., Exhibit 30 (ECF No. 308-30) at 10.  Plaintiff supplemented its initial Rule 26(a)(1)(A)(iii) disclosure three times throughout fact discovery.  Plaintiff served its first and

second supplemental disclosures on October 28, 2021, and May 13, 2022, respectively, but did not substantially alter the language of the disclosures or provide additional clarification regarding its damages theories.[6]   *See* Defs.' Reply, Exhibit 29 (ECF No. 308-29) at 14 (First Rule 26(a) Supplement); Defs.' Reply, Exhibit 28 (ECF No. 308-28) at 14 (Second Rule 26(a) Supplement). The parties conducted a meet-and-confer on July 11, 2022, during which Defendants requested Plaintiff supplement the damages portion of its Rule 26(a)(1)(A)(iii) disclosures. *See* Pl.'s Reply at 28–29.   Shortly after the meeting, Defendants also advised Plaintiff via e-mail that "should [Plaintiff] trouble the Court with [Plaintiff's] motion regarding [Defendants'] invalidity contentions, [Defendants] will also raise the issue of [Plaintiff's] failure to provide the defendants with damages contentions."  Pl.'s Mot., Exhibit 13 (ECF 289-13) at 2 (July 14, 2022 e-mail from W. Bergmann to O. Armon); *see* Defs.' Resp. at 56.

On August 2, 2022, Plaintiff filed its Third Supplemental Rule 26(a)(1)(A)(iii) Initial Disclosure (Third Rule 26(a) Supplement).  Defs.' Resp., Exhibit 27 (ECF No. 308-27).  In its Third Rule 26(a) Supplement, Plaintiff states it had "not yet obtained sufficient information to permit a full calculation of damages," and notes that Plaintiff had recently learned of ███████ █████████████████  additional Accused Instrumentalities, which would affect Plaintiff's damages claims.  *Id.* at 14.  The Third Rule 26(a) Supplement does not, therefore,

---

[6] The October 28, 2021 and May 13, 2022 supplements both read as follows:

> Discovery is ongoing.  Accordingly, SAIC is still developing its damages theories. SAIC reserves the right to continue developing its damages theories through document production requests, written discovery, depositions of parties and non-parties, and expert discovery.  As a result of its ongoing investigation, SAIC may rely on the evidence it discovers while conducting its investigation and will supplement its response to include such evidence as required by the [Rules].

First Rule 26 Supplement (ECF No. 308-29) at 14; Second Rule 26 Supplement (ECF No. 308-28) at 14.

include any numerical computations or estimations of the reasonable royalty rate or damages. Instead, Plaintiff discloses potential damages methodologies its expert may use, but does not commit to adopting a specific approach.  *Id.*  The Third Rule 26(a) Supplement indicates that Plaintiff's expected recovery under 28 U.S.C. § 1498 will include "the value of a license at the time it was taken by the government and compensation for the government's delay in paying for that license."  *Id.* at 15.  Plaintiff hypothesizes that its expert may calculate the license as either a lump sum or as a reasonable royalty and will analyze "the benefits that the government obtains from its use of the patented technology."  *Id*. at 15–16 (citing *Decca Ltd. v. United States*, 640 F.2d 1156 (Fed. Cir. 1980)).

Plaintiff also provided Defendants with a list of the evidence it may use to determine the economic value of the patented technology, such as "testimony, documents, information, and other types of evidence that is made of record during fact and expert discovery."  *Id.* at 16.  According to Plaintiff, this evidence may include, for example, executed and draft license agreements produced by all parties; the parties' "produced financial information, business plans, pricing studies," and other financial information; or analyses that "compare the pricing, features, functionality, and/or value of products that incorporate the patented technology to similar attributes of products that do not incorporate the patented technology."  *Id.* at 16.  Plaintiff noted that the start date for the recovery period, or the "'instant the invention is first used or manufactured by [or for] the Government,'" was still the subject of ongoing discovery, though Plaintiff asserted that it expects the evidence will demonstrate Defendants "took delivery of an infringing instrumentality on or around the date of issuance of the '230 Patent," January 5, 2016.  *Id.* at 17 (quoting *Decca*, 640 F.2d at 1166).  Plaintiff also stated that it expects its damages expert to use January 5, 2016,

as the date on which the "hypothetical negotiation" for a licensing agreement, simulated as part of the expert's reasonable royalty valuation approach, will take place.  *Id.* at 18.

Plaintiff explained that if the damages expert performs a valuation based on a reasonable royalty, its royalty rate will either be expressed as a lump sum or as a series of running payments. *Id.* at 18–19.   Plaintiff also stated that its experts will estimate the royalty rate either using a hypothetical negotiation under the *Georgia-Pacific*[7] framework or using the "analytical approach."[8]  *Id.*   Plaintiff's Third Rule 26(a) Supplement includes a general discussion of the *Georgia-Pacific* factors and groups them into three general buckets: Licensing Considerations, Business Considerations, and Technical Considerations.  *Id.* at 19–25.   Within the Licensing Considerations bucket, Plaintiff identifies several specific licensing agreements and licensing offers produced by Microsoft, L3, and Plaintiff, but notes additional discovery and analyses are required before Plaintiff can discern the relevance and comparability of these transactions to the nature and value of the '230 patent.  *Id.* at 19–20.   Under the Business Considerations bucket, Plaintiff identifies documents conveying parties' licensing policies, the Government's use of the '230 patent, and the incremental value of the patented invention.  *Id.* at 20.  Plaintiff indicates that independent experts will "offer opinions regarding the extent to which business considerations will impact its damages claims."  *Id.*

Finally, under the Technical Considerations bucket, Plaintiff references certain documents "relevant to the technical and economic benefits gained by those that have used the patented invention, including the utility and advantages of the patented invention relative to other non-

---

[7] *Georgia-Pacific Corp. v. United States Plywood Co.*, 318 F. Supp. 1116 (S.D.N.Y. 1970), *modified and aff'd,* 446 F.2d 295 (2d Cir. 1971).

[8] *See TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 899 (Fed. Cir. 1986).

infringing technologies." *Id.* at 20.  Plaintiff also mentions interrogatory responses and witness depositions which, it contends, may prove relevant for a damages expert's consideration of these issues.  *Id.*  Within this section, Plaintiff identifies non-accused devices that the Government has purchased, including the Squad Binocular Night Vision Goggle, which the Government had

██████████████████████████████████████████████████████████████████████████

████████████████████████████.  *Id.* at 21.  Citing various produced documents, deposition testimony, and the Government's interrogatory responses, the Plaintiff notes that the Government has "continued to purchase Accused Instrumentalities for the Army ████████████████████

████████████████████████████████████████."  *Id.*  Plaintiff indicates it may use this information to inform an analytical approach to identify the value of the patented technology.  *Id.*  Finally, Plaintiff expresses its intent to use quantitative and qualitative information about the patented invention's benefits relative to other devices to further inform its valuation analysis.  *Id.*

### B.  Plaintiff's Responses to Microsoft's Interrogatory No. 7

Microsoft also requested information on Plaintiff's damages theory in the form of an interrogatory.  *See* Defs.' Resp., Exhibit 31 (ECF 308-31) at 22.  Microsoft's Interrogatory No. 7, first served on Plaintiff on July 26, 2019, reads as follows:

> Describe in complete detail the factual and legal basis and supporting evidence for the relief You seek for any alleged act of infringement Related to any Microsoft product (i.e., describe any royalty You contend You are entitled to as a result of the alleged infringement and the complete basis for that royalty; describe each sale that You contend You would have made but for the alleged infringement and the basis for Your contention that You would have made the sale and the amount of profit that You contend You lost from such sale; and describe each sale You made at a reduced price because of the alleged infringement and the basis for Your contention that You would have made such sale at a higher price).

*Id.* at 22.  In addition to listing a series of objections to the content of Microsoft's Interrogatory No. 7, Plaintiff's initial response indicated that "SAIC will set forth its contentions regarding remedies and damages at the time agreed to by the parties.  Discovery is ongoing and SAIC reserves the right to supplement this response." *Id.* at 23.

Plaintiff twice supplemented its response to Microsoft's Interrogatory No. 7.  *Id.* at 23–27. In Plaintiff's First Supplemental Interrogatory Response, dated June 30, 2020, Plaintiff again lists a series of objections to the content and timing of the interrogatory.  *Id.*  Plaintiff notes that under 28 U.S.C. § 1498(a), it is entitled to "reasonable and entire compensation" from the United States, not Microsoft, so Plaintiff does not have a burden to prove damages against Microsoft.  *Id.* at 23– 24.  Plaintiff highlights certain evidence and financial data[9] pertaining to Microsoft's Accused Products that Microsoft had, at that point in time, purportedly withheld from disclosure, and which Plaintiff would ultimately need to form its damages computation.  *Id.* at 24–25.

Plaintiff then turns to a general discussion of "reasonable and entire compensation" under 28 U.S.C. § 1498, stating that Plaintiff may pursue a reasonable royalty based on the number of

---

[9] Plaintiff argues Microsoft insufficiently responded to Plaintiff's Interrogatory No. 1, which requested financial information such as:

> (a) the total number of units of each Accused Product that have been provided to the Government; (b) the gross dollar revenue received for the sale, transfer, or other provision of each Accused Product; (c) the direct cost of goods sold and all other direct and indirect costs (by line item) for each Accused Product; (d) any rebates, discounts, returns, expenses not included in subpart (c) above, other accounts, or any other offsets to revenue for the Accused Products; and (e) any code names, internal names, reference numbers, or other identifying information for any Accused Product.

