# In the United States Court of Federal Claims

SCIENCE APPLICATIONS
INTERNATIONAL CORPORATION,

Plaintiff,

v.

THE UNITED STATES,

Defendant,

and

MICROSOFT CORPORATION,

Intervenor-Defendant,

and

L3 TECHNOLOGIES, INC.,

Third-Party Defendant.

No. 17-cv-825

Filed Under Seal: February 28, 2025[1]

Publication Date: March 7, 2025

---

*Stephen R. Smith* of Cooley LLP, Washington, D.C. for Plaintiff. With him are *DeAnna D. Allen* of Cooley LLP, Washington, D.C.; Orion Armon of Cooley LLP, Denver CO.

*Matthew D. Tanner*, United States Department of Justice, Civil Division, Washington, D.C. appearing for Defendant. With him are *Kavyasri Nagumotu, Scott Bolden, Hayley A. Dunn, Thomas J. Sullivan, and Brian M. Boynton*, United States Department of Justice, Civil Division, Washington, D.C.

*Ahmed J. Davis* of Fish & Richardson P.C., Washington, D.C. for Intervenor-Defendant. With him are *Daniel Y. Lee*, and *Laura C. Whitworth* of Fish & Richardson P.C., Washington, D.C.; and *John Thornburgh*, Fish & Richardson P.C., San Diego, CA.

---

[1] On February 28, 2025, this Court issued a sealed version of this Memorandum and Order. ECF No. 502. On March 7, 2025, the parties filed a Notice indicating that they had no proposed redactions to the Memorandum and Order. ECF No. 503. Accordingly, the sealed and public versions of this Memorandum and Order are identical, except for the publication date and this footnote.

*William C. Bergmann* of Baker & Hostetler LLP, Washington, D.C. for Third-Party Defendant. With him are *Charles C. Carson* of Baker & Hostetler LLP, Washington, D.C.; and *Jeffrey J. Lyons* of Baker & Hostetler LLP, Philadelphia, PA.

## <u>MEMORANDUM AND ORDER</u>

### I.    **Introduction**

This opinion is the latest order in this long-running litigation as it approaches resolution at trial.  Pending before the Court are 14 motions in limine, through which the parties seek to exclude certain evidence and streamline trial.  The Court has issued many opinions and orders throughout this hard-fought litigation.  Familiarity with the factual background of this matter, including with United States patent number 9,229,230 ('230 Patent) and prior orders and opinions, is presumed. *See, e.g.*, *Sci. Applications Int'l Corp. v. United States*, 135 Fed. Cl. 661 (2018); *Sci. Applications Int'l Corp. v. United States*, 148 Fed. Cl. 268 (2020); *Sci. Applications Int'l Corp. v. United States*, 154 Fed. Cl. 594 (2021) (Claim Construction Opinion); *Sci. Applications Int'l Corp. v. United States*, 156 Fed. Cl. 486 (2021); *Sci. Applications Int'l Corp. v. United States*, 161 Fed. Cl. 373 (2022); *Sci. Applications Int'l Corp. v. United States*, 162 Fed. Cl. 213 (2022); *Sci. Applications Int'l Corp. v. United States*, 163 Fed. Cl. 257 (2022); *Sci. Applications Int'l Corp. v. United States*, 169 Fed. Cl. 346 (2024) (Daubert Opinion); *Sci. Applications Int'l Corp. v. United States*, 169 Fed. Cl. 643 (2024).

### A.    **Procedural History.**

On June 19, 2017, Plaintiff Science Applications International Corporation (SAIC) filed the present action alleging literal patent infringement pursuant to 28 U.S.C. § 1498(a) against Defendant the United States (the Government).  Complaint (ECF No. 1) (Compl.) ¶¶ 2–3.[2]

---

[2] Citations throughout this Memorandum and Order reference the ECF-assigned page numbers, which do not always correspond to the pagination within the document.

Plaintiff contends that the Government infringed SAIC's patents "by entering into contracts with Plaintiff's competitors for the manufacture and subsequent use of night vision goggle weapon systems with specialized heads up displays that allegedly use Plaintiff's patented technology." *Sci. Applications Int'l Corp.*, 148 Fed. Cl. at 269; *see* Compl. ¶¶ 2, 37. While the original Complaint alleged infringement of U.S. Patent Nos. 7,787,012 ('012 Patent), 8,817,103 ('103 Patent), 9,618,752 ('752 Patent), and the '230 Patent (collectively, Asserted Patents), only Claims 1, 5, 12, 18, 29, 30, 37, and 39 of the '230 Patent (Asserted Claims) remain at issue in this case. *See* Compl. ¶ 3; Joint Stipulation of Invalidity and Motion for Partial Summary Judgment Regarding the Asserted Patents (ECF No. 208) (Invalidity Stipulation) at 2 (stipulating to dismiss all claims of the '012 Patent, '103 Patent, and '752 Patent as well as certain claims of the '230 Patent based on the Court's Claim Construction Order); Order, dated Oct. 4, 2021 (ECF No. 213) (granting summary judgment for claims listed in the Invalidity Stipulation); Plaintiff SAIC's Response to Defendants' Motions in Limine (ECF No. 474) (Pl. Resp.) at Ex. C, Plaintiff's Final Election of Asserted Claims (ECF. No. 474-3).

On February 14, 2024, the Court issued a sealed Memorandum and Order ruling on the parties' summary judgment motions. ECF No. 422 (Summary Judgment Opinion).[3] Subsequently, on March 15, 2024, the parties filed a Joint Status Report proposing competing pretrial schedules. Joint Status Report (ECF No. 428) at 9–16. Following a March 20, 2024 joint status conference, the Court entered a mediation and pretrial schedule based on the parties' joint status report and additional information provided by the parties at the conference. *See* Minute Entry, dated Mar. 21,

---

[3] Following redactions, the Court re-issued the opinion for publication on February 29, 2024. *See* Summary Judgment Opinion. As this Memorandum and Order cites to sealed portions of the Summary Judgment Opinion, the Court references the sealed docket entry (ECF No. 422), rather than the public version of the Summary Judgment Opinion.

2024; Scheduling Order, dated Mar. 21, 2024 (ECF No. 429) (Pretrial Scheduling Order). Pursuant to the Court's scheduling order, the parties filed their respective motions in limine on July 19, 2024. *See* Plaintiff's Motions in Limine (ECF No. 466) (Pl. Mot.); Defendants' Motions in Limine (ECF No. 465) (Def. Mot.). On July 26, 2024, the parties filed their Responses to the motions in limine. *See* Pl. Resp.; Defendants' Response in Opposition to Plaintiff's Motions in Limine (ECF No. 473) (Def. Resp.).

Trial is scheduled to begin on May 6, 2025. Scheduling Order, dated Feb. 21, 2025 (ECF No. 498). Pursuant to the parties' request for expedition, on August 1, 2024, the Court previously ruled on Plaintiff's Motion in Limine No. 6 regarding Mr. Eric Miller. Order, dated Aug. 1, 2024 (ECF No. 475) (Miller Exclusion Order); Transcript, dated Aug. 1, 2024 (ECF No. 483) (Miller Exclusion Tr.) at 5:14–24; *see* Plaintiff's Preliminary High Priority Objection (ECF No. 448). Pending are the remaining portions of the parties' motions in limine (MIL), in which they request the exclusion of various types of evidence and testimony expected at trial.[4] *See generally* Pl. Mot.; Def. Mot. Briefing is complete, and the motions are ripe for adjudication. A background summary pertinent to the current motions follows.

### B.    Summary of Rulings

For the reasons stated in this Memorandum and Order, the Court rules as follows: Plaintiff's MIL No. 1 is denied in part without prejudice to renew at trial and denied in part with prejudice. Plaintiff's MIL No. 2 is denied without prejudice to renew at trial. Plaintiff's MIL No. 3 is denied without prejudice to renew at trial. Plaintiff's MIL No. 4 is denied as moot. Plaintiff's MIL No. 5 is denied without prejudice to renew at trial. Plaintiff's MIL No. 7 is denied as moot.

---

[4] The Government, Intervenor Defendant Microsoft Corporation (Microsoft), and Third-Party Defendant L3 Technologies, Inc. (L3) (Collectively, Defendants) filed their Motions in Limine jointly.

Plaintiff's MIL No. 8 is denied as moot.  Plaintiff's MIL No. 9 is denied without prejudice to renew at trial.  Plaintiff's MIL No. 10 is denied with prejudice.  Plaintiff's MIL No. 11 is denied without prejudice to renew at trial.  Defendants' MIL No. 1 is denied with prejudice.  Defendants' MIL No. 2 is denied without prejudice to renew at trial.  Defendants' MIL No. 3 is denied as moot.

## II.    **Applicable Legal Standards**

Rule 16 of the Rules of the United States Court of Federal Claims (Rule(s)) empowers this Court to issue pretrial orders "to define the issues, facts, and theories actually in contention and to weed out extraneous issues[, and] . . . to issue pretrial rulings concerning the admissibility at trial of proposed testimony and documentary evidence."  *Baskett v. United States*, 2 Cl. Ct. 356, 359 (1983); *see also City of Wilmington v. United States*, 152 Fed. Cl. 373, 377 (2021).  By ruling on motions in limine, a court can "expedite and render efficient a subsequent trial."  *Norman v. United States*, 56 Fed. Cl. 255, 267 (2003) (quoting *Weeks Dredging & Contracting, Inc. v. United States*, 11 Cl. Ct. 37, 45 (1986)).

Courts "enjoy[] broad discretion" when ruling on motions in limine.  *City of Wilmington*, 152 Fed. Cl. at 377 (quoting *Sikorsky Aircraft Corp. v. United States*, 102 Fed. Cl. 38, 49 (2011)).  Such discretion is even greater for this Court as bench trials limit the "concern for juror confusion or potential prejudice."  *Spectre Corp. v. United States*, 160 Fed. Cl. 486, 495 (2022) (quoting *City of Wilmington*, 152 Fed. Cl. at 377); *see also Seaboard Lumber Co. v. United States*, 308 F.3d 1283, 1302 (Fed. Cir. 2002) (noting that "concerns [about Federal Rule of Evidence 403] are of lesser import in a bench trial").  Because of the lack of concern for prejudice, "[t]he Court would ordinarily allow the parties to proceed with presenting their case and withhold judgment on the admissibility of evidence until after trial."  *Spectre Corp.*, 160 Fed. Cl. at 495; *see also United States v. Brown*, 415 F.3d 1257, 1269 (11th Cir. 2005) ("There is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself.").

The proponent of disputed evidence bears the burden of proving the evidence's admissibility by a preponderance of the evidence under Federal Rule of Evidence (FRE) 104(a). *Bourjaily v. United States*, 483 U.S. 171, 175–76 (1987); *Weinhoffer v. Davie Shoring, Inc.*, 23 F.4th 579, 582 (5th Cir. 2022) (internal citations omitted) ("The party offering an exhibit must produce evidence sufficient to support a finding that the item is what the proponent claims it to be."); *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 385 (9th Cir. 2010) ("Plaintiffs, as the parties seeking admission of most of the evidence at issue, bore the burden of proof to show its admissibility."); *United States v. Almonte*, 956 F.2d 27, 30 (2d Cir. 1992) ("The party proffering the evidence bears the burden[.]"); FED. R. EVID. 104(a) ("The court must decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible.").