Defs.' Resp., Exhibit 31 (ECF 308-31) at 25.  Microsoft's reply to Plaintiff's Interrogatory No. 1 stated, "███████████████████████████████████████ ███" and cited Microsoft's contract with the Government.  *Id.*

devices delivered or on a lump sum basis. *Id.* at 26. These amounts, Plaintiff contends, "depend on the quantity and characteristics of the devices that Microsoft provides to the Government, discovery on which is ongoing, in its early stages, and/or being withheld by Microsoft." *Id.* The First Supplemental Response also indicates that in lieu of a reasonable royalty method for damages, Plaintiff may instead choose to pursue "other traditional forms of patent damages, including lost profits and price erosion." *Id.* Plaintiff asserts that it cannot take a firm position on a damages theory without "[a]dditional investigation, discovery, analysis, and expert opinion[s]" and that Plaintiff had already requested from Microsoft and the Government, but had not yet received, much of this necessary information. *Id.*

Plaintiff's Second Supplemental Interrogatory Response, served on August 8, 2022, is comparatively brief. *Id.* at 27. It incorporates by reference Plaintiff's prior general and specific objections to Microsoft's Interrogatory No. 7, Plaintiff's previous interrogatory responses, and the "Computation of Damages" section of its Third Rule 26(a) Supplement. *Id.*

### C. Plaintiff's Other Discovery Responses and Document Production

In addition to Plaintiff's Rule 26(a) disclosures and its responses to Microsoft's Interrogatory No. 7, Plaintiff produced documents and responded to written discovery beginning in May 2018 and spanning the course of fact discovery that, Plaintiff alleges, "identified all facts in SAIC's possession relevant to its claim for damages." Pl.'s Reply at 26–29. For example, on August 20, 2018, Plaintiff responded to the Government's initial set of interrogatories, describing its "conception and reduction to practice of the Asserted Patents" and identifying over 190 documents that contained information on the topic. *See* Pl.'s Reply at 26; Pl.'s Reply, Exhibit O (ECF No. 314-16) at 9–14. These documents discuss Plaintiff's attempts to work with the Government and other manufacturers to implement its patented technology. *Id.* In response to the

Government's Interrogatories Nos. 10[10] and 11,[11] Plaintiff also disclosed information and

documents detailing its attempts to market its patented technology.  Pl.'s Reply, Exhibit B (ECF

No. 314-3) at 18–23.

_____

[10] The Government's Interrogatory No. 10 reads as follows:

> Identify (a) all meetings and Communications between You and the Government
> regarding the Asserted Patents, any related patents, or any alleged inventions of the
> Asserted Patents, including without limitation, any meetings and Communications
> concerning SERVAL, any product or method alleged to practice any claim of any
> Asserted Patent, licensing, contracts, agreements, covenants not to sue, actual or
> potential infringement, invalidity, or unenforceability of the Asserted Patent or
> related patents, as well as Persons most knowledgeable about such meetings and
> Communications.  Such meetings and Communications include without limitation,
> all meetings with the Government (e.g. with Mr. Wayne Antesberger) in or about
> October 2004, any meeting, presentation, communication, or demonstration (e.g.
> any meeting, presentation, communication or demonstration concerning SERVAL)
> in 2004-2007 (e.g. the demonstration of SERVAL to the Army in April 2007); (b)
> for each meeting and Communication, describe in complete detail all facts and
> circumstances relating to the meeting or Communication, describe in complete
> detail all facts and circumstances relating to the meeting or Communication,
> including without limitation, the meeting or Communication date, agenda, Persons
> in attendance, format (i.e., in-person, teleconference, or by another means),
> information discussed, and any subsequently related meetings or Communications;
> and (c) for each meeting and Communication, identify by production numbers all
> Documents and things relating to the meeting or Communication including, without
> limitation, any summary of events within the meeting, meeting notes, or related
> presentations.

Pl.'s Reply, Exhibit B (ECF No. 314-3) at 18.

[11] The Government's Interrogatory No. 11 reads as follows:

> Identify (a) all meetings and Communications between You and any Third Parties
> regarding the Asserted Patents, any related patents, or any alleged inventions of the
> Asserted Patents, including without limitation, any meetings and Communications
> concerning licensing, contracts, agreements, covenants not to sue, actual or
> potential infringement, invalidity, or unenforceability of the Asserted Patent or
> related patents, as well as Persons most knowledgeable about such meetings and
> Communications; (b) for each meeting and Communication, describe in complete
> detail all facts and circumstances relating to the meeting or Communication,
> describe in complete detail all facts and circumstances relating to the meeting or
> Communication, including without limitation, the meeting or Communication date,

Plaintiff also claims to have provided Defendants with ample notice of the "funding and development efforts" related to the patented technology through its various discovery responses. Pl.'s Reply at 26. For example, Plaintiff notes that in response to the Government's June 15, 2018 request for production seeking "[a]ll DOCUMENTS supporting, contradicting, or otherwise concerning YOUR contention that YOU are entitled to reasonable and entire compensation," Plaintiff produced a document which discussed development and business plans for the patented technology, including potential sales and licensing of the system and software. *See* Pl.'s Reply, Exhibit E (ECF No. 314-6) at 25; Pl.'s Reply, Exhibit F (ECF No. 314-7) at 3. Plaintiff also turned over presentations which provided details of the "costs associated with building and developing the SERVAL prototype" and estimated licensing fees and profits associated with the patented technology. Pl.'s Reply at 27; Pl.'s Reply, Exhibit H (ECF No. 314-9) at 16–17.

Plaintiff alleges that by the end of fact discovery on August 9, 2022, Plaintiff had "diligently collected and produced information in its possession that was potentially relevant to damages."[12] Pl.'s Reply at 28; *see* Scheduling Order dated June 14, 2022 (ECF No. 285) at 2. On

---

agenda, Persons in attendance, format (i.e., in-person, teleconference, or by another means), information discussed, and any subsequently related meetings or Communications; and (c) for each meeting and Communication, identify by production numbers all Documents and things relating to the meeting or Communication including, without limitation, any summary of events within the meeting, meeting notes, or related presentations.

Pl.'s Reply, Exhibit B (ECF No. 314-3) at 20–21.

[12] Pursuant to the Court's Scheduling Order filed September 16, 2021, fact discovery was originally scheduled to end on June 13, 2022. Scheduling Order dated September 16, 2021 (ECF No. 203) at 2. Upon the parties' joint request, the Court agreed to extend the close of fact discovery to August 9, 2022. *See* Joint Status Report dated June 8, 2022 (ECF No. 283) at 2–3; Scheduling Order dated June 14, 2022 (ECF No. 285) at 2; Hearing Transcript, June 1, 2022 (ECF No. 281) at 72:13–17 (Microsoft Counsel: "I think that the parties are very close, and just so Your Honor knows, it's – the concept, at least, that's being discussed is additional time so that we can wrap up some depositions. That's the main focus."). Defendants repeatedly characterize June 13, 2022 as

August 9 and August 11, 2022, Defendants respectively deposed John Scales and Michael Spachtholz, Plaintiff's two Rule 30(b)(6) corporate designees on damages testimony.[13] Pl.'s Reply (ECF No. 314) at 30; Pl.'s Reply, Exhibit D (ECF No. 314-5) (Scales Transcript); Pl.'s Reply, Exhibit G (ECF No. 314-8) (Spachtholz Transcript).  Defendants did not lodge an objection that they lacked sufficient time to prepare for questioning on damages-related issues.  Pl.'s Reply at 30.

## APPLICABLE LEGAL STANDARDS

On July 2, 2018, the United States Court of Federal Claims adopted the "Patent Rules of the United States Court of Federal Claims" (Local Patent Rules).  Rules at Appendix J.  These Local Patent Rules were not in effect at the time Plaintiff filed suit, and all parties agree such rules are inapplicable to the present dispute.  *See* Hearing Transcript, August 27, 2020 (ECF No. 139) at 19:17–23:17, 28:2–17.  The Local Patent Rules, therefore, are not binding authority for this case.  All other Rules remain binding.

Rule 33[14] governs interrogatories between parties.  *See* Rule 33.  A party may serve interrogatories on any subject matter "that may be inquired into under [Rule] 26(b)," which allows

---

the close of *written* fact discovery.  *See, e.g.*, Defs.' Reply at 5.  However, the Court has never formally made such a distinction.

[13] On August 11, 2022, this Court granted the parties' joint motion to extend time beyond the fact discovery deadline to complete Rule 30(b)(6) depositions of seven witnesses, including Michael Spachtholz.  Joint Stipulation and Motion for Leave to Extend Deadline of Certain Depositions (ECF No. 304) at 2; Order dated August 11, 2022 (ECF No. 305).