### A.    Relevance

"Relevant evidence is admissible unless" an appropriate authority provides otherwise. FED. R. EVID. 402. Conversely, "[i]rrelevant evidence is not admissible." *Id.* "Evidence is relevant if . . . it has any tendency to make a fact more or less probable than it would be without the evidence." FED. R. EVID. 401. Relevancy is a low threshold. *See Daubert v. Merrell Dow Pharma., Inc.*, 509 U.S. 579, 587 (1993) ("The Rule's basic standard of relevance thus is a liberal one."). A court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403.

### B.    Lay and Expert Witness Testimony

The Federal Rules of Evidence dictate different standards for expert and lay witness testimony. *See* FED. R. EVID. 701, 702, 703. Federal Rule of Evidence 701 governs opinion testimony by lay witnesses. FED. R. EVID. 701. It provides that a lay witness may only testify in

the form of an opinion if it is (1) "rationally based on the witness's perception," (2) "helpful to clearly understanding the witness's testimony or to determining a fact in issue," and (3) "not based on scientific, technical, or other specialized knowledge within the scope of FRE 702."  *Id.*; *see also DataMill, Inc. v. United States*, 91 Fed. Cl. 722, 735–36 (2010).

Federal Rules of Evidence 702 and 703 govern expert testimony.  FED. R. EVID. 702, 703. Federal Rule of Evidence 702 permits a witness "qualified as an expert by knowledge, skill, experience, training, or education" to "testify in the form of an opinion . . . if the proponent demonstrates to the court that it is more likely than not that" the following four conditions are met:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

FED. R. EVID. 702.  Federal Rule of Evidence 703 permits an expert to "base an opinion on facts or data . . . that the expert has been made aware of."  FED. R. EVID. 703.  As a general matter, "an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation," such as "facts or data . . . that the expert has been made aware of." *Daubert*, 509 U.S. at 592 (citing FED. R. EVID. 702, 703); FED. R. EVID. 703.  Beyond the ability to offer opinions that are not based on firsthand knowledge or observation, a key distinction between lay and expert testimony is the expert witness' ability to answer hypothetical questions. *Authentic Apparel Grp., LLC v. United States*, 134 Fed. Cl. 78, 82 (2017) (citing *United States v. Henderson*, 409 F.3d 1293, 1300 (11th Cir. 2005)).

Personal knowledge is a "prerequisite to acceptance of opinions by lay persons," so a lay "witness may testify to an event or occurrence that he has seen himself, but not one that he knows only from the description of others." *BPLW Architects & Eng'rs, Inc. v. United States*, 106 Fed.

Cl. 521, 545 (2012) (quoting *DataMill*, 91 Fed. Cl. at 734–35). This means that a "party offering [Federal Rule of Evidence 701 lay witness opinion] testimony must show that the witness had an adequate opportunity to observe and presently recalls the observation, and a person who has no knowledge of a fact except what another has told him does not satisfy the requirement of knowledge from observation." *Spectre Corp.*, 160 Fed. Cl. at 492 (alteration in original) (quoting *BPLW Architects*, 106 Fed. Cl. at 545).

Consistent with this principle, lay witnesses with "extensive personal experience" stemming from their work in the field may testify to this personal experience under Federal Rule of Evidence 701. *See Union Pac. Res. Co. v. Chesapeake Energy Corp.*, 236 F.3d 684, 693 (Fed. Cir. 2001). The mere fact that a lay witness' testimony may be technical in nature should not immediately subject it to exclusion under Federal Rule of Evidence 701. *Authentic Apparel Grp.*, 134 Fed. Cl. at 82 (quoting *Bank of China, N.Y. Branch v. NBM LLC*, 359 F.3d 171, 181 (2d Cir. 2004)) ("The fact that a witness has specialized knowledge does not necessarily preclude the witness from testifying under [Federal Rule of Evidence] 701, but the testimony must not be 'rooted exclusively in [the witness'] expertise . . . .'").

As noted by the Federal Circuit, it is an abuse of discretion for a trial court to permit a lay witness to opine on the ultimate legal issue of obviousness. *HVLPO2, LLC v. Oxygen Frog, LLC*, 949 F.3d 685, 688–89 (Fed. Cir. 2020) (noting lay witness' testimony was "directed to the conclusion of obviousness and its underlying technical questions," which "is the province of qualified experts"). Yet, the Federal Circuit has found no error where a lay witness was not "directly asked for his opinion on a disputed patent issue," but "his testimony, instead, was directed to proving" the underlying elements of a disputed patent law issue. *Ironburg Inv. Ltd. v. Valve Corp.*, 64 F.4th 1274, 1294 (Fed. Cir. 2023); *see also Alcon Inc. v. Padagis Israel Pharms. Ltd.*,

No. CV 22-1422-WCB, 2025 WL 457119, at *14 n.11 (D. Del. Feb. 5, 2025) (Bryson, J., sitting by designation) (rejecting fact witnesses' testimony regarding testing he did not personally conduct because he could only "appropriately testify as a fact witness about his own experiments, including the design and results of those experiments," whereas "any testimony directed to [the conclusions of that testing] is not appropriate subject matter for a fact witness."); *Express Mobile, Inc. v. GoDaddy.com, LLC*, 680 F. Supp. 3d 517, 530 (D. Del. 2023) (internal citations omitted) (holding that a lay witness' testimony about "how [plaintiffs'] respective products work or do not work" did not constitute expert testimony under the scope of Federal Rule of Evidence 702 "because the testimony [was] based upon the layperson's personal knowledge rather than on specialized knowledge"). Similarly, in *Meyer Intellectual Properties Ltd. v. Bodum, Inc.*, the Federal Circuit found error where the trial court excluded a lay witness' testimony about the facts underlying an obviousness defense. 690 F.3d 1354, 1377 (Fed. Cir. 2013). The Circuit noted that it was "not a situation where [defendant] sought to have a lay witness give his own opinion regarding invalidity," but rather the lay witness was permissibly going to "testify to factual matters within his personal knowledge." *Id.*

## C.     Disclosure of Expert Testimony

Rule 26(a)(2) requires disclosures related to a party's expert witnesses. *See* Rule 26(a)(2). Under this rule, an expert's report must contain "a complete statement of all opinions the [expert] will express and the basis and reasons for them." Rule 26(a)(2)(B)(i). The Rules provide for this disclosure "to allow both sides in a case to prepare their case adequately and to prevent surprise." *HVLPO2*, 949 F.3d at 690 (internal quotation omitted); *see also Meyer Intell. Props.*, 690 F.3d at 1374–75. Expert testimony at trial must be "consistent with" the expert's report, to "provide enough notice" for the opposing side. *Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 684 (Fed. Cir. 2021); *see also Thompson v. Doane Pet Care Co.*, 470 F.3d 1201, 1203 (6th Cir. 2006)

("Section 26(a)(2)(B) does not limit an expert's testimony simply to reading his report. No language in the rule would suggest such a limitation. The rule contemplates that the expert will supplement, elaborate upon, explain and subject himself to cross-examination upon his report.").

"A party must make these disclosures at the times and in the sequence that the court orders." Rule 26(a)(2)(D). Failure to comply with any of these disclosure requirements can result in sanctions. Under Rule 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by [Rule] 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Rule 37(c)(1).

### D.    Hearsay

Hearsay is "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." FED. R. EVID. 801(c). Federal Rule of Evidence 802 provides that "[h]earsay is not admissible unless . . . a federal statute; . . . these rules; or . . . other rules prescribed by the Supreme Court" provide otherwise. FED. R. EVID. 802. Certain statements, such as the statement of an opposing party or its agents are not considered hearsay. *See* FED. R. EVID. 801(d)(2); *PR Contractors, Inc. v. United States*, 69 Fed. Cl. 468, 473 (2006). Other exceptions to the rule against hearsay are included in Federal Rule of Evidence 803, such as the exception for business records under Federal Rule of Evidence 803(6). *See* FED. R. EVID. 803; *Conoco Inc. v. Dep't of Energy*, 99 F.3d 387, 391 (Fed. Cir. 1996) (discussing Federal Rule of Evidence 803(6)); *see also id.* at 392–93 (discussing additional hearsay exceptions).

### III.    Plaintiff's Motions in Limine

Plaintiff filed the following 11 motions in limine:

1. To preclude Desert's Edge Materials;

2. To exclude the testimony of Dr. Rohan Loveland;

3. To exclude Equinox materials;

4. To preclude Defendants' expert Dr. Villasenor from testifying regarding the Elbit ENVG-B or DRS ENVG-III systems;

5. To exclude testimony related to purported soldier feedback or anecdotes concerning operation of the ENVG systems;

6. To exclude the testimony of Mr. Eric Miller (*see* Miller Exclusion Order (ECF No. 475));

7. To preclude testimony based on source code not made available to SAIC for inspection;

8. To exclude the declaration of Mr. Jason Coffman;

9. To preclude Mr. Jason Coffman from testifying as to his Declaration or source code that was not made available to SAIC for inspection;

10. To preclude Defendants from demonstrating the Accused Systems; and

11. To preclude misrepresentations about non-SERVAL inventor code.

Pl. Mot. at 3, 5, 7, 9–13, 15, 16.  The Court granted Plaintiff's MIL No. 6 regarding Mr. Eric Miller.

Miller Exclusion Order; *see also generally* Miller Exclusion Tr.  The other 10 Motions in Limine

remain pending.

As noted in the summary of rulings, having considered the parties' arguments, applicable

law, and the record, this Court **DENIES**:

1. Plaintiff's MIL No. 1 in part without prejudice and in part with prejudice;
2. Plaintiff's MIL No. 2 without prejudice;
3. Plaintiff's MIL No. 3 without prejudice;
4. Plaintiff's MIL No. 4 as moot;
5. Plaintiff's MIL No. 5 without prejudice;

6.   Plaintiff's MIL No. 7 as moot;
7.   Plaintiff's MIL No. 8 as moot;
8.   Plaintiff's MIL No. 9 without prejudice;
9.   Plaintiff's MIL No. 10 with prejudice; and
10.  Plaintiff's MIL No. 11 without prejudice.

## A.    Plaintiff's MIL No. 1: To Preclude Desert's Edge Materials.

The Court denies Plaintiff's MIL No. 1 in part without prejudice and in part with prejudice. Plaintiff argues that the Court should exclude Defendants' Desert's Edge materials pursuant to Federal Rules of Evidence 402 and 403, because the materials "are not relevant to any claim or defense to be raised at trial," and even if they were, "any probative value is outweighed by the risks of unfair prejudice to SAIC, confusing the issues, misleading the factfinder, and wasting time." Pl. Mot. at 3–5. While the parties stipulated that "they would not argue that Desert's Edge qualified as prior art," Plaintiff anticipates Defendants will exceed this limitation at trial. *Id.* at 3 (noting that Defendants referenced Desert's Edge in their opening contentions of fact and law and included materials related to Desert's Edge on their pretrial exhibit list); *see* Joint Notice and Stipulation in Response to the Court's June 23, 2023 Order (ECF No. 398) (Desert's Edge Stipulation).