[14] Rule 33's language mirrors the language included in its counterpart, Rule 33 of the Federal Rules of Civil Procedure.  *Compare* Rule 33 *with* Fed. R. Civ. Pro. 33.  Therefore, this Court has considered cases out of other circuits and districts which apply Federal Rule of Civil Procedure 33 to inform its assessment and application of Rule 33.  This is consistent with the Rules of the United States Court of Federal Claims Rules Committee Notes, which indicate that Rule 33 "is identical to" Federal Rule of Civil Procedure 33.  *See Intelligent Invs., Inc. v. United States*, 2021-2310, 2022 WL 17075056, *6 (Fed. Cir. Nov. 18, 2022) ("[T]he precedent interpreting the Federal Rules

"discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Rule 33(a)(2); Rule 26(b)(1).  The parties may also serve an interrogatory seeking an "opinion or contention that relates to fact or the application of law to fact."  Rule 33(a)(2).  A responding party "must serve its answers and any objections within 30 days after being served with the interrogatories," unless another deadline is ordered by the court. Rule 33(b)(2).  The responding party must answer each interrogatory "separately and fully in writing," "to the extent it is not objected to," and the grounds for any objection "must be stated with specificity."  Rules 33(b)(3)–(4).  If the answer to an interrogatory may be conveyed through examination of a party's records, that party may answer by "specifying the records that must be reviewed, in sufficient detail" to allow the interrogating party to identify and locate the records. Rule 33(d)(1).

Rule 37 further provides that "[t]he court *may*, on motion, order sanctions if . . . a party, after being properly served with interrogatories under [Rule] 33 . . . fails to serve its answers, objections, or written response."  Rule 37(d)(1)(A)(ii) (emphasis added).  The power to sanction a failure to answer an interrogatory is, therefore, discretionary under Rule 37(d)(1)(A)(ii). Appropriate sanctions for such a failure "may include any of the orders listed in [Rules] 37(b)(2)(A)(i)–(iv)."  Rule 37(d)(3).  Rule 37(b)(2)(A)(ii) permits the Court to "prohibit[] the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence."  Rule 37(b)(2)(A)(ii).  Rule 37(d)(3) also states the Court "must require the party failing to act . . . to pay the reasonable expenses, including attorney's fees, caused

---

of Civil Procedure applies with equal force to the comparable Rules of the Court of Federal Claims.") (quotation omitted) (alteration in original).

by the failure," unless the Court determines that the failure was "substantially justified or other circumstances make an award of expenses unjust."  Rule 37(d)(3).

Rule 16 addresses pretrial conferences, scheduling orders, and case management.  Rule 16. Rule 16(f) details the Court's powers to order sanctions for a party's failure to obey a scheduling or other pretrial order and authorizes the Court to "issue any just orders, including those authorized by [Rules] 37(b)(2)(A)(ii)–(vii)."  Rule 16(f)(1).

Under Rule 26(a)(1)(A)(iii), a party must, "without awaiting a discovery request," provide "a computation of each category of damages claimed by the disclosing party" and make available all "documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based."  Rule 26(a)(1)(A)(iii). [15]  A party's initial disclosures should rely on "information then reasonably available."  Rule 26(a)(1)(E).  The party must make its initial damages disclosure "within 14 days after the Early Meeting of Counsel," unless the court establishes a different deadline.  Rule 26(a)(1)(C).

The disclosing or responding party has a duty to "supplement or correct" its initial Rule 26(a)(1)(A)(iii) disclosures and its responses to Rule 33 interrogatories "in a timely manner" if that party learns the original disclosure or response is materially "incomplete or incorrect."  Rule 26(e)(1)(A). [16]  This obligation only exists if the non-disclosing parties have not otherwise learned

---

[15] Rule 26(a)(1)(A)(iii)'s language mirrors the language included in its counterpart, Rule 26(a)(1)(A)(iii) of the Federal Rules of Civil Procedure.  *Compare* Rule 26(a)(1)(A)(iii), *with* Fed. R. Civ. Pro. 26(a)(1)(A)(iii); *see also* Rules of the United States Court of Federal Claims Rules Committee Notes (Rule 26 "has been revised to parallel the structure and content" of Federal Rule of Civil Procedure 26).  Accordingly, this Court has considered cases out of other circuits and districts which apply Federal Rule of Civil Procedure 26(a)(1)(A)(iii) to inform its assessment and application of Rule 26(a)(1)(A)(iii).

[16] As with Rule 26(a)(1)(A)(iii), Rule 26(e)(1)(A)'s language mirrors the language included in its counterpart, Rule 26(e)(1)(A) of the Federal Rules of Civil Procedure.  *Compare* Rule 26(e)(1)(A), *with* Fed. R. Civ. Pro. 26(e)(1)(A).  Accordingly, this Court has considered cases out of other

of the additional or corrective information "during the discovery process or in writing." *Id.* The United States Court of Appeals for the Federal Circuit (Federal Circuit) considers such additional information "material" if the failure to amend a discovery response to include that information would prejudice the other party. *See Zoltek Corp. v. United States*, 71 Fed. Cl. 160, 164 (2006) (citing *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1205 (Fed. Cir. 2005)).

If a party fails to adequately disclose damages computations under Rule 26(a)(1)(A)(iii), respond to an interrogatory under Rule 33, or supplement its disclosures and responses under Rule 26(e)(1)(A), the opposing party may move the Court for sanctions under Rule 37(c)(1).[17] If a party fails to meet its obligations under Rules 26(a) or (e), "the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at trial unless the failure was substantially justified or is harmless." Rule 37(c)(1); *see, e.g.*, *Zoltek*, 71 Fed. Cl. at 167 ("Circuit courts applying the federal rule have held that the sanction of exclusion is automatic and mandatory unless the party violating [Federal Rule of Civil Procedure] 26 shows that the violation was justified or harmless."). Despite, or in addition to, this sanction, the court "may order payment of the reasonable expenses, including attorney's fees, caused by the failure . . . and may impose other appropriate sanctions" at its discretion. Rule 37(c)(1); *see Scott Timber, Inc. v. United States*, 93

---

circuits and districts which apply Federal Rule of Civil Procedure 26(e)(1)(A) to inform its assessment and application of Rule 26(e)(1)(A).

[17] Rule 37(c)(1) mirrors its counterpart in the Federal Rules of Civil Procedure. *See, e.g.*, *Scott Timber, Inc. v. United States*, 93 Fed. Cl. 221, 226 n.5 (2010) (noting the comparability between both versions of Rule 37(c)(1)). Therefore, this Court has referred to cases out of other circuits and districts which apply Federal Rule of Civil Procedure 37(c)(1) to inform its assessment and application of Rule 37(c)(1). *Id.* This is consistent with the Rules of the United States Court of Federal Claims Rules Committee Notes, which indicate that Rule 37 "parallels the structure and content" of Federal Rule of Civil Procedure 37. *See Intelligent Invs.*, 2022 WL 17075056, at *6 ("[T]he precedent interpreting the Federal Rules of Civil Procedure applies with equal force to the comparable Rules of the Court of Federal Claims.") (quotation omitted) (alteration in original).

Fed. Cl. 221, 226 (2010).  Accordingly, a party that fails to meet its discovery duties bears the burden of demonstrating the alleged failure was "substantially justified or harmless."  *See, e.g.*, *Scott Timber*, 93 Fed. Cl. at 226 (noting "the burden is on the offending party to show that its violation was either justified or harmless" and citing cases from the First, Fifth, and Seventh Circuits); *Zoltek*, 71 Fed. Cl. at 167 (same).[18]

Courts have considered various factors to determine whether a failure to disclose or supplement a discovery response warrants sanctions, including: (1) the surprise to the other party; (2) the ability to cure the surprise; (3) the non-disclosing party's need for the challenged evidence; (4) the extent to which the evidence would disrupt trial; (5) the non-disclosing party's explanation for the delayed or missing disclosure; and (6) any bad faith or willfulness demonstrated by the non-disclosure.[19]  *See, e.g.*, *MicroStrategy Inc., v. Bus. Objects, S.A.*, 429 F.3d 1344, 1357 (Fed.

---

[18] While the ultimate burden to prove whether conduct was "substantially justified or harmless" lies with the offending party, as other judges of this court have indicated, the moving party is expected to demonstrate it experienced meaningful prejudice attributable to the alleged disclosure violations. *See, e.g.*, *Hitkansut LLC v. United States*, 127 Fed. Cl. 101, 109 (2016) ("Plaintiffs do not explicate how the additional disclosure prejudiced them—there is no assertion that their expert was unable to analyze and address this prior art or that any other harm resulted, apart from an assertion by plaintiffs that defendant had adopted a 'new invalidity position.'"); *Banks v. United States*, 75 Fed. Cl. 294, 299 (2007) ("[P]laintiffs failed to meet their burden to demonstrate that they have been prejudiced by defendant's failure to disclose all of the underlying data.").

[19] Courts disagree on whether evidence of bad faith or willfulness must exist to impose exclusion as a sanction. *Compare Toyrrific, LLC v. Karapetian*, 606 Fed. Appx. 365 (9th Cir. 2015) (refusing to affirm evidentiary exclusion for a Rule 26 violation that had no evidence of bad faith), *and Securiforce Int'l Am., LLC v. United States*, 127 Fed. Cl. 386, 396 (2016) (quoting *Ingalls Shipbuilding, Inc. v. United States*, 857 F.2d 1448, 1451 (Fed. Cir. 1988)) (stating that while Rule 37's terms do not explicitly require a showing of bad faith, a request for harsh sanctions such as "de facto dismissal" necessitates such a showing), *with Zoltek*, 71 Fed. Cl. at 168 (declining to impose a bad faith requirement and "instead choosing to subsume it into the justification requirement in analyzing the explanation for the party's failure to disclose"); *see also Intelligent Invs.*, 2022 WL 17075056, at *8 (vacating dismissal of action as a sanction where trial court failed to make finding of noncompliance attributable to willfulness or bad faith).