Specifically, Plaintiff contends that, consistent with the parties' stipulation, the Desert's Edge materials, as non-prior art, may not be used to support an invalidity claim, and may only be used as a reference in support of an obviousness claim to demonstrate general knowledge in the art around the time of an invention. Pl. Mot. at 3. It further asserts that Defendants may only use these materials subject to a "narrow exception," where the reference may "have qualified as prior art but for the fact that [it was] published or made publicly available *slightly* too late in time to qualify as actual prior art." *Id.* (citing *Jamison v. Olin Corp.*, No. 03–1036–KI, 2005 WL 7213836, at *30 (D. Or. Oct. 4, 2005)) (emphasis in original); *see also Ashland Oil, Inc. v. Delta Resins &*

*Refractories Inc.*, 776 F.2d 281, 303 n.38 (Fed. Cir. 1985).  Plaintiff also argues that "Defendants cannot show that Desert's Edge was created by or reflects the knowledge of individuals possessing 'slightly less' than that of an ordinarily skilled artisan."[5]

In response, Defendants characterize Plaintiff's MIL No. 1 as an attempt to expand the scope of the parties' Desert's Edge Stipulation.  Def. Resp. at 5.  Defendants argue that the stipulation does not prohibit Defendants from presenting any Desert's Edge materials at trial.  *Id.*  Defendants next cite to precedent that "[n]on-prior art references can be relevant to obviousness analyses because they evidence the understanding of the person of ordinary skill, which is one of the four predicate facts of obviousness."  *Id.* at 5–6 (first citing *Graham v. John Deere Co.*, 383 U.S. 1, 17–18 (1966); then citing *Nat'l Steel Car, Ltd. v. Canadian Pac. Ry., Ltd.*, 357 F.3d 1319, 1338 (Fed. Cir. 2004); and then citing *Thomas & Betts Corp. v. Litton Sys., Inc.*, 720 F.2d 1572, 1580–81 (Fed. Cir. 1983)).  Defendants explain that while they intend to use the Desert's Edge materials as evidence of the "state of the art and the understandings of persons of skill in the art prior to, or around, the time of the alleged invention of the '230 Patent, including through the testimony of Dr. Loveland," they will not argue that those materials are prior art.  *Id.* at 6.

As an initial matter, while the Court finds that Defendants' planned use of the Desert's Edge materials does not run afoul of the parties' stipulation, it advises the parties that it will hold both parties to the terms of their stipulations and to representations advanced in their briefing.  In

---

[5] Plaintiff argues that Defendants cannot prove that Desert's Edge was "created by or reflects the knowledge of individuals possessing 'slightly less' than that of an ordinarily skilled artisan" because Desert's Edge was a "joint creation" by Dr. Rohan Loveland *and* his father, Mr. Radon Loveland—the latter of whom had extensive experience as a physicist.  Pl. Mot. at 4–5.  Defendants counter that Plaintiff's argument "misses the mark" because "[t]he issue is not who invented Desert's Edge, but rather what Dr. Loveland understood to be a problem in the art as of 1993 and how he, a person with 'slightly less' knowledge than that of a skilled artisan, would have addressed it."  Def. Resp. at 6.  Further, Defendants state that Mr. Loveland's role in developing Desert's Edge was "more limited."  *Id.*

the Desert's Edge Stipulation, the parties agreed that "the Desert's Edge references . . . will not be argued to qualify as prior art under 35 U.S.C. [§] 102 . . . and the references will not be relied upon as anticipatory or as part of an obviousness combination of references."  Desert's Edge Stipulation at 1–2.  The stipulation continued that "no party waives any right it may have to brief and present argument at a later time regarding whether any Desert's Edge reference may be used for other purposes."  *Id.* at 2.  This stipulation is consistent with the parties' discussion during oral argument on the parties' motions for summary judgment.  *See* Transcript, dated June 22, 2023 (ECF No. 400) at 223:11–230:22; *see also id.* at 228:1–6 ("And so that's why we were so careful about the stipulation. . . . [L]et's make it clear that we are still going to want to have the opportunity to have the witness, the inventor talk to Your Honor about what he was thinking and what he was going through at the time.").  Accordingly, Defendants' planned use of the Desert's Edge materials as described in their Response is consistent with the parties' stipulation.  Should Defendants run afoul of the stipulation during trial, Plaintiff may renew its objection accordingly.

The Court also denies with prejudice Plaintiff's MIL No. 1 as it relates to Defendants' use of the Desert's Edge materials to show obviousness.  Federal Circuit precedent permits Defendants' use of the Desert's Edge materials for this purpose.  *National Steel Car* undercuts Plaintiff's arguments (1) regarding the timing of the public availability of the Desert's Edge materials and (2) that Defendants cannot use the Desert's Edge materials to show "the knowledge of individuals possessing 'slightly less' than that of an ordinarily skilled artisan."  Pl. Mot. at 3–4.

*First*, regarding timing, Plaintiff seeks to limit Defendants' use of the Desert's Edge materials to show skill in the art at the time of invention because Defendants did not establish when the Desert's Edge materials were made public.  *Id.* at 4.  Plaintiff points to the fact that Defendants designated the Desert's Edge materials "Highly Confidential" in this litigation as

recently as 2018. *Id.* However, the date of publication and whether the materials were designated confidential in this litigation are of little relevance here. Rather, as *National Steel Car* notes, "[t]he question at hand is not whether others learned of [the reference]," but "whether [the reference] demonstrates that others in [the inventor's] position (or a more experienced position) would have considered it obvious to combine the elements." 357 F.3d at 1338.

Plaintiff's reliance on *Jamison*, a non-binding report and recommendation of a special master in the United States District Court for the District of Oregon, is not well considered. 2005 WL 7213836, at *30. The special master in *Jamison* was concerned "that it would be extremely difficult—perhaps impossible—to get the jury to understand the subtle difference between using the teachings of a reference to assess obviousness and using the reference only as an indicator of the level of skill." 2005 WL 7213836, at *30. Accordingly, the special master excluded the evidence in question on Federal Rule of Evidence 403 grounds. *Id.* ("The potential for confusion on the part of the jury greatly outweighs the possible relevance of the references."). That is of lesser concern in this bench trial. *See also Seaboard Lumber*, 308 F.3d at 1302 (noting that "concerns [about Federal Rule of Evidence 403] are of lesser import in a bench trial").

Further, *Jamison*, decided six months after *National Steel Car*, failed to reference *National Steel Car*. *Jamison*, 2005 WL 7213836. Instead, the special master concluded that non-prior art evidence is "[u]sually" evidence that is not prior art because it was invented or made public slightly too late to qualify. *Id.* That conclusion is undercut by the Federal Circuit's decision in *National Steel Car*, which instructs lower courts that the issue is not when or whether the reference was disclosed, but whether that reference—prior art or non-prior art—demonstrates what was known in the art at the time. 357 F.3d at 1338.

*Second*, regarding whether a reference can demonstrate the knowledge of someone with slightly less than ordinary skill in the art, *National Steel Car* is again dispositive of Plaintiff's position.  In *National Steel Car*, the Federal Circuit found clear error where the district court had rejected a reference because it was invented by someone who lacked ordinary skill in the art.  357 F.3d at 1338 (finding that an inventor who lacked requisite skill in the art had knowledge relevant "to determining the knowledge of one of ordinary skill of the art even if [the inventor's] qualifications fell short of the background required of one of ordinary skill").  Similarly, here, Defendants seek to use the testimony of Dr. Loveland, who lacked the requisite skill in the art when he worked on the Desert's Edge project, to illustrate what was known in the art.  Indeed, "[s]omething that has already been rendered obvious to a relative newcomer in a field is probative of what would be obvious to someone who has been around for a longer period of time."  *Id.*

Defendants clarify that they will "show that Desert's Edge and multiple other references evidence the state of the art" at the time of the '230 Patent's invention.  Def. Resp. at 6.  Federal Circuit precedent permits Defendants to use the Desert's Edge materials to present this evidence.  *Nat'l Steel Car*, 357 F.3d at 1338.  Thus, this portion of Plaintiff's MIL No. 1 is denied with prejudice.  However, the Court notes that Defendants may not introduce the Desert's Edge materials as prior art in violation of the Desert's Edge Stipulation and Defendants' representations advanced in their briefing.  Should Defendants attempt to use the Desert's Edge materials in this manner, Plaintiff may renew its objection.

Plaintiff's Federal Rules of Evidence 402 and 403 arguments also fail because Defendants' proposed use of the Desert's Edge materials do not run afoul of the parties' Desert's Edge Stipulation and because Defendants may use the materials to illustrate what was known in the art at the time of invention.  Given the low threshold for relevancy determinations, the Court declines

to exclude the evidence at this stage, without the benefit of context at trial. Plaintiff does not present enough evidence at this stage to demonstrate that admitting the Desert's Edge materials will be substantially more prejudicial than probative, especially in a bench trial setting. *See* FED. R. EVID. 402 & 403; *Spectre Corp.*, 160 Fed. Cl. at 495 (quoting *City of Wilmington*, 152 Fed. Cl. at 377).

### B.      Plaintiff's MIL No. 2: To Exclude the Testimony of Dr. Rohan Loveland.

The Court denies Plaintiff's MIL No. 2 without prejudice to renew at trial. Plaintiff requests, consistent with Plaintiff's MIL No. 1, that the Court exclude Dr. Loveland's testimony regarding Desert's Edge pursuant to Federal Rules of Evidence 402 and 403. Pl. Mot. at 5–7. Plaintiff objects to Dr. Loveland testifying (i) as an expert, (ii) to what was known in the art, and (iii) based on privileged information. *Id.* at 5–6. Defendants respond that Dr. Loveland's testimony "will be sufficiently grounded in his own knowledge" and that he will not testify as an expert witness or concerning privileged information. Def. Resp. at 7–8. They further contend that Dr. Loveland's testimony is probative of obviousness and that any concerns of prejudice or confusion are unwarranted in a bench trial. *Id.* at 7. To be clear, Dr. Loveland may not provide expert opinions or rely on privileged information; however, he will be permitted to testify as to what was known in the art, so long as such testimony is consistent with Federal Circuit precedent. Accordingly, Plaintiff's MIL No. 2 is denied without prejudice to renew at trial.

#### 1.      Dr. Loveland May Not Offer Expert Opinions.

The parties agree that Dr. Loveland was not proffered as an expert. *See* Pl. Mot. at 6; Def. Resp. at 7; *see also* Rule 26. They disagree, however, as to whether Dr. Loveland's testimony will, at trial, constitute expert testimony. Plaintiff anticipates Dr. Loveland's testimony veering into the domain of expert testimony. Pl. Resp. at 5–7. Defendants "do not anticipate Dr. Loveland providing extensive expert testimony" nor do they anticipate "asking Dr. Loveland to give general

expert opinions." Def. Resp. at 7–8. Specifically, Defendants explain that Dr. Loveland will be asked about, "research in which he participated and the problems he addressed." *Id.* at 8. The Court understands these representations to clarify that Dr. Loveland will testify only to facts based on his personal knowledge under Federal Rule of Evidence 701 and not as to anything left to the province of expert testimony.[6]  Consistent with Rule 26, Federal Rule of Evidence 702, and Defendants' statements, Dr. Loveland will not be permitted to offer any expert opinions at trial. To the extent Dr. Loveland testifies at trial contrary to Defendants' representations, exceeding the scope of his personal knowledge and crossing the line into expert testimony, Plaintiff may renew its objection at that time.