Cir. 2005) (quoting *Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 596 (4th Cir. 2003)) (articulating a five-factor test to assess the harmlessness of nondisclosure, which included surprise, ability to cure surprise, disruption of trial, the importance of the testimony, and the party's explanation for its failure to disclose); *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003) (announcing a four-factor test for harmlessness, which considers prejudice or surprise to the party, the ability to cure surprise, the likelihood of disruption to trial, and the bad faith or willfulness of the non-disclosing party); *Hitkansut*, 127 Fed. Cl. at 107 ("[T]he court may consider surprise to the other party, whether there is opportunity to cure that surprise, the proponent's need for the evidence at trial, or other factors."); *Banks*, 75 Fed. Cl. at 298–99 (summarizing the various tests that courts have applied and adopting the approach applied by the Third, Seventh, and Tenth Circuits).

## DISCUSSION

### I.   Plaintiff's Motion for Rule 37 Sanctions

Plaintiff urges this Court to sanction the Government and L3 under Rule 37 for violating Rule 33.  Specifically, Plaintiff urges this Court to "exclude all evidence that the Government or L3 would offer or benefit from to qualify non-patent references as prior art because they refused to respond to SAIC's Interrogatory No. 18." Pl.'s Mot. at 15.  Plaintiff's Rule 37 Motion does not seek relief against Microsoft, as it is undisputed that Plaintiff never served Microsoft with Interrogatory No. 18.  *See* Pl.'s Mot. at 8 n.3.[20]  The Government and L3 counter that their

---

[20] Despite that Plaintiff's Rule 37 Motion is not addressed to Microsoft, Plaintiff nevertheless faults Microsoft for not "provid[ing] any disclosure relevant to Rog. 18 other than the Defendants' jointly-served Final Invalidity Contentions, which . . . do not disclose Defendants' contentions or evidence regarding qualifying prior art under 35 U.S.C. § 102." Pl.'s Mot. at 8 n.3.  As Plaintiff did not file its Rule 37 Motion against Microsoft, the Court does not consider such allegations as pertinent.

24

responses to Interrogatory No. 18 were sufficient given their timely objections to the interrogatory as "[o]bjectionable, [d]uplicative of [o]ther [d]iscovery [d]isclosures, and [o]therwise [p]remature." Defs.' Resp. at 24. They further argue that sanctions are unwarranted because their response to Interrogatory No. 18 did not prejudice Plaintiff. Defs.' Resp. at 9–10.

For the reasons stated below, this Court holds the Government and L3 did not violate Rule 33. Specifically, the Court holds that, contrary to the Government and L3's position, Interrogatory No. 18 constitutes an acceptable contention interrogatory. The Court further holds, however, that Defendants timely objected to Interrogatory No. 18, and their response — while not fulsome — sufficiently answered Interrogatory No. 18 for the purposes of Rule 33. Even absent these conclusions, the Court finds that Plaintiff failed to demonstrate sufficient prejudice to warrant the imposition of sanctions under Rule 37(d).

### A. Interrogatory No. 18 is an Acceptable Contention Interrogatory

As noted, Plaintiff contends the Government and L3 did not sufficiently respond to Interrogatory 18. Those defendants cast Plaintiff's Interrogatory No. 18 as "'a serious form of discovery abuse'" due to its nature as a "'disclose-everything'" interrogatory that "purports to obligate Defendants to 'identify all factual and legal bases for [each invalidity] contention.'" Defs.' Resp. at 24. The Government and L3 also argue Interrogatory No. 18 "subverts the Court's pretrial procedures." *Id.*

### 1. Interrogatory No. 18 Is Not an Abuse of Discovery

This Court adopts the view that "appropriately timed contention interrogatories . . . tend to narrow issues, avoid wasteful preparation, and, it is hoped, expedite a resolution of . . . litigation." *Roberts v. Heim*, 130 F.R.D. 424, 427 (N.D. Cal. 1989). Problems can arise, however, when a party serves overly broad interrogatories early in the discovery process. *See In re Convergent*

*Techs. Sec. Litig.*, 108 F.R.D. 328, 337 (N.D. Cal. 1985) ("[T]here is substantial reason to believe

that the *early* knee jerk filing of sets of contention interrogatories that systematically track all the

allegations in an opposing party's pleadings is a serious form of discovery abuse.") (emphasis in

original).  Despite the Government's and L3's arguments to the contrary, Plaintiff's Interrogatory

No. 18 is neither overly broad, nor was it prematurely served.

Interrogatory No. 18 inquires as to the Government's and L3's "factual and legal bases"

for contending their non-patent prior art references qualify as prior art under 35 U.S.C. § 102.  *See*

Pl.'s Mot. at 7–8.  Such a request is hardly seeking "'a portrait of [those Defendants'] trial'" or

that such Defendants "'write a book'" in response.  *Roberts*, 130 F.R.D. at 427 ("[T]he Courts are

loathe to require a party to 'write basically a portrait of their trial' for the other parties.") (quoting

*Cummins v. Johnson & Higgins, Inc.*, C 88 0364 JPV (June 5, 1989)).  Neither is the timing of the

interrogatory — served after much of the parties' document production had occurred — out of the

ordinary.  *See In re Convergent*, 108 F.R.D. at 349 (providing plaintiffs until "60 days after

substantial completion of . . . document production" to respond to defendants' contention

interrogatories).  Defendants, therefore, err in casting Interrogatory No. 18 as abusive of the

discovery process in this case.

### 2.  Interrogatory No. 18 Does Not Subvert the Court's Pretrial Procedures

The Government and L3's argument that Interrogatory No. 18 subverts this Court's pretrial

procedures is similarly unavailing.  To support their position, those Defendants merely reference

deadlines set by this Court and those stated by the Court's Rules, without referencing any

additional authorities on the issue.  Defs.' Resp. at 25 (providing the deadlines for Defendants'

final election of prior art (Sept. 2, 2022); opening expert reports (Sept. 26, 2022); exchanging a

list of proposed witnesses (63 days before the pretrial conference); and the date of the pretrial

conference (Dec. 14, 2022)).   The existence of such deadlines alone, however, does not demonstrate how or why inquiring as to the legal and factual bases for qualifying certain non-patent references amounts to a subversion of those deadlines.   Defendants, therefore, failed to demonstrate that Interrogatory No. 18 subverts this Court's pretrial procedures.

### B.  Defendants Timely Objected and Responded to Interrogatory No. 18

Plaintiff contends that "[n]either the Government nor L3 provided a substantive response" to Interrogatory No. 18, as they "merely pointed to their Final Invalidity Contentions and expert reports."  Pl.'s Mot. at 15.  The Government and L3 disagree with this characterization, arguing their responses reflected timely objections to Interrogatory No. 18 consistent with Rule 33(b), and responded to the substance of the interrogatory by incorporating by reference previous and then-forthcoming invalidity contentions.  Defs.' Resp. at 25–26.

Rule 33(b)(2) requires parties to answer or object to interrogatories within 30 days of service.  Rule 33(b)(2).  As the Government and L3 each responded to Interrogatory No. 18 within that timeframe, the Court's analysis focuses on the adequacy of the responses.  *See* Pl.'s Mot. at 7–9 (providing the dates of Interrogatory No. 18's service on both the Government and L3 and the dates of their responses).

Rule 37 authorizes sanctions where a party "fails to serve its answers, objections, or written response."   Rule 37(d)(1)(A)(ii).   In *Badalamenti v. Dunham's, Inc.*, the Federal Circuit highlighted the two prevailing interpretations of what constitutes a failure to respond: *first*, "[s]everal courts hold that Rule 37(d) does not authorize an award of sanctions unless there is a total failure to respond to the discovery requests"; and *second*, "[o]ther courts award sanctions under Rule 37(d) where the evasive or misleading response is tantamount to no response at all." 896 F.2d 1359, 1363 (Fed. Cir. 1990).  Neither scenario is present here.  The Government and L3

each objected with reasonable specificity to aspects of Interrogatory No. 18, while also indicating that their previous and then-forthcoming invalidity contentions would serve as their answers to the interrogatory.  Such a response is neither a total failure to respond nor so evasive or misleading as to act as a total failure to respond.