### 2.  Dr. Loveland May Testify as to The State of The Art at The Time of Invention.

Plaintiff contends that Dr. Loveland should not be able to testify as "a non-prior art developer or user . . . to show the general level of skill in the art." Pl. Mot. at 5–6. Plaintiff is correct that technical testimony from a lay witness, even if grounded in their personal knowledge, would be improper if "directed to the conclusion of obviousness and its underlying technical questions," which "is the province of qualified experts." *HVLPO2*, 949 F.3d at 689. Dr. Loveland's lay testimony, however, is admissible under Federal Circuit precedent so long as he

---

[6] The Federal Circuit has explained that, regarding invalidity, a fact witness "may not testify as an expert as to anticipation, or any of the underlying questions, such as the nature of the claimed invention, what a prior art references discloses, or whether the asserted claims read on the prior art reference." *Sundance, Inc. v. DeMonte Fabricating, Ltd.*, 550 F.3d 1356, 1364 (Fed. Cir. 2008) (citing *Acoustical Design, Inc. v. Control Elecs. Co.*, 932 F.2d 939, 942 (Fed. Cir. 1991)).  Nor may a fact witness offer expert testimony on "the underlying technical questions, such as the nature of the claimed invention, the scope and content of prior art, the differences between the claimed invention and the prior art, or the motivation of one of ordinary skill in the art to combine these references to achieve the claimed invention." *Id.* (citing *Medtronic Inc. v. Intermedics, Inc.*, 799 F.2d 734, 741 (Fed. Cir. 1986)).

only "testif[ies] to factual matters within his personal knowledge" and he is not "directly asked for his opinion on a disputed patent issue." *Meyer*, 690 F.3d at 1377; *Ironburg*, 64 F.4th at 1294.

Expert testimony is often presented to establish obviousness. *See, e.g.*, *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1240 n.5 (Fed. Cir. 2010) (noting that "expert testimony may be critical, for example, to establish the existence of certain features in the prior art") (internal citations omitted); *Gen. Elec. Co. v. Nintendo Co., Ltd.*, 179 F.3d 1350, 1363 (Fed. Cir. 1999) (finding genuine issues of material fact on question of obviousness where each party presented expert testimony as to what was known in the art); *Motorola, Inc. v. Interdigital Tech. Corp.*, 121 F.3d 1461, 1472 (Fed. Cir. 1997) (upholding jury finding of suggestion to combine prior art references based on expert testimony). Expert testimony, however, is not required to show obviousness. *See Sundance*, 550 F.3d at 1365 (finding that because the technology was simple, an expert witness was not needed to support a holding of obviousness). Even where, as here, the underlying technology at issue is more complex, the Federal Circuit has not endorsed a per se rule requiring expert testimony. *See Centricut, LLC v. Esab Grp., Inc.*, 390 F.3d 1361, 1370 (Fed. Cir. 2004). Therefore, in some instances, a lay witness may provide technical testimony about the facts constituting obviousness so long as the testimony is entirely derived from his personal knowledge and the witness does not testify as to the actual conclusion of obviousness.

When it comes to lay witnesses testifying about underlying facts constituting obviousness, the issue is one of weight, not admissibility. In *Rothman v. Target Corp.*, the Federal Circuit upheld a jury verdict over an objection that two fact witnesses who were not persons having ordinary skill in the art had testified regarding their own reaction to the invention. 556 F.3d 1310, 1318–19 (Fed. Cir. 2009). The Circuit held that "assuming [the witnesses] were in fact ordinarily skilled [in the art], the jury would have been free to credit (or discredit) their testimony, and weigh it

accordingly." *Id*; *see also Medtronic, Inc. v. Boston Scientific Corp.*, No. 99–1035, 2002 WL 34447587, at *37 (D. Minn. Aug. 8, 2022) (permitting prior art publication authors to "testify as fact witnesses to those things as to which they have first-hand knowledge" as part of an obviousness defense, but noting "[w]hether that testimony . . . can withstand a Rule 50 motion is an inquiry for another day.").

Nor are Plaintiff's objections based on Federal Rules of Evidence 402 and 403 availing at this time as the Court lacks the full context of trial. *See PR Contractors*, 69 Fed. Cl. at 469–70 (quoting *Jonasson*, 115 F.3d at 440). As discussed above, in this non-jury trial there is less concern about prejudice or confusion by the Court "to understand the subtle difference between using the teachings of a reference to assess obviousness and using the reference only as an indicator of the level of skill." *Supra* § III.A (quoting *Jamison*, 2005 WL 7213836, at *30); *see also Spectre Corp.*, 160 Fed. Cl. at 495 (quoting *City of Wilmington*, 152 Fed. Cl. at 377).

### 3.    Dr. Loveland May Not Testify Based on Privileged Information.

The Court is also not swayed by Plaintiff's speculation that Dr. Loveland's testimony will be based on privileged information. *See* Pl. Mot. at 6–7; Def. Resp. at 8. Defendants represent that Dr. Loveland's testimony will not relate to privileged matters, including whether he is an inventor or conceived of certain technology. Def. Resp. at 8. Rather, Defendants state that he will testify only as to his own experience developing similar technology. *Id.* The Court will hold both parties to their representations and will not permit Dr. Loveland to testify about privileged matters. Should Dr. Loveland begin testifying about such issues, Plaintiff is welcome to renew its objection.

### C.    Plaintiff's MIL No. 3: To Exclude Equinox Materials.

Plaintiff's MIL No. 3 is denied without prejudice to renew at trial. Plaintiff seeks exclusion of the Equinox materials and the related testimony of Dr. Lawrence Wolff. Pl. Mot. at 7–9. In response, Defendants argue that Plaintiff's MIL No. 3 essentially amounts to an improper request

"for a summary judgment that the Equinox system is not prior art under 35 U.S.C. § 102(b) as an invalidating offer for sale or § 102(g)(2) as a prior invention."  Def. Resp. at 8.

### 1.    Exclusion of The Equinox Materials is Not Warranted.

Plaintiff asks the Court to exclude all materials related to the Equinox SBIR systems pursuant to Federal Rules of Evidence 402 and 403 because, contrary to Defendants' claims, the Equinox system allegedly does not qualify as prior art under 35 U.S.C. §§ 102(b) or 102(g).  Pl. Mot. at 7–9.  Plaintiff further contends that Defendants cannot prove that "Equinox conceived of any relevant concept before SAIC," including the two-domain alignment approach included in SAIC's patent filings on February 28, 2007.  *Id.* at 8.  Plaintiff argues that Defendants should not be able to fill in these "critical gaps" in Defendants' case with the Equinox materials and Dr. Wolff's uncorroborated testimony.  *Id.* at 8–9 (footnote omitted).  Defendants respond that "[t]he evidence at trial will show that Equinox both conceived and offered for sale the alleged invention described by the claims of the '230 Patent before the critical date."  *Id.*  Further, Defendants contend that Plaintiff argues for the first time "that the '230 Patent claims more than a so-called 'basic pipelined two-domain alignment approach'" to differentiate its claims from those of the Equinox system.  *Id.* at 9.  Defendants contend the Asserted Claims do not support this argument and that, regardless, Plaintiff is "incorrect that there is no evidence of Equinox conceiving of a prior art system designed to address the inherent inaccuracies of aligning images based on IMU data."  *Id.*

The Court agrees with Defendants that this is "plainly a matter that [the] Court must decide after hearing the relevant evidence at trial and is therefore inappropriate for a motion in limine."  Def. Resp. at 8.  Plaintiff's request to exclude all Equinox materials as non-prior art is so sweeping that it risks converting this motion in limine into one for summary judgment.  *See Meyer Intell. Props.*, 690 F.3d at 1378 (explaining that where "the court did not allow for full development of

the evidence and deprived [Defendant] of an opportunity to present all pertinent material to defend against the dismissal," the court "essentially converted [Plaintiff's] motion in limine into a motion for summary judgment"). Despite Plaintiff's assertions that Defendants "cannot" or "failed" to show evidence supporting the admissibility of the Equinox materials, Defendants list various exhibits that they claim support their position on Equinox. *Compare* Pl. Mot. at 8–9, *with* Def. Resp. at 8–10. It is well-established that weighing the sufficiency of the evidence is not appropriate for a motion in limine. *See Meyer Intell. Props.*, 690 F.3d at 1378 (citing *Mid-America Tablewares, Inc. v. Mogi Trading Co.*, 100 F.3d 1353, 1362 (7th Cir. 1996)) ("[A] motion in limine is not the appropriate vehicle for weighing the sufficiency of the evidence."). Accordingly, the Court denies Plaintiff's MIL No. 3 on this ground with leave to renew at trial.

> **2.    Plaintiff's Request to Exclude Dr. Wolff's Testimony Fails at this Stage.**

Plaintiff requests that this Court preclude Dr. Wolff "from testifying about systems he admits Equinox did not make" and further preclude him from offering expert or lay opinion "under Federal Rules of Evidence 402, 403, 701 and 702 and/or pursuant to Rules 26(a) and 37(c)." Pl. Mot. at 9. Defendants ask the Court to reject Plaintiff's attempts to limit Dr. Wolff's testimony because they assert that Dr. Wolff, as a person of skill in the art, is qualified to testify on his understanding of what was known in the art at the time of Plaintiff's invention. Def. Resp. at 10.

Plaintiff's request to exclude Dr. Wolff's testimony fails at this stage. Plaintiff speculates as to what Dr. Wolff may testify. *See* Pl. Mot. at 8–9 (arguing Dr. Wolff's testimony may be "uncorroborated" or constitute improper lay or expert opinion). The Court will not wholly exclude testimony based on speculation without the benefit of context at trial. *See PR Contractors*, 69 Fed. Cl. at 469–70 (quoting *Jonasson*, 115 F.3d at 440). Moreover, there is less of a concern of confusion of prejudice at the bench trial. *See City of Wilmington*, 152 Fed. Cl. at 377. This Court, however, will not permit a lay witness to provide an ultimate opinion on obviousness or any other

substantive patent law issue.  *See HVLPO2*, 949 F.3d at 689; *see also supra* § III.B.2.  Dr. Wolff, like Dr. Loveland, may only "testify to factual matters within his personal knowledge." *Meyer Intell. Props.*, 690 F.3d at 1377; *see also Ironburg Inv.*, 64 F.4th at 1294 (permitting lay testimony directed towards underlying factual elements of a patent law issue but not towards the ultimate conclusion).

The Court agrees with Defendants' assertion that "Dr. Wolff, as a person of skill in the art, is more than competent to testify as to his own understanding of what was known in the art at the time of SAIC's alleged invention" for the same reasons discussed above regarding Dr. Loveland. Def. Resp. at 10; *see supra* § III.B.2.  The mere fact that a lay witness' testimony may be technical in nature does not immediately subject it to exclusion under Federal Rule of Evidence 701. *Authentic Apparel Grp.*, 134 Fed. Cl. at 82 (quoting *Bank of China*, 359 F.3d at 181) ("The fact that a witness has specialized knowledge does not necessarily preclude the witness from testifying under [Federal Rule of Evidence] 701, but the testimony must not be 'rooted exclusively in [the witness'] expertise . . . .'").  As long as the testimony is still based on the witness' personal knowledge or perception, "a lay witness may, 'under certain circumstances[,] express an opinion even on matters appropriate for expert testimony.'" *DataMill, Inc.*, 91 Fed. Cl. at 736 (quoting *Soden v. Freightliner Corp.*, 714 F.2d 498, 511 (5th Cir. 1983)).

Finally, Plaintiff's Motion anticipates that Defendants will introduce untimely evidence. Pl. Mot at 9 & n.3.  The Court will not permit testimony—by Dr. Wolff or any other witness party—that is based on untimely or undisclosed evidence.  As the parties engaged in vigorous and lengthy discovery in this case, there is simply no excuse for unproduced evidence as such belated disclosures at this stage would be prejudicial.  *See, e.g.*, Summary Judgment Opinion at 20–27 (noting that "[t]he parties have engaged in vigorous discovery practice throughout this litigation"

and describing some of the extensions to discovery); Miller Exclusion Tr. at 14:14–19 ("The Government's belated disclosure . . . nearly seven years into this case, . . . and well past both the close of all discovery and the filing of summary judgment motions, clearly prejudices Plaintiff both substantively and mechanically.").