While the Government and L3 timely responded to Interrogatory No. 18, their responses — relying primarily on references to invalidity contentions — are sparse.  In June 2022, this Court admonished the parties to "overgeneralize at your own peril" regarding their invalidity contentions and similarly instructed that this Court would "hold both sides to" the content of their responses. Hearing Transcript, June 1, 2022 (ECF No. 281) at 69:14–22.  Accordingly, consistent with that warning, the Court views the Government's and L3's responses to Interrogatory 18 and referenced invalidity contentions as containing those Defendants' factual and legal bases for qualifying their non-patent references as prior art.  Accordingly, going forward, the Government and L3 will be held to the content of these responses, including during summary judgment briefing or at trial.[21]

### C.  Plaintiff Was Not Substantially Harmed or Prejudiced by the Government's and L3's Responses to Interrogatory No. 18

Even assuming, *arguendo*, that the Government's and L3's responses to Interrogatory No. 18 were insufficient, sanctions under Rule 37 would still be inappropriate, as Plaintiff failed to demonstrate sufficient harm or prejudice relating to the alleged insufficiency.  Plaintiff alleges the Government's and L3's responses to Interrogatory No. 18 "unfairly prejudiced SAIC because it has not been provided notice about (i) the statutory subsection(s) under which the Government and L3 intend to qualify non-patent prior art, (ii) the date(s) when each item of prior art allegedly became prior art, (iii) the evidence that the Government and L3 possess to qualify non-patent prior

---

[21] As Plaintiff did not serve Interrogatory 18 on Microsoft and Plaintiff's Rule 37 Motion is not directed to Microsoft, the Court recognizes that Microsoft may be in a different position than its co-defendants.

art, or (iv) the identity or knowledge of persons who might offer testimony to qualify non-patent prior art." Pl.'s Mot. at 6. Without this information, Plaintiff claims it "cannot prepare to rebut Defendants' invalidity defenses during expert discovery or at trial." *Id.*

Notably, Plaintiff did not serve its Interrogatory No. 18 on Microsoft. This calls into question how, from a practical perspective, Plaintiff's requested sanctions against only the Government and L3 would effectively remedy any alleged harm. Plaintiff's allegations of prejudice are also speculative or premature at this point; indeed, Plaintiff has not, for example, identified any specific witness it seeks to exclude. As noted, the Government and L3 will be held to their responses to Interrogatory No. 18 and referenced invalidity contentions. This serves to ensure Plaintiff is not harmed or surprised by new witnesses or newly-asserted factual or legal bases concerning Defendants' qualification of prior art as this litigation continues.

## II.    Plaintiff's Partial Motion to Strike

### A.  Defendants' Invalidity Contentions

Plaintiff also moves, pursuant to Rule 16(f)(1), to strike Defendants' obviousness defenses from their Final Invalidity Contentions for failing "to obey a scheduling or other pretrial order." Rule 16(f)(1)(C); Pl.'s Mot. at 19. Specifically, Plaintiff moves to strike: (1) Section IV(A) of Defendants' Final Invalidity Contentions Cover Pleading; (2) "every generic reservation of rights contained in each row of Defendants' invalidity claim charts"; and (3) "obviousness-based defenses identified in the claim charts attached to Defendants' Final Invalidity Contentions." *Id.* at 31–32.

Plaintiff advances two arguments to this end. *First*, Plaintiff alleges Defendants' Final Invalidity Contentions disclose a near-infinite amount of obviousness combinations of prior art. *Id.* at 20–23. *Second*, Plaintiff asserts the specific combinations provided by Defendants are not

accompanied by contentions and evidence as to each combination's obviousness. *Id.* at 23–27.
Each of these, Plaintiff argues, represents Defendants' failure to "crystallize their theories" through
their Final Invalidity Contentions, which, Plaintiff contends, fail to comply with this Court's
scheduling order and request for specificity in the final contentions. Pl.'s Mot. at 19 ("Defendants'
Final Invalidity Contentions fail to sufficiently crystallize their obviousness theories . . . ."); *see*
Hearing Transcript, June 1, 2022 (ECF No. 281) at 69:14–22 ("I'm not prescribing any particular
information for your final contentions. I'm just saying overgeneralize at your own peril . . . .
Whatever the parties put down is what they're going to be stuck with . . . ."). The Court denies
Plaintiff's Motion to Strike for the reasons articulated below.

      **1.  Defendants' Use of a "Buckets" Approach to Obviousness Combinations Is Acceptable**

Plaintiff contends Defendants' use of buckets of prior art references "allow[s] Defendants
to combine [prior art] references in unlimited and unidentified ways and fails to properly identify
Defendants' obviousness combinations." Pl.'s Mot. at 12. According to Plaintiff, such
"unlimited" combinations undermine the purpose of providing Final Invalidity Contentions and
violate Rule 16(f)(1)C. However, this bucket approach to identifying obviousness combinations
is not barred in the context of invalidity contentions, particularly where, as here, the invalidity
contentions are not served based on local patent rules that contain specificity requirements. *See*
*Avago Techs. Gen. IP PTE Ltd. v. Elan Microelectronics Corp.*, No. C04-05385 JW (HRL), 2007
WL 951818, at *4 (N.D. Cal. Mar. 28, 2007) (holding defendant's use of prior art reference groups
to identify particular combinations "reasonably specifie[d] the combination of prior art references
that allegedly render Avago's patents obvious" and also satisfied the district court's patent local
rules, despite "result[ing] in literally billions of different possible combinations"); *Charleston*
*Med. Therapeutics, Inc. v. AstraZeneca Pharms. LP*, No. 2:13-cv-2078, 2015 WL 10913613, at

*2–*3 (D.S.C. Apr. 16, 2015) (declining to strike invalidity contentions that plaintiff alleged were deficient because "[t]he scheduling order does not explicitly state that Defendant must provide specific combinations of prior art . . . and Plaintiffs never moved to compel disclosure of specific combinations").   In such circumstances, the numerosity of potential combinations is not detrimental so long as Defendants reasonably specified the possible combinations of prior art references that they allege render the asserted claims obvious.  *See 0912139 B.C. Ltd. v. Rampion USA Inc.*, No. C18-1464JLR, 2019 WL 3082290, at *6 (W.D. Wash. July 15, 2019) ("Under one line of authority, courts have found that a defendant satisfies its obligation to disclose obviousness contentions, even if its approach results in billions of possible obviousness combinations, as long as the defendant reasonably specifies the possible combinations of prior art references that allegedly render the asserted claims obvious.") (citations and internal quotations omitted).

        As in *Charleston Medical Therapeutics, Inc.*, previous scheduling orders in this case do not require Defendants to "provide specific combinations of prior art."  *See* 2015 WL 10913613, at *2–*3; Scheduling Order dated April 30, 2018 (ECF No. 31); Scheduling Order dated May 12, 2020 (ECF No. 121).  Further, consistent with cases such as *0912139 B.C. Ltd*., Defendants' use of buckets to present their obviousness combinations, while resulting in many obviousness combinations, provides Plaintiff with sufficient notice of the combinations Defendants may ultimately rely upon at trial.  Accordingly, this Court finds that Defendants did not violate Rule 16(f)(1)(C), as Defendants' method for providing obviousness combinations does not violate any scheduling order entered in this action.

### 2.  Defendants Provided Motivations to Combine

        Plaintiff moves to strike Defendants' obviousness theories of invalidity since their "Final Invalidity Contentions fail to crystallize Defendants' theories about why it would have been

obvious to combine the teaching of the prior art in the manner shown in Defendants' invalidity claim charts." Pl.'s Mot. at 23.  To this end, Plaintiff cites *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17–18 (1966), to argue that Defendants must present certain categories of facts to demonstrate obviousness.  Pl.'s Mot. at 23.  Plaintiff then cites *KSR Int'l Co. v. Teleflex Inc*., 550 U.S. 398, 420 (2007), to argue Defendants must "prove that the combinations of prior art they rely upon would have been obvious to a person of ordinary skill in the art at the time of the invention." *Id.* (emphasis in original).  According to Plaintiff, Defendants' failure "to disclose *any* contentions or evidence supporting the particularized combinations of prior art that they contend would have rendered the claims of the '230 Patent invalid for obviousness" violates this Court's March 14, 2022 Order, which required the parties to exchange final invalidity contentions by May 31, 2022.  *Id.* at 24 (emphasis in original); March 14, 2022 Order (ECF 262).

While questions regarding Defendants' burden to demonstrate obviousness are undoubtedly important, Plaintiff's arguments based on *Graham* and *KSR* are premature and better suited for summary judgment.  As noted, the Court's current Local Patent Rules — which require heightened specificity — are inapplicable to this case, and the scheduling orders previously entered did not establish standards for the particularity with which the Defendants had to explicate their proposed obviousness combinations.  Accordingly, the drastic sanctions Plaintiff requests — striking Sections IV(A) and IV(B) of Defendants' cover pleading and all obviousness combinations in the seven Final Invalidity Contentions claim charts — are inappropriate as Defendants provide motivations to combine prior art in their Final Invalidity Contentions.  While Defendants do not explain these motivations in much detail, the explanations satisfy the scheduling order requirements as drafted.

### B.  Microsoft's Indefiniteness Theories Are Timely

Plaintiff moves to strike "Microsoft's new indefiniteness theories articulated in Section V(A) of Defendants' Final Invalidity Contentions."  Pl.'s Mot. at 32.  Specifically, Plaintiff takes issue with Microsoft interposing new indefiniteness theories based upon terms Microsoft alleges are newly-relevant considering the Court's Claim Construction Opinion, Plaintiff's subsequent narrowing of claims, and advancements to Microsoft's prototype.  *See* Pl.'s Mot. at 27–28; Defs.' Resp. at 53–54.  Microsoft contends that its newly-asserted indefiniteness theories are timely, as they:  (i) "involve underlying issues of fact that Microsoft anticipated would be—and have now in fact been—informed by discovery"; and (ii) were provided as part of a supplement to Microsoft's invalidity contentions.  Defs.' Resp. at 53–55.