Accordingly, Plaintiff's MIL No. 3 is denied without prejudice to renew at trial. Dr. Wolff may testify to facts of which he has first-hand knowledge, but he may not base his testimony on anything other than his personal knowledge, nor may he opine on the ultimate question of obviousness.

### D. Plaintiff's MIL No. 4: To Preclude Defendants' Expert Dr. Villasenor from Testifying Regarding the Elbit ENVG-B or DRS ENVG-III Systems.

Plaintiff's MIL No. 4 is denied as moot without prejudice to renew at trial. Plaintiff requests that the Court preclude Dr. Villasenor from testifying on infringement of the Elbit ENVG-B or DRS ENVG-III systems pursuant to Rule 26(a)(2) because (i) he did not include any analysis or opinions in his expert report on the topics and (ii) he did not review the RTA source code for both systems. Pl. Mot. at 9. Defendants agree that expert witnesses are limited to testifying to the opinions contained in their reports. Def. Resp. at 10. As such, Defendants state that they do "not intend to ask Dr. Villasenor to provide any analysis or opinions specific to SAIC's allegations of infringement for the Elbit ENVG-B or the DRS ENVG-III systems." *Id.* Defendants note, however, that some of Dr. Villasenor's noninfringement opinions apply to all accused products, and accordingly urge the Court not to preclude Dr. Villasenor from testifying as to such topics as they relate to the L3/BAE systems. *Id.*

This motion in limine is moot because Defendants have represented that Dr. Villasenor's testimony will be limited to the scope of his expert report. Def. Resp. at 10. Rule 26 requires proper disclosures "to allow both sides in a case to prepare their case adequately and to prevent

surprise." *HVLPO2*, 949 F.3d at 690 (internal quotation omitted).  Expert testimony at trial must

be "consistent with" the expert's report, so as to "provide enough notice" for the opposing side to

prepare its case.  *Bayer Healthcare*, 989 F.3d at 684; *Omega Patents, LLC v. CalAmp Corp.*, 13

F.4th 1361, 1370 (Fed. Cir. 2021) (internal citations omitted).

The Court will not permit Dr. Villasenor—or any other expert—to testify beyond the scope

of their expert reports.  *See* Rule 37(c)(1) (excluding expert testimony not properly disclosed under

Rule 26).  The Court will permit Dr. Villasenor to testify to noninfringement positions that

Defendants argue "apply with equal force to all accused products" so long as Dr. Villasenor's

report provided proper notice to Plaintiff that the specific opinions applied broadly.  Should Dr.

Villasenor's testimony go beyond the scope of his report, Plaintiff may raise this objection, and

Defendants should be prepared to provide specific citations from Dr. Villasenor's report to rebut

the objection.

### E.    Plaintiff's MIL No. 5: To Exclude Testimony Related to Purported Soldier Feedback or Anecdotes Concerning Operation of the ENVG Systems.

Plaintiff's MIL No. 5 is denied without prejudice to renew at trial.  Plaintiff argues that

pursuant to Federal Rules of Evidence 801, 802, and 805, the Court should exclude any testimony

from Defendants' fact witnesses or third-party Government contractors that "repeat hearsay

comments or feedback from soldiers purportedly regarding the soldiers' opinions of the spatially

aligned RTA mode of operation in the accused ENVG systems."  Pl. Mot. at 10–11 (internal

citations omitted).  Plaintiff argues that such testimony is hearsay because it is offered for truth of

the matter asserted and is not subject to any hearsay exceptions.  *Id.*

Defendants argue that Plaintiff's "requested wholesale preclusion" based on hearsay is both

premature and improper.  Def. Resp. at 11.  Defendants argue that hearsay rulings require "fact-

intensive analysis," so the Court should make such rulings within the context of questioning at

trial.  *Id.*  Unlike the cases cited by Plaintiff, Defendants contend that the Court lacks the benefit of context at trial, including, "what precisely the testimony from these witnesses will be at trial," whether their testimony "constitute[s] hearsay[,] and if so, what exception applies."  *Id.* at 13. Defendants also explain that they expect the testimony in question to either (1) not be hearsay— for example, if it is not offered for the truth of the matter asserted—or to (2) qualify under a hearsay exception.  *Id.* at 11–12.

Plaintiff's MIL No. 5 is denied without prejudice.  The Court will not institute a blanket ban on such anticipated testimony without the full context of trial; the statements themselves and the way in which they are presented at trial matter in determining whether they are subject to the hearsay rule.  *See PR Contractors*, 69 Fed. Cl. at 469–70 (quoting *Jonasson v. Lutheran Child & Fam. Servs.*, 115 F.3d 436, 440 (7th Cir. 1997)) (alternations in original) ("Thus, while '[t]he prudent use of the in limine motion sharpens the focus of later trial proceedings and permits the parties to focus their preparation on those matters that will be considered. . . . [s]ome evidentiary submissions [ ] cannot be evaluated accurately or sufficiently by the trial judge in such a procedural environment.'").  Ruling on hearsay objections requires the full context in which the testimony is offered to determine whether the statements are offered for the truth asserted and whether a hearsay exception applies.  If Plaintiff believes the elicited testimony at trial constitutes hearsay, then it may raise such an objection at trial.

**F.      Plaintiff MIL No. 6: To Exclude the Testimony of Mr. Eric Miller.**

On August 1, 2024, the Court granted Plaintiff's MIL No. 6 regarding Mr. Eric Miller. Miller Exclusion Order; *see also generally* Miller Exclusion Tr.

**G.      Plaintiff's MIL No. 7: To Preclude Testimony Based on Source Code Not Made Available to SAIC for Inspection.**

Plaintiff's MIL No. 7 is denied as moot.  Plaintiff seeks exclusion of testimony that "relies on or describes the Accused Systems' source code" that (1) was "not made available to SAIC during fact discovery in this litigation," or (2) is "based on access by Defendants to source code inspection machines after the close of fact discovery."  Pl. Mot. at 12.  In response, Defendants dispute Plaintiff's arguments on two grounds.  First, Defendants state that the evidence and testimony they intend to present at trial is limited solely to source code material that was made available to Plaintiff during discovery.  Def. Resp. at 14.  Second, Defendants construe Plaintiff's request to exclude facts and testimony that rely on Defendants' post-discovery access to the source code as an improper attempt to limit its ability to continue reviewing "its own previously produced confidential information, or confidential information produced by another party, or a non-party, after the close of fact discovery."  *Id.*  Defendants argue that this is contrary to the Protective Order. *Id.* (quoting Protective Order (ECF No. 34) ¶ 11).

Plaintiff's MIL No. 7 is moot because Defendants clarify that they will not present any evidence that relies on or describes "source code material that was not made available to SAIC *during* discovery."  Def. Resp. at 14 (emphasis added).  As with Defendants' other representations, the Court will hold Defendants to this representation.  Even absent Defendants' representation, the Court would not permit either party to use unproduced or late-produced source code, as to do so at this late stage, after years of discovery, would be prejudicial.  *See supra* § III.C.2.  Of course, should Defendants deviate from its representations to this Court at trial, the Plaintiff may renew its objection.

To the extent Plaintiff seeks, as Defendants claim it does, to exclude timely produced evidence that Defendants continued reviewing after discovery, the Motion is denied.  Def. Resp.

at 14.  A request to exclude a party from continuing to review timely produced documents defies common sense and the Protective Order in this case.  Protective Order ¶ 11.  Indeed, parties will continue to refine their legal theories throughout litigation.  *Canpro Invs. LTD. v. United States,* 148 Fed. Cl. 83, 93 (2020) ("No claim will remain perfectly static during extended litigation; plaintiffs will inevitably refine their legal theories and expand the factual record.").  Moreover, as Defendants note, Plaintiff relies solely on vague references to Rule 37 and Federal Rules of Evidence 402 and 403 to support its position.  Def. Resp. at 14.  Accordingly, if Defendants are correct that Plaintiff seeks to prevent Defendants from reviewing its own timely-produced source code (which seems to be an incorrect reading of Plaintiff's argument), Plaintiff's MIL No. 7 would be denied.

### H.    Plaintiff's MIL No. 8: To Exclude the Declaration of Mr. Jason Coffman.

Plaintiff's MIL No. 8 is denied as moot.  Plaintiff seeks to exclude Jason Coffman's Declaration, which was attached to L3's Motion for Summary Judgment of Non-Infringement (ECF No. 344).[7]  Pl. Mot. at 13.  *First*, Plaintiff contends that the Declaration is inadmissible hearsay without any applicable exceptions.  *Id.* at 13–14.  *Second*, Plaintiff renews its arguments from MIL No. 7, stating that "the Declaration should be excluded to the extent it is based on source code not made available to SAIC."  *Id.*  *Third*, Plaintiff argues that to the extent the Declaration is construed as lay opinion on the ENVG-B system, it should be excluded because "it was not served in the time for fact discovery" and its prejudicial nature.  *Id.*  *Fourth*, to the extent the Declaration is construed as expert opinion, Plaintiff argues the Declaration should be excluded pursuant to

---

[7] The Declaration "describe[s] the technical processing constraints and operation of the accused ENVG-B system when paired with the FWS-I thermal weapon sight and operating in RTA spatially aligned mode."  Pl. Mot. at 13.

Rule 26 as untimely and pursuant to Federal Rule of Evidence 702 as improper expert opinion. *Id.* at 14–15.

Defendants note that the Court "has already considered this Declaration and has further rejected SAIC's attempts to have it excluded from evidence." Def. Resp. at 14 (citing Summary Judgment Opinion at 55–56). Additionally, Defendants represent that they do not plan to introduce the Coffman Declaration at trial because they will instead be calling Mr. Coffman as a witness. *Id.* at 14–15. As Defendants do not intend to introduce the declaration into evidence at trial, Plaintiff's MIL No. 8 is denied as moot. Should Defendants deviate from this representation and seek to introduce the Coffman Declaration at trial, Plaintiff may renew its objection.

I.    **Plaintiff's MIL No. 9: To Preclude Mr. Jason Coffman from Testifying as to His Declaration or Source Code That Was Not Made Available to SAIC for Inspection.**

Plaintiff's MIL No. 9 is denied without prejudice to renew at trial. Plaintiff seeks to exclude part of Mr. Coffman's live testimony on hearsay grounds to the extent that Mr. Coffman testifies regarding his Declaration, which was the subject of Plaintiff's MIL No. 8. Pl. Mot. at 15. Plaintiff also seeks to exclude any opinion testimony by Mr. Coffman related to how Defendants' source code works or whether the Accused Systems infringe on Plaintiff's patent, pursuant to both Federal Rules of Evidence 701 and 702, as an improper expert opinion, and to Federal Rules of Evidence 402 and 403. *Id.* at 15–16.

Defendants argue that Plaintiff's motion is improper and moot. *First*, Defendants explain that Mr. Coffman will testify as a fact witness based on his firsthand knowledge. Def. Resp. at 15. Defendants acknowledge that elements of his testimony may be "technical in nature," but note that Plaintiff's own fact witnesses, such as the inventors of the '230 Patent, also plan testify as fact witnesses on similarly technical topics. *Id. Second*, Defendants reiterate that they will not rely on the Coffman Declaration as a trial exhibit and further state that Mr. Coffman will not testify "on

source code analysis or comparing the operation of the accused ENVG-B to the claims of the '230 Patent." *Id.* at 15–16.