Claim construction is, and was in this case, primarily accomplished via a *Markman* hearing and subsequent issuance of a Claim Construction Opinion.  *See* Hearing Transcript, Dec. 15, 2020 (ECF No. 159); Claim Construction Opinion (ECF No. 192).  The Court addressed questions of indefiniteness at the *Markman* Hearing and in its Claim Construction Opinion.  *See Markman* Hearing Transcript, December 1, 2020 (ECF No. 159); Claim Construction Opinion (ECF No. 192) at 28–29.  However, the Court's ability to construe terms does not end there; courts generally may opt to construe terms a party later argues are indefinite, even after a *Markman* hearing and issuance of a claim construction opinion.  *See* 4 Robert A. Matthews, Jr., *Annotated Patent Digest* § 23:25.120 (2022) ("No waiver of indefiniteness for not raising it on claim construction . . . . Although it may be possible in some cases to resolve an indefiniteness challenge as part of construing a claim, courts generally will not find a waiver of an indefiniteness challenge simply because an accused infringer did not raise the challenge as part of its claim construction arguments."); *Berkheimer v. HP Inc.*, No. 12 C 9023, 2022 WL 910580, at *5 (N.D. Ill. Mar. 29,

2022) ("That claim construction must accompany an indefiniteness analysis does not mean that indefiniteness must be decided, once and for all, at the *Markman* hearing."). This is especially true in this action, which involves a ███████████. Indeed, prior to the December 15, 2020 *Markman* hearing, this Court anticipated further claim construction could be necessary "███ ████████████████████████████ if, in fact, SAIC is accusing that product of infringement," and that the Court would potentially undertake "supplemental claim construction with regard to a couple of terms" at that point. *See* Hearing Transcript, Aug. 27, 2020 (ECF No. 139) at 61:11–22. Microsoft's introduction of new indefiniteness theories at this juncture is, therefore, the exact situation anticipated and welcomed by the Court during the August 27, 2020 hearing. As Defendants note, ████████████████████████████████ ████████████████████████████████████████ ████████████. *See* Defs. Resp. at 21-22; Defs.' Resp., Exhibit 17 (ECF No. 308-17). Accordingly, the Court denies Plaintiff's Motion to Strike Microsoft's newly asserted indefiniteness theories on this basis.

## III.   Defendants' Cross-Motion for Rule 37 Sanctions

Defendants urge this Court to impose Rule 37 sanctions against Plaintiff for its purported failure to disclose any damages theory or computation throughout the course of fact discovery. Defs.' Resp. at 55–58 (referencing Plaintiff's "***undisclosed*** damages theory" and arguing SAIC's "***total failure*** to disclosure [*sic*] any damages theory is an egregious offense of [Rules] 26(a) and (e)") (emphasis in original). Defendants' Cross-Motion criticizes the content and timing of Plaintiff's Rule 26(a) initial and supplemental damages disclosures and Plaintiff's responses to Microsoft's Interrogatory No. 7. *Id.* at 56. Specifically, Defendants repeatedly highlight the delayed nature of Plaintiff's damages disclosures, noting that Plaintiff served its most robust

description of its damages theory, its Third Rule 26(a) Supplement, four years after discovery began and several weeks after Defendants allege the *written* fact discovery period had ended. *Id.* at 11–12. Defendants further contend that Plaintiff's Third Rule 26(a) Supplement "lacks key details" necessary for a complete Rule 26(a) disclosure, including the precise damages model upon which Plaintiff will rely, a proposed royalty rate, and any meaningful analysis or computation of damages. Defs.' Reply at 7.

Defendants argue the delayed and incomplete nature of Plaintiff's disclosures has prejudiced Defendants during fact discovery, and specifically, Defendants' ability to prepare for Rule 30(b)(6) depositions of Plaintiff's designees on damages-related topics. Defs.' Reply at 8–9. Defendants emphasize that Plaintiff served its Third Rule 26(a) Supplement on August 2, 2022, when "many other serial depositions were on-going," and only one week in advance of the August 9 and 11, 2022 depositions of damages witnesses John Scales and Michael Spachtholz, respectively. Defs.' Reply at 17–18. As a result, Defendants state they had little time to review the supplement or meaningfully question Messrs. Scales and Spachtholz on Plaintiff's proposed damages theories during the August depositions. *Id.* Defendants, therefore, request this Court exclude any evidence pertaining to Plaintiff's damages theories from consideration at trial. *See* Defs.' Resp. at 58; Defs.' Reply at 18.

Plaintiff contends, however, that its disclosures were timely and sufficient to satisfy the Rules' requirements and avoid Rule 37 sanctions. Plaintiff notes that its Third Rule 26(a) Supplement offered an 11-page description of potential damages theories and "citations to supporting evidence and witness testimony" that Plaintiff's damages expert will consider during expert discovery. Pl.'s Reply at 29. On August 8, 2022, Plaintiff also included this supplement by reference in its Second Supplemental Response to Microsoft's Interrogatory No. 7. Defs.'

Resp., Exhibit 31 (ECF 308-31) at 27.  Plaintiff further asserts these disclosures occurred prior to the close of fact discovery on August 9, 2022, and before its damages designees were scheduled to be deposed.  Defendants, who are represented by numerous, sophisticated counsel, had at least a week to prepare for the depositions of the 30(b)(6) damages witnesses and conducted those depositions without raising concerns about the timing of the August 2 supplemental disclosure to the Court or seeking clarification from Plaintiff about the contents of the disclosure.  Pl.'s Reply at 29–30.

Additionally, Plaintiff contends that throughout the course of fact discovery, beginning in 2018 and continuing through 2022, it collected and disclosed all facts in its possession "potentially relevant to damages" through its general document production and discovery responses.  *Id.* at 28. Finally, Plaintiff argues that because this case requires "the application of multiple, complex analyses applying the various recognized approaches for calculating patent damages," Plaintiff's damages computations necessarily rely on the opinions of technical experts.  *Id.* at 33.  Plaintiff claims, therefore, that Defendants' Cross-Motion attempts to condemn Plaintiff for failing to provide damages calculations only available through Plaintiff's expert report, the deadline for which had not yet passed.  *Id.* at 32–34.

As explained further below, this Court denies Defendants' Cross-Motion for Rule 37 sanctions.   Specifically, this Court holds that Plaintiff adequately and timely served and supplemented its Rule 26(a)(1)(A)(iii) damages disclosures and responses to Microsoft's Interrogatory No. 7 with the expectation that further supplementation would occur as part of expert discovery.  This Court further finds that even if Plaintiff's damages disclosures had failed to meet the Rules' requirements, Defendants nevertheless failed to demonstrate the severe prejudice that must exist before a court may impose exclusion sanctions under Rule 37.

### A.  Plaintiff's Rule 26(a)(1)(A)(iii) Damages Disclosures and Responses to Microsoft's Interrogatory No. 7 Were Adequate and Timely

Plaintiff adequately and timely disclosed its damages theories such that Rule 37(c) sanctions are unwarranted.  Rule 26(a)(1)(A)(iii) requires a party to disclose a damages computation based on information "then reasonably available to it" and to identify for the opposing party the underlying evidence that supports the computation.  Rules 26(a)(1)(A)(iii), 26(a)(1)(E). The disclosing party has a duty under Rule 26(e)(1)(A) to timely supplement these initial Rule 26(a)(1)(A)(iii) damages disclosures, in addition to any interrogatory responses, as it learns of material information which makes the prior disclosures incomplete or incorrect.  Rule 26(e)(1)(A).

Whether a party's disclosures have complied with Rule 26(a)(1)(A)(iii) is a fact-specific determination.  Courts acknowledge that factual complexity surrounding certain disputes may prevent a party from preparing concrete damages computations for its Rule 26(a)(1)(A)(iii) initial disclosures.  *See, e.g.*, *Allstate Ins. Co. v. Nassiri*, No. 2:08-cv-00369-JCM-GWF, 2010 WL 5248111, at *4 (D. Nev. Dec. 16, 2020) ("The courts also recognize, however, that a plaintiff may not be able to provide a detailed computation of damages early in the case before all relevant documents or evidence has been obtained.").  In such cases, a party uses fact discovery to preview the damages methodologies its experts may use during expert discovery and waits to provide formal numerical damages computations through its Rule 26(a)(2) expert reports.  *See, e.g.*, *Ice Castles, LLC v. LaBelle Lake Ice Palace LLC*, No. 4:18-cv-00571-DCN, 2021 WL 4138398, at *3 (D. Idaho Sept. 10, 2021) (noting that where a party's damages calculation is not a "straightforward mathematical equation" and instead "deals with nebulous concepts," a party may produce "final, complete, detailed information about the categories of its damages" as part of expert discovery); *Silicon Knights, Inc. v. Epic Games, Inc.*, No. 5:07–CV–275–D, 2012 WL 1596722, at *1 (E.D.N.C. May 7, 2012) ("[A] party may supplement its Rule 26(a)(1)(A)(iii) 'computation' by

producing an expert report (including documents) that complies with Rule 26(a)(1)(A)(iii).");
*Kingsway Fin. Servs. Inc, v. PricewaterhouseCoopers LLP*, No. 03 Civ. 5560 RMB HBP, 2006
WL 1520227, at *1 (SDNY June 1, 2006) (same proposition) (citing 6 James W. Moore, *Moore's Federal Practice* § 26.22(4)(c)(ii) (3d ed. 1997)).