Plaintiff's MIL No. 9 is denied without prejudice. *First*, Defendants represent that Mr. Coffman will be testifying live as a fact witness based on his personal knowledge, not based on the declaration. Def. Resp. at 15. Again, the Court will hold Defendants to their assertion that Mr. Coffman will only testify "as a fact witness, based on his firsthand knowledge." Def. Resp. at 15. As discussed above regarding Drs. Loveland and Wolff, the Court will not permit Mr. Coffman to testify beyond his own personal knowledge or beyond the limits of Federal Rule of Evidence 701. *See supra* §§ III.B, III.C.2. Mr. Coffman's testimony may be permitted so long as his testimony is based on his personal knowledge or perception. *See Meyer Intell. Props.*, 690 F.3d at 1377; *DataMill, Inc.*, 91 Fed. Cl. at 736.

Additionally, without the full and beneficial context of trial, the Court will not, at this stage, exclude Mr. Coffman's testimony on Federal Rules of Evidence 402 or 403 grounds, particularly in light of the low threshold for relevancy and the lower risk of prejudice in a bench trial. *See Daubert*, 509 U.S. at 587; *Spectre Corp.*, 160 Fed. Cl. at 495 (quoting *City of Wilmington*, 152 Fed. Cl. at 377). A ruling on hearsay would be premature at this juncture as well because such a ruling requires the Court to engage in a fact-specific analysis. *See PR Contractors*, 69 Fed. Cl. at 469–70. This Court declines to conduct such an analysis in the abstract. Plaintiff may raise this objection at trial if it believes Mr. Coffman testimony amounts to expert testimony.

**J.    Plaintiff's MIL No. 10: To Preclude Defendants from Demonstrating the Accused Systems.**

Plaintiff's MIL No. 10 is denied with prejudice. Plaintiff argues the Court should preclude Defendants from demonstrating the Accused Systems at trial. Pl. Mot. at 16–17. *First*, Plaintiff contends Defendants were required to provide evidence of the demonstration during discovery but

failed to do so, and as such, any demonstrations should be excluded as a sanction for failing to disclose pursuant to Rule 37. *Id.*; *see* Rule 26(a)(1)(A) ("A party must, without awaiting a discovery request, provide to the other parties . . . (ii) a copy . . . of all documents, electronically stored information and *tangible things* that the disclosing party has in its possession custody or control and may use to support its claims or defenses.") (emphasis added). Second, Plaintiff objects under Federal Rules of Evidence 402 and 403, asserting that a demonstration would be confusing and misleading, as a presentation of the look and functionality of the Accused Systems alone is insufficient for the Court to determine infringement. *Id.*

Defendants indicate that they have not determined whether they will demonstrate the Accused Systems at trial but nonetheless request the Court deny Plaintiff's MIL.[8] Def. Resp. at 17. *First*, Defendants argue that Plaintiff never issued a Rule 34 Request for Production for a demonstration or sample of the Accused Devices. *Id.* at 16. Because the Accused Devices are International Traffic in Arms Regulations (ITAR) controlled and "sensitive equipment," Defendants argue that Plaintiff's expectation for Defendants to "have given sample devices to SAIC in the absence of a specific request or appropriate safeguards" is "not serious." *Id. Second*, Defendants explain that if they were to employ a demonstration, it would be probative to the Court's damages analysis, specifically to prove how various features of the ENVG-B unit, rather than the contested bubble mode, "drive the cost of the ENVG-B, and [that] SAIC's requested damages would result in a windfall." *Id.*

---

[8] Defendants note that "[i]f the Court would like to see such a demonstration, Defendants will gladly work toward making a sample device available." Def. Resp. at 17. Though the Court does not request it, it notes that a demonstration of some of the Accused Systems at trial, if feasible, may assist with the Court's understanding of the accused devices. Such a sample device would not be entered as substantive evidence but instead would serve as a demonstrative exhibit or illustrative aid. *See, e.g.*, FED. R. EVID 107.

Exclusion is not warranted under Rule 37. A court may impose sanction on parties for failure to disclose certain information under Rule 26(a)(1)(A). *See Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*, 30 F.4th 1339, 1355 (Fed. Cir. 2022); *see also* Miller Exclusion Tr. at 8:19–21. Whether to impose sanctions and, if so, to what extent, is left to the discretion of the Court. *See* Rule 37(c)(1); *Precision Pine & Timber, Inc. v. United States,* No. 98-720 C, 2001 WL 1819224, at *3 (Fed. Cl. Mar. 6, 2001) (citing *Adkins v. United States,* 816 F.2d 1580, 1581–82 (Fed. Cir. 1987)) (select citation omitted) ("The decision on whether to impose discovery sanctions, either pursuant to its inherent authority or under existing Rules of the Court of Federal Claims rests within the sound discretion of the Court.").

A party who can demonstrate that its failure to meet its discovery obligations was substantially justified or harmless can avoid sanctions. *See* Rule 37(c)(1); Miller Exclusion Tr. at 9:6–9. Courts consider six factors in determining whether the failure was justified or harmless: "(1) prejudice or surprise to the opposing party; (2) ability to cure that prejudice or surprise; (3) the importance of the challenged evidence; (4) the extent to which admitting the evidence would disrupt trial; (5) the non-disclosing party's explanation for their conduct; and (6) whether the party acted in bad faith or willfully." Summary Judgment Opinion at 29–30 (internal citations omitted).

Overall, Defendants' conduct is harmless and none of the factors support exclusion. To begin, since the Accused Products are directly at issue in this case, Plaintiff cannot claim surprise that Defendants would seek to present a physical demonstration of them at trial. There is also little prejudice because a demonstration would only help the Court understand the technology and such a physical sample would not be entered into evidence. Trial courts often allow pedagogical or illustrative demonstratives that help illustrate evidence or testimony in a digestible manner for the factfinder, and indeed the parties have regularly used helpful demonstratives in this case to date,

without complaint or objection.  *See* FED. R. EVID. 1006; *see, e.g.*, *United States v. Janati*, 374 F.3d 263, 272–73 (4th Cir. 2004) (describing difference between Federal Rule of Evidence 1006 summary demonstratives and Federal Rule of Evidence 611(a) pedagogical devices); *United States v. Harms*, 442 F.3d 367, 375–76 (5th Cir. 2006) (same).

Further, on December 1, 2024, a new Federal Rule of Evidence that considers illustrative aids became effective.  *See* FED. R. EVID. 107.  Federal Rule of Evidence 107 permits "a party to present an illustrative aid to help the trier of fact understand the evidence" so long as "the aid's utility . . . is not substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, or wasting time."  FED. R. EVID. 107(a).  An illustrative aid is not evidence, but "[w]hen practicable . . . must be entered into the record."  FED. R. EVID. 107(b)–(c).  That the physical sample would not be admitted into evidence like a pedagogical device or illustrative aid further lessens any prejudice to Plaintiff and illustrates the relative unimportance of this demonstrative.  *See Janati*, 374 F.3d at 273 (citing 6 *Weinstein's Federal Evidence*, § 1006.04[2] (Joseph M. McLaughlin ed., 2d ed. 2003)) ("These 'pedagogical' devices are not evidence themselves, but are used merely to aid the jury in its understanding of the evidence that has already been admitted."); FED. R. EVID. 107.  While the technology underlying the accused systems themselves are crucial to this case, the physical sample itself is not.  As noted, if a demonstration takes place, the accused products would not be substantive evidence, but would instead be considered illustrative aids or pedagogical devices.

Further, there would be little prejudice to Plaintiff; indeed, expert witnesses routinely rely on photographs rather than physical products to conduct analysis.  *See Guangzhou Yucheng Trading Co. v. Dbest Prod., Inc.*, 644 F. Supp. 3d 637, 657–58 (C.D. Cal. 2022) (citing *Greatbatch Ltd. v. AVX Corp.*, 2015 WL 9171042, *5 (D. Del. Dec. 11, 2015)).  Further, Plaintiff is not

prejudiced where it did not require a physical version of the product to conduct its analysis.  Nor do Defendants need the device to prove their case and certainly do not seek to do so here.  They are prepared to introduce evidence of the Accused Products through documents, witness testimony, and videos that were produced during discovery.  *See* Def. Resp. at 17.  And, rather than disrupt trial, such a demonstration may be useful to the Court.  Finally, Defendants do not appear to have acted in bad faith and their explanation is reasonable given the national security concerns regarding the accused products.  *See* Def. Resp. at 16–17.  Considering all of these factors, Defendants' conduct was harmless.

Plaintiff's Federal Rules of Evidence 402 and 403 arguments also fail.  As discussed above, the threshold for relevancy and the risk of prejudice in a bench trial are low.  *See Daubert*, 509 U.S. at 587; *Spectre Corp.*, 160 Fed. Cl. at 495 (quoting *City of Wilmington*, 152 Fed. Cl. at 377).  In sum, such a physical demonstration could be helpful to the Court's understanding of the technology at issue.  Moreover, the Court would not be prejudiced or confused by the demonstration of an Accused System, particularly where it would not be offered as substantive evidence.  Accordingly, the Court denies with prejudice Plaintiff's MIL No. 10.

### K.    Plaintiff's MIL No. 11: To Preclude Misrepresentations About Non-SERVAL Inventor Code.

Plaintiff's MIL No. 11 is denied without prejudice to renew at trial.  Plaintiff first argues that pursuant to Federal Rule of Evidence 403, the Court should prevent Defendants from "misrepresenting that code segments other SAIC employees created under [other] SAIC government contracts . . . were produced in this litigation as 'SERVAL' code."  Pl. Mot. at 16.  Plaintiff alleges that Defendants' counsel has repeatedly made this mischaracterization, pointing to statements made by Defendants' attorneys during Mr. Michael Rodger's deposition.  *Id.* at 16–17.  Second, Plaintiff asserts that Defendants should not be able to introduce substantive evidence

regarding other system code through any Plaintiff witness, including Mr. Rodgers, who lacks personal knowledge of such code, as such testimony would violate Federal Rules of Evidence 403, 602, and 701.  *Id.* at 17.  Finally, Plaintiff preemptively asserts that the Court should not permit any attempts by Defendants to argue that "when contributing to the invention of the '230 Patent," Mr. Rodgers, a named inventor of the '230 Patent, "was precluded from leveraging the skill and knowledge he developed over the course of his career."  *Id.*

Defendants argue that Plaintiff's MIL is largely moot.  Def. Resp. at 17.  *First*, Defendants explain they "have no intention of misrepresenting any evidence to the Court" about the source code.  Def. Resp. at 17.  Further, they argue that they could not have known whether excerpts of source code produced by Plaintiff was or was not SERVAL code without inquiring during Mr. Rodgers's deposition.[9]  *Id.* at 17 & n.6.  Second, Defendants explain that they "do not intend to argue that Mr. Rodgers was somehow precluded from using his own knowledge and skill in connection with SAIC's SERVAL project."  *Id.* at 18.

Whether a certain piece of code is or is not part of the SERVAL code appears to be a factual issue for trial.  Defendants indicate that there are still outstanding questions as to whether these excerpts of code were used in the SERVAL program.  *Id.* at 17 & n.6.  Accordingly, Plaintiff is free to renew this objection at trial should it believe that Defendants are misrepresenting whether code was used in the SERVAL program.  However, the Court is not inclined to prevent Defendants from asking a knowledgeable witness whether certain code is or is not part of the SERVAL code.

---

[9] Defendants object to Plaintiff's characterization of Defense counsel's line of questioning at Mr. Rodger's deposition, noting that "Defense counsel was entitled to inquire whether SAIC had repurposed code it developed pursuant to government contracts for use in its SERVAL program." Def. Resp. at 17.  While the parties' arguments regarding the deposition questions are noted, they are not relevant to deciding the present MIL.