The circumstances surrounding Plaintiff's theory of recovery are inherently complex.
Throughout the course of this action, ████████████████████████████████████████
████████ that allegedly infringes the '230 patent.  The Court acknowledged ████████████
████████████████████ during its August 27, 2020 oral argument and status conference.  Hearing
Transcript, August 27, 2020 (ECF No. 139).  ████████████████████████████████████
████████ when it filed new invalidity contentions and indefiniteness defenses on February 11,
2022 ████████████████████████████████.  Defs.' Resp. at 53–54.  Plaintiff's
discovery responses clearly indicated that its damages amount "depend[s] on the quantity and
characteristics of the devices that Microsoft provides to the Government," ████████████████
████████████████████.  Defs.' Resp., Exhibit 31 (ECF 308-31) at 26.

Considering this complexity, Plaintiff provided a preview of the damages methodologies
it expected its experts to pursue.  As early as June 30, 2020, when Plaintiff served its First
Supplemental Response to Microsoft's Interrogatory No. 7, Plaintiff disclosed the reasonable
royalty method and other traditional forms of patent damages as potential recovery theories its
expert could use.  *See id.*  Plaintiff further elaborated on its damages theories in its Third Rule
26(a) Supplement served on August 2, 2022.  *See* Defs.' Resp., Exhibit 27 (ECF No. 308-27).  This
disclosure provided greater detail as to the types of evidence Plaintiff expects its damages expert
to use for her calculations, including licensing agreements, offers, and policies; documents
evidencing the Government's alleged use of the '230 patent; and documents pertinent to the

technical and economic benefits of Plaintiff's patented invention. *Id.* at 16, 19–20. It also identified pricing evidence for comparable, non-accused devices, such as the Squad Binocular Night Vision Goggle, that the expert may use to inform her valuation of the '230 patent. *Id.* at 21. Plaintiff's damages disclosures consistently asserted the need for additional information and discovery on Microsoft's technology, and even identified certain of Plaintiff's requests for production for which Defendants did not provide fulsome answers. *See, e.g.*, *id.* at 14–15; Defs.' Resp., Exhibit 31 (ECF 308-31) at 24–25. Ultimately, Plaintiff met its burden by highlighting general categories of damages it intended for its expert to consider and by identifying specific evidentiary support for such damages categories based on the information and documentation then available. *See, e.g.*, *Ice Castles*, 2021 WL 4138398, at *3 ("Ice Castles put forth the 'categories' of its prospective damages as required by Rule 26 at the outset of this case. That was all it could do at that point. Then, during discovery, Ice Castles provided LaBelle with various financial summaries and documents that it planned to rely on when calculating damages. And, ultimately, Ice Castles engaged experts to review that information.").

Defendants' concerns over the timing of Plaintiff's disclosures ring hollow. Defendants cite several cases in which courts have exercised discretion to exclude evidence based on delayed discovery disclosures. *See, e.g.*, *MLC Intell. Prop., LLC v. Micron Tech., Inc.*, No. 14-cv-03657-SI, 2019 WL 2863585, *14–15 (N.D. Cal. July 2, 2019), *aff'd via interlocutory appeal*, 10 F.4th 1358 (Fed. Cir. 2021); *Ingenco Holdings, LLC v. Ace Am. Ins. Co.*, No. C13-543RAJ, 2016 WL 4703758 (W.D. Wash. Sept. 7, 2016), *aff'd* 921 F.3d 803 (9th Cir. 2019); *Green Edge Enters., LLC v. Rubber Mulch Etc. LLC*, No. 4:02CV566 TIA, 2009 WL 1383275 (E.D. Mo. May 14, 2009), *rev'd in part*, 620 F.3d 1287 (Fed. Cir. 2010); *24/7 Records, Inc. v. Sony Music Ent., Inc.*, 566 F. Supp. 2d 305 (S.D.N.Y. 2008); *Ocean Cuisine, Ltd. v. Fishery Prods. Int'l, Inc.*, No. 05-

CV-3613 (DRH)(AKT), 2006 WL 1071578 (E.D.N.Y. Apr. 21, 2006). Yet, apart from *Ingenco Holdings*,[22] these courts excluded damages theories disclosed near trial or outside the close of fact discovery. *See, e.g.*, *MLC Intell. Prop.*, 10 F.4th at 1369–73 (affirming trial court exclusion of damages contentions disclosed for the first time in an expert report); *Green Edge Enterprises*, 2009 WL 1383275, at *2 ("Rubber Resources failed to disclose any information regarding its theory of damages until it filed its trial brief and proposed jury instructions, less than three weeks before trial."); *24/7 Records*, 566 F. Supp. 2d at 318 (excluding a damages theory that 24/7 Records disclosed for the first time "just weeks before trial in the joint pre-trial order, long after the close of discovery"); *Ocean Cuisine*, 2006 WL 1071578, at *5–6 (E.D.N.Y. Apr. 21, 2006) ("Plaintiff did not provide its statement of damages in its initial disclosure nor at any time thereafter within the discovery period."). In contrast, Plaintiff provided its damages disclosures and responded to Microsoft's Interrogatory No. 7 prior to the Court's August 9, 2022 deadline for fact discovery, prior to fact witness depositions that occurred after the close of fact discovery, prior to the close of expert discovery, and well in advance of trial. Accordingly, Plaintiff's Rule 26(a)(1)(A)(iii) damages disclosures and responses to Microsoft's Interrogatory No. 7 were adequate and timely.

## B. Defendants Cannot Demonstrate Meaningful Prejudice

Even if, as Defendants allege, Plaintiff's initial damages disclosures were insufficient or untimely, the circumstances would still fail to warrant Rule 37 sanctions due to lack of prejudice. The decision to impose discovery sanctions rests within the Court's discretion, and the Court must decide whether a party's failure to disclose or supplement prior disclosures is "substantially

---

[22] *Ingenco Holdings*, in which the court opted to exclude a party's damages computations disclosed "the day before the discovery cutoff," is distinguishable from the present circumstance. *See Ingenco Holdings*, 2016 WL 4703758, at *2. Indeed, apart from timeliness, *Ingenco Holdings* specifically found indications of willfulness, fault, and bad faith in the offending party's decision to delay its damages disclosure. *Ingenco Holdings*, 2016 WL 4703758, at *3–4. Plaintiff's actions in this case demonstrate no willfulness, fault, or bad faith that would warrant exclusion sanctions.

justified or harmless" under Rule 37.  *See, e.g.*, *Scott Timber*, 93 Fed. Cl. at 226; *Precision Pine & Timber, Inc. v. United States*, No. 98-720 C, 2001 WL 1819224, at *3 (Fed. Cl. Mar. 6, 2001) (citing *Adkins v. United States*, 816 F.2d 1580, 1581–82 (Fed. Cir. 1987)).  While the ultimate burden to demonstrate substantial justification or harmlessness lies with the non-disclosing party, the moving party must, as a threshold matter, allege the existence of sincere prejudice resulting from the non-disclosure.  *See Hitkansut*, 127 Fed. Cl. at 109; *Banks*, 75 Fed. Cl. at 299; *see supra* note 18.  Defendants have failed to meet that burden.

At best, Defendants' Cross-Motion alleges a technical violation of the discovery rules that misstates the Court's schedule and fails to sufficiently demonstrate prejudice.  Defendants object to the timing of Plaintiff's Third Rule 26(a) Supplement and Plaintiff's Second Supplemental Response to Microsoft's Interrogatory No. 7, which Plaintiff served "in the midst of pre-scheduled competing depositions" and after the supposed end of written fact discovery.  Defs.' Reply at 5.  This Court, however, never formally drew a distinction between written fact discovery and depositional fact discovery, as Defendants suggest.  *See* Scheduling Order dated June 14, 2022 (ECF No. 285) at 2.  This Court merely ordered that the parties complete *all* fact discovery by August 9, 2022,[23] a deadline which Plaintiff's disclosures met.

In their reply brief, Defendants further state in conclusory fashion that the allegedly sparse content and delayed timing of Plaintiff's damages disclosures prejudiced Defendants by preventing them from meaningfully preparing for the Rule 30(b)(6) depositions of John Scales and Michael Spachtholz.  Defs.' Reply at 17–18.  Yet, Defendants had a week in advance to prepare for the depositions and proceeded with the depositions without raising any concerns to Plaintiff or this

---

[23] *See supra* note 12.

Court regarding the compressed timeframe or the content of the damages disclosures.  Pl.'s Reply at 29–30.  These circumstances fail to convey the substantial prejudice that must exist before a court issues the Rule 37 sanction of exclusion.  *See Scott Timber*, 93 Fed. Cl. at 227–28 (rejecting a party's motion to exclude evidence under Rule 37 because the party alleged "at most a technical violation of [Rule] 26(a)(2)(C)(i), with no accompanying harm").