Regarding the second portion of Plaintiff's MIL No. 11, Defendants indicate that they do not intend to argue that Mr. Rodgers was precluded from using his own knowledge and skill as related to SAIC's SERVAL project. Def. Resp. at 18. Accordingly, the Court will hold Defendants to this representation and accordingly finds that this portion of Plaintiff's MIL is moot. Should Defendants deviate from that representation at trial, Plaintiff may renew its objection. In sum, Plaintiff's MIL No. 11 is denied without prejudice.

## IV.    Defendants' Motions in Limine

Defendants filed the following three motions in limine:

1. To preclude all evidence and testimony that the claim terms "overlay" and "replace" are not distinct;

2. To preclude all evidence and testimony from SAIC's expert regarding application of the "display" claim limitation that exceeds the scope of his report and/or is inconsistent with the Court's claim construction; and

3. To preclude all evidence and testimony attempting to relitigate, or inconsistent with, the Court's previous claim construction ruling concerning the indefiniteness of the terms "registration" and "in registration with."

Def. Mot. at 5, 9, 13.

Having considered the parties' arguments, applicable law, and the record, this Court **DENIES** (1) Defendants' MIL No. 1 with prejudice; (2) Defendants' MIL No. 2 without prejudice; and (3) Defendants' MIL No. 3 as moot.

### A.    Defendants' MIL No. 1: To Preclude All Evidence and Testimony that the Claim Terms "Overlay" and "Replace" are Not Distinct.

Defendants' MIL No. 1 is denied with prejudice. Defendants ask the Court to preclude any testimony, evidence, or argument from Plaintiff "suggesting that the term 'overlay' present in the claims of the '230 Patent is of similar scope or otherwise encompasses the claim term 'replace' of the '752 Patent" because Plaintiff is judicially estopped from making that argument. Def. Mot. at 5–9. Defendants contend that Plaintiff's counsel's previous statements that the Asserted Patents

have different approaches to positioning imagines onto a display and specifically noted the distinction between the "overlay" claim term found in the '012, '103, and '230 Patents and the "replace" claim term in the '752 Patent. *Id.* at 5–6. Defendants claim that the Court agreed with Plaintiff's position and found that the patent claims "are directed to a particular solution and deploy an unconventional technique." *Id.* at 6 (quoting Order, dated Jan. 19, 2018 (ECF No. 14) (MTD Order) at 14). They take issue with Plaintiff's assertion "that its prior position does not 'exclude[e] replacements from digital overlays' to bolster its infringement case." *Id.* at 7 (quoting Plaintiff SAIC's Opening Memorandum of Contentions of Fact and Law (ECF No. 440) (Pl. Opening Mem.) ¶ 111, n.7). Defendants argue that judicial estoppel prevents this purported shift in Plaintiff's position. *Id.* (first citing *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001); and then citing *Ideal Innovations, Inc. v. United* States, 167 Fed. Cl. 314, 340 (2023)).

Courts consider three factors when deciding whether judicial estoppel applies: (1) whether the two positions are "clearly inconsistent"; (2) whether the party previously succeeded in persuading the court to accept the earlier position; and (3) whether there would be an unfair advantage or unfair detriment absent estoppel. *Egenera, Inc. v. Cisco Sys., Inc.*, 972 F.3d 1367, 1378 (Fed. Cir. 2020) (citing *New Hampshire*, 532 U.S. at 750–51); *Ideal Innovations*, 167 Fed. Cl. at 340. Defendants argue that all three factors are satisfied here. Def. Mot. at 8. *First*, they assert Plaintiff previously argued that "overlay" and "replace" are unique processes but now attempt to argue that the two are indistinct. *Id. Second*, that this Court previously "adopted SAIC's argument that the '230 Patent's 'overlay' process is separate and apart from the '752 Patent's 'replace' process." *Id. Third*, that "[a]llowing SAIC to alter its position now would give SAIC the unfair advantage of avoiding invalidity for preemption under Section 101 while also pursuing an

infringement claim that expands the scope of the '230 Patent to encompass that of the invalidated '752 Patent." *Id.* at 8–9.

In response, Plaintiff contends that Defendants' MIL No. 1 is an attempt to "reopen and relitigate the construction of the 'overlay' term."[10] Pl. Resp. at 3. Plaintiff further claims that none of the three factors for judicial estoppel are satisfied. *Id.* at 4. *First*, Plaintiff argues its positions are not "clearly inconsistent" because they are not "mutually exclusive" and "directly inconsistent." *Id.* (quoting *Egenera*, 972 F.3d at 1379). Plaintiff contends that Defendants "misinterpret[ed] and mischaracterize[d] SAIC's statements from the January 2018 motion to dismiss hearing, which dealt with issues under 35 U.S.C. § 101; took place at the infancy of this litigation (before the Complaint was even Answered); and, as SAIC expressly stated during that hearing, did not involve claim construction." *Id.* Plaintiff clarifies that its position has always been that "'overlay' is a different, broader term than 'replace,' and the term 'overlay,' as construed by the Court, encompasses putting one image over or upon a corresponding region whether by superimposition, replacement, or other processes." *Id.* at 5. *Second*, Plaintiff contends that this Court was never "persuaded to accept—or even considered relevant—any difference between the meanings of 'replace' and 'overlay' or that SAIC otherwise received a benefit from taking that position in the form of judicial success," demonstrated by the lack of a decision discussing, let alone adopting, an argument that "overlay" is separate from "replace." *Id.* at 6–7. *Third*, Plaintiff

---

[10] Plaintiff asserts that L3 furthered a similar argument in its motion for summary judgment of non-infringement, which this Court "considered and rightly rejected." *Id.* (citing Summary Judgment Opinion at 154–55, 157–61). Further, Plaintiff claims that Defendants' use of "distinct" is inaccurate here because "[i]t is possible that the two claims are distinct but not mutually exclusive—that is, while each is applicable to some embodiments that the other does not describe, certain embodiments are fairly described by both." *Id.* at 3 n.1 (quoting *Bos. Sci. Corp. v. Cook Inc.,* 187 F. Supp. 3d 249, 263 (D. Mass. 2016)).

explains that because its position has always been consistent, there will be no unfair advantage to itself or an unfair detriment to Defendants absent judicial estoppel. *Id.* at 7.

Defendants fail to satisfy the requirements for judicial estoppel. *First*, as Plaintiff's positions are not "mutually exclusive" and "directly inconsistent," they are not "clearly inconsistent." *Egenera*, 972 F.3d at 1379 (quoting *RFF Family P'ship v. Ross*, 814 F.3d 520, 528 (1st Cir. 2016)). While Plaintiff did explain that the Asserted Patents are "different," use "different language," and employ "a different process," they did not argue that the term 'overlay' is exclusive of the term 'replace' as Defendants contend. *See* Transcript, dated Jan. 3, 2018 (ECF No. 18) (MTD Tr.) at 33:18–34:6; 68:4–17. The Court interpreted this same explanation to mean that "the terms [overlay and replace] serve a similar function." Memorandum and Order, dated Aug. 6, 2021 (ECF No. 192) at 52 n.13 ("The '752 Patent uses the term 'replace' rather than 'overlay.' However, at oral argument on the Government's motion to dismiss, SAIC's counsel noted that the terms serve a similar function."). Therefore, Defendants' contention that Plaintiff has argued that 'overlay' and 'replace' are mutually exclusive lacks merit.

*Second*, the Court has not previously relied on or accepted a position that "replace" and "overlay" are inconsistent. *See Egenera*, 972 F.3d at 1378. Defendants' claim that the Court adopted this position when it "found that the patent claims 'are directed to a particular solution and deploy an unconventional technique'" takes the Court's statement out of context. Def. Mot. at 6 (quoting MTD Order at 14). The relevant portion of the Court's statement, in its entirety, is: "Given that the patent claims at issue, when considered as a whole and in light of their specifications, are directed to a particular solution to an industry problem and deploy an unconventional technique . . . ." MTD Order at 14. Nothing in that statement adopts a position or references previous findings in the Court's opinion that "replace" and "overlay" are inconsistent.

Therefore, the Court did not rely on such a purported position when deciding the Motion to Dismiss.

Not only did the Court forgo reliance on this argument at the Motion to Dismiss phase, but Plaintiff also expressly argued in its Summary Judgment briefing that "[t]he plain and ordinary meaning of 'overlay' does not exclude replacement, and nothing in the patent claims precludes a replacement operation to accomplish the recited overlay." SAIC's Reply to Defendants' Combined Opposition to SAIC's Motion for Partial Summary Judgment of Infringement by the Government and Prior Art Status of Desert's Edge (ECF No. 372) at 8–9. Indeed, the Court cited this argument in its Summary Judgment Opinion. Summary Judgment Opinion at 181–82.

*Third*, as there is no evidence that Plaintiff has advanced inconsistent positions and led the Court to adopt such positions, there would not be an unfair advantage to Plaintiff nor an unfair detriment to Defendants for Plaintiff to "suggest[] that the term 'overlay' present in the claims of the '230 Patent is of similar scope or otherwise encompasses the claim term 'replace' of the '752 Patent." Def. Mot. at 5–9; *see Egenera*, 972 F.3d at 1378. Accordingly, Defendants' MIL No. 1 is denied with prejudice.

> **B.    Defendants' MIL No. 2: To Preclude All Evidence and Testimony from SAIC's Expert Regarding Application of the "Display" Claim Limitation that Exceeds the Scope of His Report and/or Is Inconsistent With the Court's Claim Construction.**

Defendants' MIL No. 2 is denied without prejudice to renew at trial. Defendants object to any attempts by Plaintiff to offer evidence or testimony through Dr. Chandrajit Bajaj regarding the application of the "display" claim limitation to the Accused Products. Def. Mot. at 9–10. Defendants assert that such evidence or testimony exceeds the scope of Dr. Bajaj's report and is inconsistent with the Court's "ordering" claim construction. *Id.* Defendants advance three arguments.

*First*, Defendants take issue with Plaintiff's purported "attempt to rewrite the Court's claim construction for trial." *Id.* at 10. Defendants note that Plaintiff's Opening Memorandum does not affirmatively assert that "the L3 ENVG-B system performs the 'identify,' 'evaluate,' and 'display' elements in sequential order on the same pair of first and second video frames, as required by the Court's construction." *Id.* (citing Pl. Opening Mem. ¶¶ 107−23). Instead, Defendants contend that Plaintiff attempts to obfuscate the issue by asserting that "[f]or a given pair of FWS-I and ENVG-B video image frames, the RTA BPA is configured such that the RTA video image frame that is output for display ***includes image data portions from*** the frame pair used to reach the (above-discussed) final fused solution." *Id.* (quoting Pl. Opening Mem. ¶ 115) (emphasis in original). Defendants further note that the term "image data portions" does not appear in Dr. Bajaj's expert report and argue that Plaintiff's proposed testimony amounts to an attempt to rewrite the Court's claim construction. *Id.*

*Second*, Defendants argue that the Court should preclude Dr. Bajaj from offering any evidence or testimony beyond the scope of his expert report with respect to the L3 ENVG-B system. *Id.* at 11. Namely, they note that his report does not opine on whether the L3 ENVG-B system performs the "identify," "evaluate," and "display" claims in order. *Id.* Further, Plaintiff's Opening Pretrial Memorandum references multiple assertions on the functionality and alleged infringement of the L3 ENVG-B system, which Defendants speculate will likely be improperly offered through Dr. Bajaj and thus should be excluded. *Id.* at 11–12.