This position is consistent with the Court's prior holding in this action, where, due to lack of prejudice, this Court declined to strike certain of the Government's untimely-disclosed indefiniteness defenses.  *Sci. Applications Int'l Corp. v. United States*, 153 Fed. Cl. 485 (2021). In that instance, the Government attempted to introduce four additional indefiniteness defenses after several court-ordered deadlines for such disclosures had passed, forcing Plaintiff "to hastily procure a responsive declaration on indefiniteness . . . in less than a week." *Id.* at 491.  This Court denied, in part, Plaintiff's motion to strike on the ground that Plaintiff had failed to allege any prejudice other than "having to rebut the Government's newly advanced indefiniteness positions on a compressed deadline," which Plaintiff successfully accomplished.  *Id.* at 495–96.  This Court noted that absent clear prejudice, this Court's Rules favor admission of the claim or evidence over its exclusion.  *Id.*  Instead, this Court awarded fees and expenses to Plaintiff as compensation for the impact of the Government's delayed disclosure, a remedy not sought here. *Id.* at 496–97.

Defendant's lack of prejudice here is further underscored when one analyzes factors that other courts have used to assess the substantial justification or harmlessness of a party's disclosure violations.  Defendants cannot raise a credible claim of surprise in response to Plaintiff's damages disclosures, as Plaintiff disclosed its potential theories of damages prior to the close of fact discovery, before the Rule 30(b)(6) depositions of Plaintiff's damages witnesses, and well in advance of trial.  Courts have also considered the apparent predictability of a party's damages

theories in assessing whether an insufficient or delayed disclosure caused the moving party any surprise. *See, e.g.*, *Idahoan Foods, LLC v. Allied World Assurance Co. (U.S.), Inc.*, No. 4:18-cv-00273-DCN, 2020 WL 1948823, at *8 (D. Idaho Apr. 22, 2020) (noting no surprise existed where the damages disclosures were the "type of damages one would expect to see in a case such as this"). While formal damages computations can frequently require expert involvement due to their complexity, the primary damages methodologies frequently used in patent cases are well-understood and recognized, especially by sophisticated parties such as the litigants here. *See, e.g.*, *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1317 (Fed. Cir. 2011) ("This court has sanctioned the use of the *Georgia-Pacific* factors to frame the reasonable royalty inquiry."); *Decca Ltd.*, 640 F.2d at 1167 (listing three common methods used to value a patent license and concluding that the "[d]etermination of a reasonable royalty for the license is the preferred method of valuation"). Plaintiff's Rule 26(a)(1)(A)(iii) disclosures and interrogatory responses highlighted which of the common damages methodologies its damages expert may use going forward. These disclosures also provided Defendants notice of potential issues on which Defendants could later seek clarification, both during the Rule 30(b)(6) depositions of Plaintiff's damages witnesses and throughout the expert discovery period.

Further, the expert discovery process itself will likely cure any surprise that Defendants could attribute to Plaintiff's damages disclosures.[24] *See, e.g.*, *Ice Castles*, 2021 WL 4138398, at

---

[24] This Court acknowledges that the Federal Circuit, in *MLC Intellectual Property*, affirmed a holding of the United States District Court for the Northern District of California rejecting that parties may use expert discovery to supplement prior fact discovery damages disclosures. 10 F.4th 1358 (Fed. Cir. 2021). However, the Federal Circuit applied procedural discovery rules of the Northern District of California in that case and affirmed the lower court on that basis. *Id.* at 1367. Given that posture, this Court is not bound by the Federal Circuit's holding or reasoning, as it specifically related to another court's local rules. *See K-Con Bldg. Sys. Inc., v. United States*, 106 Fed. Cl. 652, 659 n. 14 (2012) ("Normally, the Federal Circuit's rulings on nonpatent issues in patent cases are not binding on the United States Court of Federal Claims ('Court of Federal

*3 (noting that even if a party's initial disclosures were "procedurally lacking," the party's expert report on damages will ameliorate any surprise); *U.S. Bank Nat'l Ass'n v. PHL Variable Ins. Co.*, No. 12 CIV. 6811(CM)(JCF), 2013 WL 5495542, at *6–7 (S.D.N.Y. Oct. 3, 2013) (holding that expert discovery offers the moving party the opportunity to probe the "underpinnings of any expert testimony" on damages). Defendants will have the opportunity to review Plaintiff's expert report, provide its own rebuttal report, and depose Plaintiff's damages expert all within the coming weeks of expert discovery. Further, proceeding as planned through the expert discovery process will neither disrupt the Court's schedule for future proceedings nor impact the timing of trial, again mitigating any prejudice alleged by Defendants. *See U.S. Bank*, 2013 WL 5495542, at *6–7.

Plaintiff has substantial need for the damages theories Defendants seek to exclude, as these disclosures encompass the Plaintiff's theory of recovery for Defendants' alleged infringement of the '230 patent. As fact discovery has ended and expert discovery has begun, excluding Plaintiff's theories at this point would be tantamount to ordering the case's dismissal — a sanction this Court is unwilling to order absent a showing of immense harm, willfulness, or bad faith. *See, e.g.*, *Intelligent Invs., Inc. v. United States*, 2021-2310, 2022 WL 17075056, at *1 (Fed. Cir. Nov. 18,

---

Claims') because they are not considered to be the law of the Federal Circuit."); *United Med. Supply Co. v. United States*, 77 Fed. Cl. 257, 265 (2007) ("[T]he Federal Circuit had followed its normal practice of deciding procedural issues that do not implicate its exclusive jurisdiction under the law of the applicable regional circuit. Such procedural rulings are not binding precedent in subsequent proceedings arising out of other circuits, including cases arising out of this court."). Instead, *MLC Intellectual Property* provides persuasive authority, which this Court considers in conjunction with other persuasive authorities.

Significant and material factual dissimilarities exist between *MLC Intellectual Property*, which involved damages contentions disclosed for the first time during an expert report, and the present case, which involves Plaintiff's timely damages disclosures served prior to the close of fact discovery. *See MLC Intellectual Property*, 10 F.4th at 1366. Additionally, as noted, Defendants' Cross-Motion is premature in some respects, as the full implication of Plaintiff's damages disclosures cannot be assessed until the close of expert discovery.

2022) ("[W]e conclude that the Claims Court abused its discretion by dismissing the case without finding that the noncompliance was willful or in bad faith . . . ."); *Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 740 (7th Cir. 1998) (refusing to allow dismissal sanctions that were not "'proportionate to the circumstances surrounding [the] party's failure to comply with discovery rules'") (citing *Melendez v. Illinois Bell Tel. Co.*, 79 F.3d 661, 672 (7th Cir.1996)); *Securiforce*, 127 Fed. Cl. at 396 (refusing to impose sanctions that amount to "de facto dismissal" without a showing of bad faith). The record presents no evidence of bad faith or willfulness on the part of Plaintiff and lacks any indication of severe harm warranting exclusion sanctions. Instead, Plaintiff's consistent explanation for the nature and timing of its disclosures rested on the need for additional discovery and expert involvement to prepare any numerical damages calculations. *See, e.g.*, Defs.' Resp., Exhibit 31 (ECF 308-31) at 23–27; Defs.' Resp., Exhibit 27 (ECF No. 308-27) at 19–21. These justifications are reasonable and comport with jurisprudence concerning damages disclosures in factually complicated disputes.

Finally, the timing of Defendants' Cross-Motion calls into question the sincerity of Defendants' prejudice claims. In assessing whether sufficient prejudice exists to justify exclusion, courts consider the timing of the sanctions motions before the court. *See, e.g.*, *Hitkansut*, 127 Fed. Cl. at 110 ("Even if the revised information were as harmful as plaintiffs insist, they could have and should have addressed that harm in the early fall of 2015 when they received the supplemental data, not shortly before trial."). The circumstances strongly suggest Defendants' Cross-Motion is motivated by a "good for the goose, good for the gander" mindset, rather than a true concern of prejudice. Indeed, Defendants stated as much in their July 14, 2022, e-mail exchange with Plaintiff, in which they warned that should the Plaintiff pursue a sanctions motion regarding Defendants' invalidity contentions, Defendants would respond by highlighting to the Court

Plaintiff's delayed damages disclosures.  Defs.' Resp. at 56; *see* Pl.'s Mot., Exhibit 13 (ECF 289-13) at 2 (July 14, 2022 e-mail from W. Bergmann to O. Armon).  Exchanges such as this call into question the sincerity of the claimed prejudice and strongly counsel against an award of sanctions.

## **<u>CONCLUSION</u>**

For the reasons stated above, Plaintiff's Motion for Sanctions Pursuant to Rule 37 (ECF No. 289) is **DENIED**, Plaintiff's Partial Motion to Strike Invalidity Contentions (ECF No. 289) is **DENIED**, and Defendants' Rule 37 Cross-Motion to Exclude Plaintiff's Undisclosed Damages Theory (ECF No. 308) is **DENIED**.

The parties are directed to **CONFER** and **FILE** a Notice within seven days of this Memorandum and Order, attaching a proposed public version of this Sealed Memorandum and Order, with any competition-sensitive or otherwise protected information redacted.

IT IS SO ORDERED.

*Eleni M. Roumel*
ELENI M. ROUMEL
Judge

Dated: November 29, 2022
Washington, D.C.