*Third*, Defendants assert that Plaintiff also purportedly intends to improperly introduce various assertions on the Elbit ENVG-B system's functionality and alleged infringement through Dr. Bajaj's testimony at trial, despite such assertions being absent from his expert report. *Id.* at 12. For example, Plaintiff alleges that the "Equinox RTA code performs the 'identify,' 'evaluate' and

'display' claim elements in sequential order on the same pair of first and second video frames." *Id.* (quoting Pl. Opening Mem. ¶ 131).  Defendants respond that this Court has already found that "[n]owhere in Dr. Bajaj's report does he definitively opine that Elbit's ENVG-B or DRS's ENVG-III practice claim limitations 1(c), 1(d), and 1(e) in sequential order on the same pair of frames," and that "SAIC's primary evidence of infringement by Elbit's ENVG-B and DRS's ENVG-III systems, Dr. Bajaj's testimony, does not, on its face, embrace the proper ordering of claim limitations 1(c), 1(d), and 1(e)."  *Id.* (quoting Summary Judgment Opinion at 188).  Defendants also argue that Plaintiff's assertions in its Opening Memorandum regarding the Equinox source code go beyond the scope of Dr. Bajaj's report.  *Id.* at 13.

Plaintiff characterizes Defendants' MIL No. 2 as "a belated, improper request to reconsider L3's motion for summary judgment of non-infringement for the L3 and BAE ENVG devices and as a belated, *first-time* motion for summary judgment of non-infringement for the Elbit and DRS ENVG devices."  Pl. Resp. at 9–10 (emphasis in original).  Plaintiff argues that Dr. Bajaj's expected testimony falls within the scope of his opening report and that this Court's Summary Judgment Opinion "already found that Dr. Bajaj's opening report on infringement contains numerous statements supporting his opinion that the accused ENVG systems perform claim limitations 1(c) 'identify,' 1(d) 'evaluate,' and 1(e) 'display' in sequential order."  *Id.* at 10, 11 (citing Summary Judgment Opinion at 171–72, 189).  Plaintiff also asserts that Rule 26 does not preclude an expert from testifying on issues merely because an expert's report did not clearly or explicitly state those issues.  *Id.* at 11–12 (internal citations omitted).  Further, Plaintiff argues that Dr. Bajaj should be permitted to respond to Defendants' "articulation of their sequence of steps non-infringement defense," which was raised by Dr. Villasenor's responsive report after Dr. Bajaj

submitted his opening report. *Id.* at 12 (citing *Heller v. District of Columbia*, 952 F. Supp. 2d 133, 139 (D.D.C. 2013)).

Defendants' MIL No. 2 is denied without prejudice to renew at trial. *First*, Defendants contend that Plaintiff is attempting to rewrite the Court's claim construction through use of the term "image data portions" in Plaintiff's Opening Pretrial Memorandum rather than reiterating the "identify," "evaluate," "display" elements. Def. Mot. at 10–12. Defendants' Motion appears to take issue with the phrasing in Plaintiff's Opening Pretrial Memorandum as it relates to L3's ENVG-B product; Defendants speculate that the use of the term "image data portions" indicates that Plaintiff plans to promote a different claim construction at trial through Dr. Bajaj's testimony. *Id.* At this point, Defendants' contentions are mere speculation. Indeed, Plaintiff is under no affirmative obligation to reiterate the theory in its own Opening Pretrial Memorandum, nor is there any evidence beyond wordsmithing that Plaintiff intends to usurp the Court's claim construction. Of course, Plaintiff must adhere to the Court's prior orders and rulings, including regarding expert reports, summary judgment, and claim construction; to the extent Plaintiff deviates from these rulings at trial, Defendant may object.

*Second*, this Court has already concluded that Dr. Bajaj's expert report references the theories Defendants allege are absent. Summary Judgment Opinion at 171 (citing Bajaj Am. Op. Rpt. ¶¶ 177–79, 182, 185–86, 190–209). Specifically, Dr. Bajaj's report "includes statements suggesting the [L3] ENVG-B performs claim limitations 1(c), 1(d), and 1(e) in sequential order." *Id.* The Court also noted that Dr. Bajaj's report referenced "L3 technical documents that further suggest the ENVG-B system performs claim limitations 1(c), 1(d), and 1(e) in sequential order on the same pair of video frames." *Id.* at 172. Therefore, it would not be outside the scope of his report for Dr. Bajaj to testify on ordering with regard to the L3 system. However, Dr. Bajaj's report

and deposition contained inconsistencies regarding "whether claim limitations 1(c), 1(d), and 1(e) must be performed in sequential order for a pair of video source images." *Id.* While Defendants may probe these inconsistencies on cross examination, any inconsistency would implicate weight, not admissibility.

Defendants also seek to exclude Dr. Bajaj's testimony as it relates to the Equinox source code despite acknowledging that Dr. Bajaj addressed the Equinox source code in his report. Def. Mot. at 13. Plaintiff asserts that Dr. Bajaj should not be held to the mere recitation of his expert report at trial, and, instead, should be permitted to elaborate upon his report so long as such testimony is sufficiently grounded in the report's contents. Pl. Resp. at 12 (citing *Thompson*, 470 F.3d at 1203; *Muldrow ex rel. Estate of Muldrow v. Re-Direct, Inc.*, 493 F.3d 160, 167–68 (D.C. Cir. 2007); *Gay v. Stonebridge Life Ins. Co.*, 660 F.3d 58, 64 (1st Cir. 2011)). In this instance, his report discusses the Equinox code. *See, e.g.*, Bajaj Opening Report (ECF No. 340-3) ¶ 478–505. Thus, since Dr. Bajaj discussed the Equinox source code in his report, he may testify regarding it at trial. *See Bayer Healthcare*, 989 F.3d at 684; *Thompson*, 470 F.3d at 1203 ("Section 26(a)(2)(B) does not limit an expert's testimony simply to reading his report. No language in the rule would suggest such a limitation. The rule contemplates that the expert will supplement, elaborate upon, explain and subject himself to cross-examination upon his report."); Rule 26(a)(2). Therefore, Defendants' motion is denied.

*Third*, the Court denies Defendants' motion to exclude Dr. Bajaj's testimony concerning the Elbit and DRS systems. While the Court previously acknowledged that "[n]owhere in Dr. Bajaj's report does *he definitively opine* that Elbit's ENVG-B or DRS's ENVG-III practice claim limitations 1(c), 1(d), and 1(e) in sequential order on the same pair of frames," that quotation lacks context. Summary Judgment Opinion at 188–89 (emphasis added). The quote is from the Court's

Summary Judgment Opinion, where the Court was required to "resolv[e] all inferences in the Government's favor." *Id.* The Court concluded that, because Dr. Bajaj's testimony "on its face" did not explicitly embrace the ordering theory, there was a genuine dispute of material fact that precluded granting Plaintiff's motion at the time. *Id.* The Court did not, however, go so far as to find that Dr. Bajaj's report was completely devoid of *any* reference to the ordering theory as related to Elbit and DRS's systems. *Id.* Indeed, the next paragraph noted that "[t]o be sure, Dr. Bajaj's report provides disclosures that arguably support infringement of claim limitations 1(c), 1(d), and 1(e)." *Id.* at 189. Pursuant to Rule 26, at the motion in limine phase, it is sufficient for the Court to find that there is enough of a basis in Dr. Bajaj's report to infer that he was referencing the ordering theory. *See Thompson,* 470 F.3d at 1203 ("Section 26(a)(2)(B) does not limit an expert's testimony simply to reading his report. No language in the rule would suggest such a limitation. The rule contemplates that the expert will supplement, elaborate upon, explain and subject himself to cross-examination upon his report."); *Bayer Healthcare*, 989 F.3d at 684. Accordingly, because "Dr. Bajaj's report provides disclosures that arguably support infringement of claim limitations 1(c), 1(d), and 1(e)," Defendants' MIL No. 2 is denied. Summary Judgment Opinion at 189.

    **C.**    **Defendants' MIL No. 3: To Preclude All Evidence and Testimony Attempting to Relitigate, or Inconsistent With, the Court's Previous Claim Construction Ruling Concerning the Indefiniteness of the Terms "Registration" and "in Registration with."**

The Court denies Defendants' MIL No. 3 as moot. Defendants ask the Court to preclude Plaintiff from relitigating the Court's indefiniteness ruling or from attempting to present evidence inconsistent with the Court's prior ruling. Def. Mot. at 13–14. Defendants point to the Claim Construction Protective Order, which barred post-claim construction discovery on the indefiniteness of the terms "registration" and "in registration with." *Id.* at 14 (first citing Order, dated Oct. 19, 2021 (ECF. No. 221); and then citing Protective Order Regarding Claim

Construction Discovery (ECF No. 229) (Claim Construction Protective Order)).  Defendants argue that the logic of the Court's Claim Construction Protective Order should apply to trial.  *Id.*  Plaintiff agrees that scope of the Claim Construction Protective Order should apply to the extent the term "registration" arises during trial.  Pl. Resp. at 15.

Defendants' MIL No. 3 is moot as all parties agree that the Claim Construction Protective Order should apply at trial.[11]  *See* Def. Mot. at 14; Pl. Resp. at 15.  Plaintiff has represented that it will not present any evidence regarding the terms "registration" or "in registration with" because none of the remaining asserted claims include those terms.  *Id.* at 14.  As such, the Court will hold the parties their representations to the Court and to the terms of the Claim Construction Protective Order at trial.  Accordingly, Defendants' MIL No. 3 is denied as moot.

\*\*\*\*

---

[11] In relevant part, the Claim Construction Protective Order states:

> A party shall not question fact witnesses during depositions or at trial regarding the meaning of, or the witness' understanding of, patent claim terms that have been construed by the Court, or the topics enumerated above in paragraph (4).  This shall not prevent a party from asking a fact witness about their understanding or meaning of a claim term as it is used in either: (1) documents describing the features or operation of accused products, or (2) a prior art reference identified by the Defendants in their Preliminary Election of Asserted Prior Art, but only if it has been established that the witness is familiar with the prior art reference that is the subject of the questioning.

Claim Construction Protective Order at 3.

## V.    Conclusion

For the reasons stated above, this Court **DENIES** Plaintiff's Motions in Limine (ECF No. 466) and Defendants' Motions in Limine (ECF No. 465).  No portion of either Motion remains pending.

Specifically, consistent with the rulings above, this Court **DENIES** Plaintiff's MIL No. 1 in part without prejudice and **DENIES** in part with prejudice; **DENIES** Plaintiff's MIL No. 2 without prejudice; **DENIES** Plaintiff's MIL No. 3 without prejudice; **DENIES** Plaintiff's MIL No. 4 as moot without prejudice; **DENIES** Plaintiff's MIL No. 5 without prejudice; **DENIES** Plaintiff's MIL No. 7 as moot; **DENIES** Plaintiff's MIL No. 8 as moot; **DENIES** Plaintiff's MIL No. 9 without prejudice; **DENIES** Plaintiff's MIL No. 10 with prejudice; and **DENIES** Plaintiff's MIL No. 11 without prejudice.

The Court also **DENIES** Defendants' MIL No. 1 with prejudice; **DENIES** Defendants' MIL No. 2 without prejudice; and **DENIES** Defendants' MIL No. 3 as moot.

The parties are directed to **CONFER** and **FILE** a Notice by March 14, 2025, attaching a proposed public version of this Sealed Memorandum and Order, with any competition-sensitive or otherwise protected information redacted.


IT IS SO ORDERED.



*Eleni M. Roumel*
ELENI M. ROUMEL
Judge


Dated: February 28, 2025
Washington, D.C.

47